# EXHIBIT B

Name of Subscriber:_____
**NON-U.S. PURCHASER**

THE MEMBERSHIP INTERESTS REFERENCED IN THIS AGREEMENT WILL BE ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), OR ANY STATE SECURITIES ACT, PURSUANT TO APPLICABLE EXEMPTIONS.  WITHOUT SUCH REGISTRATION, SUCH MEMBERSHIP INTERESTS MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED AT ANY TIME WHATSOEVER, EXCEPT UPON DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY AND THE COMPANY'S COUNSEL THAT REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER OR THE SUBMISSION TO THE COMPANY OF SUCH OTHER EVIDENCE AS MAY BE SATISFACTORY TO THE COMPANY'S COUNSEL TO THE EFFECT THAT ANY SUCH TRANSFER WILL NOT BE IN VIOLATION OF THE SECURITIES ACT OR APPLICABLE STATE SECURITIES LAWS OR ANY RULE OR REGULATION PROMULGATED THEREUNDER.  ADDITIONALLY, ANY SALE OR OTHER TRANSFER OF MEMBERSHIP INTERESTS IS SUBJECT TO CERTAIN RESTRICTIONS AS SET FORTH IN THE COMPANY'S OPERATING AGREEMENT.

### GSRV-VTI II, LLC

### SUBSCRIPTION AGREEMENT

THIS SUBSCRIPTION AGREEMENT (this "**Agreement**") is made and entered into as of the date shown on the signature page hereof by the undersigned person identified on the signature page of this Agreement (the "**Subscriber**") in favor of **GSRV-VTI II, LLC**, a California limited liability company (the "**Company**"), **GSRV-VTI MANAGEMENT, LLC**, a California limited liability company (the "**Manager**"), **GOLDEN STATE RENAISSANCE VENTURES, LLC**, a California limited liability company **DBA GOLDEN GATE GLOBAL** (the "**Regional Center**") and if accepted by the Company in writing in accordance with the terms hereof, then this Agreement shall be by and between the Subscriber and the Company.

**THE MEMBERSHIP INTERESTS IN THE COMPANY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT AND ARE BEING OFFERED PURSUANT TO A TRANSACTION EXEMPTION AFFORDED BY REGULATION S PROMULGATED UNDER THE SECURITIES ACT SOLELY OUTSIDE OF THE UNITED STATES AND SOLELY TO NON-U.S. PERSONS AND IN SPECIFIC RELIANCE UPON THE REPRESENTATIONS BY EACH SUBSCRIBER THAT (1) AT THE TIME OF THE OFFER AND SALE OF THE MEMBERSHIP INTEREST TO THE SUBSCRIBER, THE SUBSCRIBER WAS NOT A U.S. PERSON AS DEFINED IN REGULATION S, AND (2) AT THE TIME OF THE OFFER AND SALE OF THE MEMBERSHIP INTEREST TO THE SUBSCRIBER AND, AS OF THE DATE OF THE EXECUTION AND DELIVERY OF THIS AGREEMENT AND THE OPERATING AGREEMENT BY THE SUBSCRIBER, THE SUBSCRIBER WAS OUTSIDE OF THE UNITED STATES.  THE MEMBERSHIP INTEREST MAY NOT BE OFFERED OR**

1

**SOLD IN THE UNITED STATES OR TO U.S. PERSONS (AS DEFINED IN REGULATION S) UNLESS THE SECURITIES ARE REGISTERED UNDER THE SECURITIES ACT, OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT IS AVAILABLE.    HEDGING TRANSACTIONS IN THESE SECURITIES MAY NOT BE CONDUCTED EXCEPT IN COMPLIANCE WITH THE SECURITIES ACT.**

**NO PARTY EXCEPT THE COMPANY IS RESPONSIBLE FOR THE CONTENTS OF THE MEMORANDUM, AND NO OTHER PARTY EXCEPT SALES AGENTS, INCLUDING OFFSHORE MIGRATION BROKERS, AUTHORIZED BY THE COMPANY WILL BE INVOLVED IN THE OFFERING OF UNITS UNDER THE MEMORANDUM OR THE ACCEPTANCE OF SUBSCRIPTIONS FROM SUBSCRIBERS.**

## RECITALS

A.      The Company is offering (the "**Offering**") for investment pursuant to a Private Offering Memorandum dated as of April 27, 2015 (as amended and supplemented from time to time, the "**Memorandum**") to a limited number of individual investors who are not "U.S. Persons" (as such term is defined in Rule 902(k) of the Securities Act) on a limited and private basis, a maximum of Seven Million Dollars Five Hundred Thousand ($7,500,000) (the "**Maximum Offering Amount**") and a minimum of Five Hundred Thousand Dollars ($500,000) (the "**Minimum Offering Amount**") of membership interests in the Company (the "**Membership Interests**") (excluding the sum of $40,000 per Subscriber (the "**Processing and Marketing Expense**")), as such Membership Interests shall be described in the Operating Agreement of the Company to be entered into by and among the Company, the Manager and each of the Subscribers for Membership Interests whose subscriptions are accepted by the Company (the "**Operating Agreement**").  Any capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed in the Operating Agreement or the Memorandum.

B.      The Offering of the Membership Interests is limited to only individual persons (not any legal entities) who are "Accredited Investors," as such term is defined in Rule 501(a) under the Securities Act.  To subscribe hereunder, the Subscriber must pay Five Hundred Forty Thousand Dollars ($540,000.00), consisting of $500,000 for the Subscriber's Capital Contribution and $40,000 for the Subscriber's Processing and Marketing Expense (collectively, the "**Total Subscription Payment**"), all as more particularly described herein.  The Subscriber will be issued a Membership Interest based upon the Capital Contribution to the Company made by the Subscriber.

C.      The Regional Center has obtained approval from the United States Citizenship and Immigration Services ("**USCIS**") to participate as a regional center under the EB-5 program (the "**EB-5 Program**").

D.      The Company will be administered by its Manager, which is wholly-owned by one of the members of the Regional Center.

2

E.     The Company has been organized to invest in Vertebral Technologies, Inc. ("**VTI**") to allow VTI to expand its development, manufacturing, and distribution resources at its San Jose, California facility (the "**EB-5 Investment**").

F.     The Offering has been structured so that each Subscriber, by becoming an Investing Member in the Company, will have made an investment that may be a qualifying investment entitling the Subscriber, assuming the Subscriber otherwise satisfies the non-investment criteria for permanent residency, to seek permanent residency in the United States. The Subscribers will need to separately retain immigration counsel to file their I-526 Petitions.  It is anticipated that the USCIS will act on each I-526 Petition within fourteen (14) months after the I-526 Petition is filed.  If a Subscriber receives I-526 Petition Approval, the Subscriber will become a permanent Investing Member of the Company.  Each Subscriber acknowledges that, even if such Subscriber receives I-526 Petition Approval, there is no assurance that such Subscriber will ultimately receive conditional or unconditional lawful permanent residency status.  See Memorandum- Immigration Risk Factors.

G.     In addition to executing this Agreement and paying the Total Subscription Payment for subscribed Membership Interests to the Company as described herein, the Subscriber will also need to execute the Company's Amended and Restated Operating Agreement ("**Operating Agreement**"), and deliver the executed Operating Agreement to the Company in order to complete its subscription.  ***Please review the Operating Agreement in its entirety***.

H.     The period for the Offering has commenced and will end on October 27, 2015, unless extended by the Company until not later than April 27, 2016, or otherwise extended so that the Company can attempt to obtain Substitute Investing Members (if one or more Investing Members receives an I-526 Petition Denial (the "**Offering Period**").  The Total Subscription Payment shall be contributed by Subscriber directly to the Company in one (1) installment simultaneously with the execution of this Agreement.

I.     Upon subscription, the Subscriber shall no longer have the right to cancel, terminate or revoke his or her subscription and request a refund of his or her investment.  Subject to the terms of the Operating Agreement, the Subscriber hereby irrevocably commits the Subscriber's Capital Contribution to the Company.

J.     The Total Subscription Payment will be made directly to the Company. The Company will only facilitate the acquisition of up to 3,000,000 shares of Series B Convertible Preferred Stock of Vertebral Technologies, Inc. following receipt and approval of the following reports:  (i) the Vertebral Technologies, Inc. Business Plan and (ii); and the Economic and Job Creation Impacts Report commissioned by the Company. It is anticipated that both reports will be available for review on or before May 15, 2015.

3

## AGREEMENT

**NOW, THEREFORE**, the Subscriber hereby agrees as follows:

1.     Subscription.   The Subscriber hereby irrevocably subscribes for and agrees to purchase the Membership Interest indicated on the signature page of this Agreement:

     (a)     **By wire transfer to:**



        Wells Fargo Bank
        420 Montgomery Street
        San Francisco, CA 94104
        ABA#: ████████
        Beneficiary: First Clearing Corporation Acct#: ████████
        Further Credit to the following:
        A/C Name: GSRV-VTI II, LLC Account #: ████████

     (b)     **By check**: In the alternative, the Subscriber shall enclose herewith a certified or official bank check payable to "GSRV-VTI II, LLC".   The above referenced subscription payments shall be made in one (1) payment of $540,000 upon subscription.

2.     Acceptance of Subscription.   The Subscriber understands and agrees that its subscription may be rejected by the Company at any time in its sole discretion.   If Subscriber's subscription is accepted, the Company will notify Subscriber of same.   If the Subscription is rejected, all funds received from the Subscriber will be returned without interest, as described above, and thereafter this Agreement shall be of no further force or effect.

3.     Subscriber's Acknowledgment of Restrictions on Transfer; No Right to Require Registration.   THE SUBSCRIBER UNDERSTANDS THE OFFER AND SALE OF THE MEMBERSHIP INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT, ANY STATE SECURITIES OR "BLUE SKY" LAWS, OR ANY RULES OR REGULATIONS PROMULGATED THEREUNDER (COLLECTIVELY, "**SECURITIES LAWS**"), PURSUANT TO APPLICABLE EXEMPTIONS.   WITHOUT SUCH REGISTRATION, SUCH MEMBERSHIP INTERESTS MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED AT ANY TIME WHATSOEVER, AND SUCH MEMBERSHIP INTERESTS MAY NOT BE OFFERED OR SOLD IN THE UNITED STATES OR TO A U.S. PERSON, EXCEPT UPON DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY AND/OR THE COMPANY'S COUNSEL THAT REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER OR THE SUBMISSION TO THE COMPANY OF SUCH OTHER EVIDENCE AS MAY BE SATISFACTORY TO THE COMPANY AND/OR THE COMPANY'S COUNSEL TO THE EFFECT THAT ANY SUCH TRANSFER WILL NOT BE IN VIOLATION OF THE SECURITIES LAWS.   NO HEDGING TRANSACTIONS INVOLVING THE MEMBERSHIP INTERESTS MAY BE CONDUCTED UNLESS IN COMPLIANCE WITH THE SECURITIES ACT OF 1933, AS AMENDED.

4

ADDITIONALLY, THE SUBSCRIBER ACKNOWLEDGES THAT NEITHER THE COMPANY NOR ITS MANAGER IS OBLIGATED TO REGISTER THE MEMBERSHIP INTERESTS UNDER THE SECURITIES LAWS.   THE SUBSCRIBER FURTHER UNDERSTANDS THAT THE TRANSFER OF THE MEMBERSHIP INTERESTS MAY BE SUBSTANTIALLY RESTRICTED BY THE SECURITIES LAWS AND BY THE ABSENCE OF A TRADING MARKET THEREFOR, AND THE TRANSFER OF THE MEMBERSHIP INTERESTS IS ADDITIONALLY RESTRICTED BY THE TERMS OF THE OPERATING AGREEMENT; THAT NO TRADING MARKET FOR THE MEMBERSHIP INTERESTS EXISTS AND NONE IS EXPECTED TO DEVELOP, AND THAT ANY SALE OR OTHER DISPOSITION OF THE MEMBERSHIP INTERESTS MAY RESULT IN UNFAVORABLE TAX CONSEQUENCES TO THE SUBSCRIBER.   THE SUBSCRIBER ACKNOWLEDGES THAT THE RESTRICTIONS ON THE TRANSFERABILITY OF THE MEMBERSHIP INTERESTS ARE SUBSTANTIAL AND MAY REQUIRE THE SUBSCRIBER TO HOLD THE MEMBERSHIP INTERESTS INDEFINITELY.

THE SUBSCRIBER HEREBY REPRESENTS AND WARRANTS THAT THE SUBSCRIBER HAS ADEQUATE MEANS OF PROVIDING FOR THE SUBSCRIBER'S CURRENT AND FUTURE NEEDS AND POSSIBLE PERSONAL CONTINGENCIES AND HAS NO NEED FOR LIQUIDITY OF THE MEMBERSHIP INTERESTS.

4.     Subscriber's Additional Representations and Warranties.   The Subscriber additionally represents and warrants to the Company, the Manager, the Regional Center and VTI as follows:

(a)     The Subscriber understands that the Company has been formed in connection with the EB-5 Investment and has no operating history; that VTI is in its early stages of development, and its future profitability cannot be assured.

(b)     The Subscriber understands that: (i) his or her subscription for Membership Interests is irrevocable (unless the Company otherwise consents in writing in its sole and absolute discretion); (ii) an investment in the Membership Interests is a speculative investment that involves a high degree of risk, including the risk of loss of the entire investment of the Subscriber in the Company; (iii) no federal or state agency has passed upon the adequacy or accuracy of the information made available to the Subscriber, or made any finding or determination as to the fairness for investment, or any recommendation or endorsement of the Membership Interests as an investment; (iv) there will be restrictions on the transferability the Membership Interests under the Securities Laws and the Operating Agreement and there will be no public market for the Membership Interests, and, accordingly, it may not be possible for the Subscriber to liquidate his or her investment in the Membership Interests; (v) any anticipated federal and/or state income tax benefits applicable to the Membership Interests may be lost through changes in, or adverse interpretations of, existing laws and regulations; and (vi) there is no assurance that VTI will ever be profitable, or that the Subscriber's investment in the Membership Interests will ever be recoverable.

(c)     The Subscriber acknowledges that there is no assurance that his or her I-526 Petition will be approved or, if it is, that Subscriber will ultimately be approved for

5

conditional or unconditional lawful permanent residence in the U.S. or be able to become a U.S. citizen. Neither the Regional Center, the Company, the Manager, VTI, nor the selected immigration counsel have made any effort to pre-determine Subscriber's personal qualifications and circumstances and whether Subscriber is likely or not likely to obtain favorable action on his or her I-526 Petition or Immigrant Visa and that there are numerous reasons that will result in Subscribers being denied residency in the United States, including, without limitation, the Project failing to qualify for the EB-5 Program.

(d)     The Subscriber hereby acknowledges that the Subscription Amount will be deposited directly with the Company. Both the Minimum Offering Amount and the Processing and Marketing Expense will be credited to the Subscriber's Capital Account. The Processing and Marketing Expense will be paid from the Subscribers Capital Account to the Manager upon USCIS approval of Subscriber's I-526 Petition. Interest will not accrue on the Subscription Amount.

(e)     The Subscriber hereby acknowledges that there will be no escrow account holding a Subscriber's Subscription Amount or Processing and Marketing Expense pending an Investor's I-526 application submittal to or approval from USCIS.

(f)     The Subscriber hereby acknowledges that VTI has a need for the immediate investment of funds to commence its operations and that following the Company's receipt of the VTI Business Plan and the econometric report commissioned by the Company, the Capital Contribution of each Member will be utilized to acquire up to 3,000,000 shares of Series B Convertible Preferred Stock of Vertebral Technologies, Inc.

(g)     The Subscriber hereby acknowledges that it is likely that the Company will utilize each Member's Capital Contribution to acquire up to 3,000,000 shares of Series B Convertible Preferred Stock of Vertebral Technologies, Inc. prior to an Subscriber's submittal of his or her I-526 Petition to the USCIS.

(h)     The Subscriber has been provided with a copy of the Memorandum, including, as exhibits thereto, the Operating Agreement, and this Agreement, and has reviewed same, has had the opportunity to ask questions of the Manager and the Regional Center, has received answers adequate to Subscriber with respect to same, and has no further questions regarding the Regional Center, the Manager, the Company, the Project or VTI. The Subscriber is aware that, pursuant to the Operating Agreement, the Manager will receive certain fees and benefits related to the EB-5 Investment.

(i)     The Subscriber hereby acknowledges that: (i) the risks inherent to this investment have been fully considered; (ii) the Manager will have substantial and exclusive authority to conduct the operation of the Company; (iii) the Company will be relying on outside agents to manage certain aspects of its operations; and (iv) an investment in the Membership Interests has neither been approved nor disapproved by the United States Securities and Exchange Commission or the Securities Division of the Department of Banking and Finance of the State of California or any other department or agency of any other jurisdiction, and such

6

authorities have not passed upon the adequacy or accuracy of the disclosure provided to investors in connection with an investment in the Membership Interests.

(j)    The Subscriber acknowledges that the Regional Center, the Company, the Manager, nor any representative of the Company, the Manager or the Regional Center has made any representations or warranties in respect of VTI's business or profitability.  Without limiting the generality of the foregoing, the undersigned acknowledges and agrees that information, including any business plan or financial projections or forecasts or other information contained in written materials provided or made available to the undersigned, and any oral, visual or other presentations made by the Company, the Manager or the Regional Center or their respective representatives to the Subscriber shall not be deemed a representation or warranty in respect of the matters therein.  The Subscriber acknowledges that the Memorandum contains information that the Company, the Manager and the Regional Center believe is accurate and data that VTI has represented to the Company is true and correct; however, as an accredited, experienced and sophisticated investor, the Subscriber is aware that there are many foreseeable and unforeseeable events that could cause the assumptions underlying the Project to not materialize, and the results of same may cause material adverse consequences to the financial results of VTI and/or the Company.

(k)    The Subscriber acknowledges that in the event a Subscriber's I-526 Petition is denied by USCIS or the Subscriber withdraws his or her I-526 Petition once the I-526 Petition is filed, that the Subscriber shall have no right to withdraw from the Company and the Company shall have no obligation to return such Subscriber, his or her Capital Contribution or Processing and Marketing Expense.

(l)    The Subscriber is acquiring the Membership Interests solely for the account of the Subscriber for investment purposes only and not for distribution or resale to others.  The Subscriber will not resell or offer to resell the Membership Interests except in strict compliance with all applicable Securities Laws, including, without limitation, Regulation S of the Securities Act, and the Operating Agreement.  The Subscriber will not engage in any hedging transactions involving the Membership Interests, except in compliance with the Securities Laws.

(m)    The Subscriber's financial condition is such that it has no need for liquidity with respect to his or her investment to satisfy any existing or contemplated undertaking or indebtedness and is able to bear the economic risk of his or her investment for an indefinite period of time, including the risk of losing all of his or her investment.

(n)    The Subscriber acknowledges that the offer and sale of the Membership Interests is not taking place within the United States, but rather in an offshore transaction. "United States" means the United States of America, its territories and possessions, any state of the United States and the District of Columbia.

(o)    The Subscriber acknowledges that the Membership Interests have not been registered under the Securities Act and therefore cannot be offered and sold in the United States or to U.S. Persons, unless the Membership Interests are registered under the Securities Act or an exemption from the registration requirements of the Securities Act is available.  The Subscriber

7

is not a U.S. Person and is not acquiring the Membership Interests for the account or benefit of any U.S. Person.

(p)     The Subscriber is in compliance with all applicable provisions of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "**USA Patriot Act**"), the U.S. Bank Secrecy Act (the "**BSA**") and all other anti-money laundering laws and applicable regulations adopted to implement the provisions of such laws, including policies and procedures that can be reasonably expected to detect and cause the reporting of transactions under Section 5318 of the BSA.  The Subscriber is not and shall not be a person: (i) acting, directly or indirectly, on behalf of terrorists or terrorist organizations, including those persons or entities that are included on any of the U.S. Office of Foreign Assets Control ("**OFAC**") lists; (ii) listed on, residing in or having a place of business in a country or territory named on any of such lists or which is designated as a Non-Cooperative Jurisdiction by the Financial Action Task Force on Money Laundering ("**FATF**"), or whose funds are from or through such a jurisdiction; (iii) that is a "Foreign Shell bank" within the meaning of the USA Patriot Act; or (iv) residing in or organized under the laws of a jurisdiction designated by the U.S. Secretary of the Treasury under Sections 311 or 312 of the USA Patriot Act as warranting special measures due to money-laundering concerns.

(q)     The undersigned acknowledges and agrees that the Company's special immigration counsel, as appointed by the Company, is the sole entity authorized to respond on behalf of the undersigned in any matter before the USCIS, the Administrative Appeals Office or other judicial body having jurisdiction over the undersigned's I-526 Petition or I-829 Petition. The undersigned, upon the instructions of the Company, agrees to supply a Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, appointing such special immigration counsel as the undersigned's immigration counsel to facilitate such response. The undersigned further agrees to provide the Company and special immigration counsel with a complete copy of any prior immigration filings and / or relevant immigration or other documents necessary to facilitate such response.  The undersigned further authorizes the Company and its special immigration counsel to have complete access to the undersigned's immigration history, record and status and the undersigned agrees to execute a G-28 or other document authorizing such access by the Company and its special immigration counsel. The Company agrees to maintain confidentiality with respect to the undersigned's immigration history, record, and status.

5.     Access to Information.  The Subscriber hereby acknowledges and confirms that the Subscriber has been given complete access to all documents, records, contracts and books of or relating to Regional Center, the Company and the Membership Interests now existing, the Manager, VTI, and all other information to the extent the Company or the Regional Center possesses such information or can acquire it without unreasonable effort or expense, and that the Subscriber has engaged in a complete examination of all such documents, records, contracts and books to the extent deemed necessary by the Subscriber in reaching the Subscriber's decision to invest in the Company.  The Subscriber hereby further acknowledges and confirms that the Subscriber has had an opportunity to ask questions of and receive answers from the Regional Center, the Company, the Manager and VTI, concerning the Membership Interests, the

8

prospective contemplated business and purpose of VTI, and with respect to any other matter the Subscriber has deemed relevant, and all such inquiries have been answered to the Subscriber's satisfaction. In addition, the Subscriber acknowledges that it has had and may have, at any reasonable hour, after reasonable prior notice, access to the financial and other records of the Company which the Company can obtain without unreasonable effort or expense, and further acknowledges that Subscriber has obtained, in Subscriber's judgment, sufficient information from these parties to evaluate the merits and risks of an investment in the Company.

6. <u>No Advertising or Reliance</u>. The Subscriber represents and warrants that in making the decision to purchase the Membership Interests herein subscribed for, the Subscriber has relied solely upon independent investigations made by Subscriber, and the Subscriber further represents and warrants that the Subscriber is not acquiring the Membership Interests as a result of any advertisement, article, notice or other communication published in any newspaper, magazine or similar media distributed in the United States, any seminar in the United States or any solicitation by a person in the United States not previously known to the Subscriber, and that Subscriber is not aware of any general solicitation within the United States or general advertising within the United States regarding the purchase or sale of the Membership Interests. The Subscriber acknowledges and confirms that it is not relying upon any statement, representation or warranty made by the Regional Center or its respective representatives in making a decision to subscribe for the Membership Interests. The Subscriber must rely solely on the terms of the Operating Agreement for the terms of Subscriber's participation in the Company and the rights and responsibilities of owning its Membership Interests.

7. <u>Residence</u>. The Subscriber represents and warrants that the Subscriber is a bona fide resident of the country set forth in his or her address below, and the undersigned agrees that if his or her principal residence changes prior to his/her purchase of the Membership Interests, he/she will promptly notify the Company. The Subscriber represents and warrants that the Subscriber is not a U.S. Person, is not a citizen or resident alien of the United States, and did not receive an offer to purchase the Membership Interests or the Memorandum in the United States and did not execute this Agreement and pay the Total Subscription Payment from within the United States. The Subscriber further agrees to execute and deliver to the Company an IRS Form W-8 certifying that he or she is a Non-Resident Alien. Such IRS Form W-8 is attached hereto.

8. <u>Reliance on Representations</u>. The Subscriber understands that the Company, the Regional Center, the Manager and VTI will be relying on the accuracy and completeness of all matters set forth in this Agreement, and the Subscriber represents and warrants to the Company, the Manager, the Regional Center, VTI and each of their respective affiliates that the information, representations, warranties, acknowledgments and all other matters set forth herein with respect to the Subscriber are complete, true and correct and do not fail to include any material fact necessary to make the facts stated, in light of the circumstances in which they are made, not misleading, and may be relied upon by the Company in determining whether the offer and sale of the Membership Interests to the Subscriber is exempt from registration under the Securities Laws, and the Subscriber will notify the Company immediately of any change in any

9

statement made herein that occurs prior to the consummation of the purchase of the Membership Interests hereunder.

9.   <u>Accredited Investor Status</u>.   The undersigned represents and warrants that Subscriber is an "Accredited Investor" and has accurately completed the Accredited Investor Status section of the signature page hereto in order to evidence same.  The Subscriber is also a "sophisticated person" in that Subscriber has such knowledge and experience in financial and business matters that individually and/or with the aid of advisers, it is capable of evaluating the merits and risks of an investment in the Company by making an informed investment decision with respect thereto.

10.   <u>Withholding Tax</u>.   The Subscriber acknowledges that in the event the Internal Revenue Service determines that the Subscriber's country of residence does not exchange adequate tax information with the United States, pursuant to Internal Revenue Code Sections 871(h)(6) or Section 881(c)(6), then the Company will be obligated to withhold United States income taxes and remit such taxes to the Internal Revenue Service, pursuant to applicable law, and the Subscriber consents to such withholding, pursuant to the terms of the Operating Agreement, there may be other grounds for withholding.

11.   <u>Confirmation</u>.   All information that the Subscriber has provided anywhere in this Agreement concerning the Subscriber and the Subscriber's financial position is correct and complete as of the date set forth below, and if there should be any material change in such information prior to the acceptance of the Subscriber's subscription for the Membership Interests that are being purchased, the Subscriber will immediately provide such information to the Company and Company's counsel.

12.   <u>Consultation with Independent Counsel and Tax Advisor</u>.   The Subscriber's investment in the Membership Interests is an investment in equity of a California limited liability company, which confers certain rights and liabilities upon the Subscriber pursuant to California law and the Company's Operating Agreement.  The Subscriber has been advised that Subscriber should consult with his or her own legal and tax advisors prior to executing this Agreement, acquiring any Membership Interests or consummating the transactions contemplated hereby. The Subscriber understands that the law firm for the Company, the Regional Center and the Manager represent only these entities in connection with the transactions contemplated by this Agreement, but does not represent the Subscriber, and such law firm makes no representation regarding the Regional Center, the Company or the Manager or the Subscriber's investment in Membership Interests.

13.   <u>Indemnification</u>.   The Subscriber hereby agrees to indemnify and hold harmless the Regional Center, the Company, the Manager, VTI and their respective affiliates, the other Members, and the respective employees, agents and attorneys of each of them against any and all losses, claims, demands, liabilities and expenses (including reasonable legal or other expenses) incurred by any such person or entity in connection with any claims or liabilities, whether or not resulting in any liability to such person or entity, to which any such indemnified party may become subject under the Securities Laws, under any other statute, at common law or otherwise, insofar as such losses, claims, demands, liabilities or expenses (a) arise out of or are based upon

10

any untrue statement or alleged untrue statement of a material fact made by Subscriber and contained in this Agreement, or (b) arise out of or are based upon any breach of any representation, warranty or agreement of Subscriber contained herein.

14.    <u>Cooperation.</u>  The Subscriber hereby agrees to provide such information and to execute and deliver such documents as may reasonably be necessary to comply with any and all laws and ordinances that the Company is subject to, including without limitation, such additional information as the Company may deem appropriate with regard to the undersigned's suitability to invest in the Company.

15.    <u>Attorney In Fact.</u>  The undersigned hereby irrevocably appoints Eric Chelini, the managing member of the Company's managing member, GSRV-VTI Management, LLC ("Manager"), acting individually, as the undersigned's true and lawful representative and attorney in fact in the undersigned's name, place and stead, (i) to receive and pay over to the Company on behalf of the undersigned, to the extent set forth in this Subscription Agreement, all funds received hereunder; (ii) to complete or correct, on behalf of the undersigned, all documents to be executed by the undersigned in connection with the undersigned's subscription for the Unit, including, without limitation, filling in or amending amounts, dates, and other pertinent information; and (iii) to execute, acknowledge, swear to and file, in the name and on behalf of the undersigned:  (A) the Operating Agreement, to be entered into pursuant to this Subscription Agreement and any amendments to which the undersigned is a signatory; (B) any subsequent amendments to any such amendments as provided in the Operating Agreement; (C) any agreements or other documents of any kind necessary or desirable to accomplish the business, purpose and objectives of the Company, as limited and defined in the Operating Agreement; (D) any certificates of the Company required by law and all amendments thereto; (E) all certificates and other instruments necessary to qualify, or continue the qualification of, the Company in the states where it may be doing business; (F) all assignments, conveyances or other instruments or documents necessary to effect the dissolution of the Company; and (G) all other filings with agencies of the federal government, of any state or local government, or of any other jurisdiction, which Manager considers necessary or desirable to carry out the purposes of this Subscription Agreement, the Operating Agreement and any amendments thereto and the business of the Company.  This power of attorney shall be deemed coupled with an interest, shall be irrevocable, shall survive the transfer of the undersigned's Unit and shall survive, and shall not be affected by, the subsequent death, disability, incapacity, incompetency, termination, bankruptcy, insolvency or dissolution of the undersigned.

16.    <u>Miscellaneous</u>.

(a)    <u>Severability</u>.  In the event any portions of this Agreement are found to be invalid, illegal, or unenforceable in any jurisdiction, the validity, legality, and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby, and such invalidity, illegality or unenforceability in one jurisdiction shall not affect the validity, legality or enforceability of any portions of this Agreement in any other jurisdiction.

(b)    <u>Entire Agreement; Amendment; Waiver</u>.  This Agreement constitutes the entire Agreement between the parties and supersedes all prior oral and written agreements

11

between the parties hereto with respect to the subject matter hereof. Neither this Agreement nor any provision hereof may be amended, modified, changed, waived, discharged or terminated orally, except by a statement in writing signed by the party or parties against whom enforcement or the change, waiver, discharge or termination is sought. No waiver of any provision of this Agreement shall be effective unless it is in writing and signed by the party against whom it is asserted, and any such written waiver shall only be applicable to the specific instance to which it relates and shall not be deemed to be a continuing or future waiver.

(c)    Governing Law; Venue; Jurisdiction.  This Agreement and any dispute, disagreement, or issue of construction or interpretation arising hereunder whether relating to its execution, its validity, the obligations provided therein or performance thereof shall be governed or interpreted according to the laws of the State of California, without giving effect to the conflict of laws provisions thereof. Any litigation arising under this Agreement shall be prosecuted exclusively in the state or federal courts residing in San Francisco, California and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein or for lack of personal jurisdiction. Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

(d)    Notices.  All notices, offers, acceptance and any other acts under this Agreement (except payment) shall be in writing, and shall be sufficiently given if delivered to the addressee in person, by Federal Express or similar receipted delivery, or if mailed, postage prepaid, by certified mail, return receipt requested, as follows:

|                      |                                           |
|----------------------|-------------------------------------------|
| The Subscriber:      | At the address designated on the signature page of this Agreement. |
| The Company:         | GSRV-VTI MANAGEMENT, LLC                   |
|                      | Attention: Eric Chelini                    |
|                      | One Sansome Street                         |
|                      | Suite 2080                                 |
|                      | San Francisco, CA 94104                    |
|                      | Telephone:  (415) 423-1223                 |
|                      | Email:  echelini@3gfund.com                |

or to such other address as either of them, by notice to the other may designate from time to time.

(e)    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. The execution of this Agreement may be by actual or facsimile signature.

(f)    Survival of Representations, Warranties and Agreements.  The representations, warranties and agreements contained herein shall survive the delivery of, and payment for, the Membership Interest.

12

(g)    <u>Assignability</u>.    This Agreement and the rights and obligations hereunder are not transferable or assignable by the Subscriber without the prior written consent of the Company.  Any such transfer or assignment shall be made, if at all, only in connection with, and subject to the conditions of, an assignment or transfer or Membership Interests under the Operating Agreement.  Any attempted transfer or assignment in violation of the foregoing shall be void *ab initio*.  The Subscriber acknowledges and agrees that as a condition of any such consent, the Company may require a proposed assignee to take certain actions and execute certain documents, including, without limitation, executing a separate subscription agreement, as it may reasonably determine, all as more particularly set forth in the Operating Agreement.

(h)    <u>Benefit</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their legal representatives, successors, and assigns.

(i)    <u>English Language</u>.  The English language text of this Agreement has been translated to a language in which each of the Members are competent and each Member understands all of the provisions of this Agreement.  The English language text and American usage thereof shall control the interpretation and construction of this Agreement and all other writings between the parties.

*(Signatures are on the following page)*

13

**IN WITNESS WHEREOF**, the undersigned Subscriber has executed this Agreement as of the date set forth below.

**SUBSCRIBER:**

_____
[Social Security Number or FEI Number] (if any)

_____
Print Exact Name of Subscriber

_____
Date of Subscriber's Execution

_____
Signature of Subscriber

*Total Subscription Amount*: $540,000.00

*Number of Units*: 1

_____
Principal Residential Street Address

_____
Country of Residence

_____
Telephone Number

_____
Fax Number

_____
E-mail Address

14

## ACCREDITED INVESTOR STATUS

Please indicate with an "X" the category or categories that accurately describe undersigned and qualify him or her as an "accredited investor" pursuant to Regulation D promulgated under the United States Securities Act of 1933, as amended and in effect as of the date hereof (the "Act"):

_____ (i)   a natural person whose individual net worth [1](or joint net worth with such person's spouse) exceeds $1,000,000;[2] or

_____ (ii)   a natural person who had an individual income[3] in excess of $200,000 in each of the two most recent years and who reasonably expects to have an individual income in excess of $200,000 in the current year, or who had joint income[4] in excess of $300,000 in each of the two most recent years and who reasonably expects to have joint income in excess of $300,000 in the current year.

---

[1]   For purposes of this item, "net worth" means the excess of total assets at fair market value, including any owned personal property, over total liabilities.  The value of your home is EXCLUDED from this calculation of your net worth. In addition, if the mortgage debt on the home exceeds the fair market value of the home, that excess amount must be treated as a liability for the purpose of this calculation.

[2]   Recent legislation also authorizes the SEC to make further adjustments to the net worth test on and after 2014.  Investors who qualify to acquire an interest in the Company will be allowed to continue to hold that interest even if qualifying standards increase.

[3]   For purposes of this item, "individual income" means adjusted gross income as reported for U.S. federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any interest income received which is tax-exempt under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code"), (ii) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040), (iii) any deduction claimed for depletion under Section 611 et seq. of the Code, and (iv) any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to the provisions of Section 1202 of the Code prior to its repeal by the Tax Reform Act of 1986.

[4]   For purposes of this item, "joint income" means adjusted gross income as reported for U.S. federal income tax purposes, including any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (including any amounts attributable to a spouse or to property owned by a spouse):  (i) the amount of any interest income received which is tax-exempt under Section 103 of the Code, (ii) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040), (iii) any deduction claimed for depletion under Section 611 et seq. of the Code, and (iv) any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to the provisions of Section 1202 of the Code prior to its repeal by the Tax Reform Act of 1986.

15

## ACCEPTANCE

By signing below, the undersigned accepts the foregoing subscription in **GSRV-VTI II, LLC,** in accordance with the terms hereof, for:

Subscriber Name:_____


**GSRV-VTI II, LLC,**
a California limited liability company

**By:    GSRV-VTI MANAGEMENT, LLC,** a
California limited liability company,
Its Manager


By:_____
Name: Eric Chelini
Title:   Manager


**Dated:_____**

16

# INVESTOR INFORMATION FORM

| Participant |
|---|

| NAME: | ☐ Person | ☐ Entity |
|---|---|---|

| DATE OF BIRTH: | PARTICIPANT ROLE: | **NOTE:** See below for the appropriate participant role code |
|---|---|---|

| MAILING ADDRESS: | CITY: | STATE: |
|---|---|---|

| PROVINCE/COUNTY/SUBDIVISION: | COUNTRY: | ZIP/POSTAL CODE: |
|---|---|---|

| TELEPHONE NUMBER:  (Day)                    (Evening) | E-MAIL: |
|---|---|

| UNEXPIRED PHOTO GOVERNMENT ID NUMBER: | TYPE OF UNEXPIRED PHOTO GOVERNMENT ID: |
|---|---|

| ISSUANCE DATE: | EXPIRATION DATE: |
|---|---|

| COUNTY OF GOVERNMENT IDENTIFICATION: | STATE/PROVINCE SUBDIVISION OF GOVERNMENT IDENTIFICATION: |
|---|---|

| UNEXPIRED PHOTO GOVERNMENT ID NUMBER: | TYPE OF UNEXPIRED PHOTO GOVERNMENT ID: |
|---|---|

| ISSUANCE DATE: | EXPIRATION DATE: |
|---|---|

| COUNTRY OF GOVERNMENT IDENTIFICATION: | STATE/PROVINCE SUBDIVISION OF GOVERNMENT IDENTIFICATION: |
|---|---|

| **NOTE:**  Unexpired Photo Government Identification should be provided for all nonresidential aliens, along with an IRS Form W-8BEN |
|---|

| CORPORATE/BUSINESS ID NUMBER (IF APPLICABLE): | FORMATION DATE OF CORPORATION/BUSINESS: |
|---|---|

| STATE/PROVINCE OF CORPORATION/BUSINESS: | COUNTRY OF CORPORATION/BUSINESS: |
|---|---|

| SIGNATURE |
|---|
| Please review your information above and the Subscription Agreement in its entirety, and sign below.  THE UNDERSIGNED REPRESENTS AND WARRANTS THAT THE INFORMATION PROVIDED IN THIS INVESTOR INFORMATION FORM IS TRUE, COMPLETE AND ACCURATE. |
| SIGNATURE:                                              DATE: |

| Participant Information |
|---|

The legal address **MUST** be a street address.  A post office box is not acceptable for a legal address.  A legal address is the person's permanent residence address or, in the case of an entity, the place where it maintains a physical presence.  For those investments by nonresident aliens and foreign entities, the legal address must be the same as the permanent residence address listed on IRS Form W-8BEN.

**NOTE:**  To help the government fight the funding of terrorism and money laundering activities, federal law requires certain "financial institutions" to obtain, verify, and record information that identifies each investor.  When you invest, we will ask for your name, address, date of birth, and other information that will allow us to identify you.  We may also ask you to provide a copy of your driver's license or other identifying documents.  The information you provide in this form may be used to perform a credit check and verify your identity by using internal sources and third party vendors.  If additional space is needed, please attach a separate sheet.

| Participant Roles |
|---|

The codes below designate the participant role for each participant in the investment.

| ADMN | Administrator | DRTR | Director | LPAR | Limited Partner | PATN | Power of Attorney |
|---|---|---|---|---|---|---|---|
| AGNT | Agent | EXEC | Executor | MNGR | Manager | PRM | Primary Investors |
| BENF | Beneficiary | GPMM | General Member/General Member | MMBR | Member | RIND | Responsible Individual |
| BORW | Borrower | GRNT | Grantor | MINR | Minor | SEC | Secondary Investors |
| CONS | Conservator | GRDN | Guardian | OFCR | Officer | STLR | Settler |
| CUST | Custodian | IPTY | Interested Party | PTNR | Partners | SHLR | Shareholder |
| DECD | Deceased | IMGR | Investment Manager | PREP | Personal Representative | SPSR | Sponsor |
| DPTR | Depositor | LHLD | Lien Holder | PLAD | Plan Administrator | TSTE | Trustee |

17

Form **W-8BEN**

(Rev. February 2014)

Department of the Treasury
Internal Revenue Service

## Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding and Reporting (Individuals)

▶ For use by individuals. Entities must use Form W-8BEN-E.
▶ Information about Form W-8BEN and its separate instructions is at *www.irs.gov/formw8ben*.
▶ Give this form to the withholding agent or payer. Do not send to the IRS.

OMB No. 1545-1621

| Do NOT use this form if: | Instead, use Form: |
|---|---|
| • You are NOT an individual | W-8BEN-E |
| • You are a U.S. citizen or other U.S. person, including a resident alien individual | W-9 |
| • You are a beneficial owner claiming that income is effectively connected with the conduct of trade or business within the U.S. (other than personal services) | W-8ECI |
| • You are a beneficial owner who is receiving compensation for personal services performed in the United States | 8233 or W-4 |
| • A person acting as an intermediary | W-8IMY |

### Part I — Identification of Beneficial Owner (see instructions)

**1** Name of individual who is the beneficial owner

**2** Country of citizenship

**3** Permanent residence address (street, apt. or suite no., or rural route). **Do not use a P.O. box or in-care-of address.**

City or town, state or province. Include postal code where appropriate.

Country

**4** Mailing address (if different from above)

City or town, state or province. Include postal code where appropriate.

Country

**5** U.S. taxpayer identification number (SSN or ITIN), if required (see instructions)

**6** Foreign tax identifying number (see instructions)

**7** Reference number(s) (see instructions)

**8** Date of birth (MM-DD-YYYY) (see instructions)

### Part II — Claim of Tax Treaty Benefits (for chapter 3 purposes only) (see instructions)

**9** I certify that the beneficial owner is a resident of _____ within the meaning of the income tax treaty between the United States and that country.

**10** **Special rates and conditions** (if applicable—see instructions): The beneficial owner is claiming the provisions of Article _____ of the treaty identified on line 9 above to claim a _____ % rate of withholding on (specify type of income): _____ .

Explain the reasons the beneficial owner meets the terms of the treaty article: _____

### Part III — Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:

- I am the individual that is the beneficial owner (or am authorized to sign for the individual that is the beneficial owner) of all the income to which this form relates or am using this form to document myself as an individual that is an owner or account holder of a foreign financial institution,
- The person named on line 1 of this form is not a U.S. person,
- The income to which this form relates is:
  (a) not effectively connected with the conduct of a trade or business in the United States,
  (b) effectively connected but is not subject to tax under an applicable income tax treaty, or
  (c) the partner's share of a partnership's effectively connected income,
- The person named on line 1 of this form is a resident of the treaty country listed on line 9 of the form (if any) within the meaning of the income tax treaty between the United States and that country, and
- For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner. **I agree that I will submit a new form within 30 days if any certification made on this form becomes incorrect.**

**Sign Here** ▶

Signature of beneficial owner (or individual authorized to sign for beneficial owner)

Date (MM-DD-YYYY)

Print name of signer

Capacity in which acting (if form is not signed by beneficial owner)

**For Paperwork Reduction Act Notice, see separate instructions.**

Cat. No. 25047Z

Form **W-8BEN** (Rev. 2-2014)

18