HANSON BRIDGETT LLP
LAWRENCE M. CIRELLI, SBN 114710
lcirelli@hansonbridgett.com
KAYLEN KADOTANI, SBN 294114
kkadotani@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

Attorneys for Defendants
ERIC CHELINI and GSRV-VTI
MANAGEMENT, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

HUI MA, AILING ZHAO, XI LIU, YIXUAN WANG, and RUI ZHANG,

Plaintiffs,

v.

GOLDEN STATE RENAISSANCE VENTURES, LLC, dba Golden Gate Global, a California Limited Liability Company; GSRV MANAGEMENT, LLC, a California Limited Liability Company; GSRV-VTI MANAGEMENT, LLC, a California Limited Liability Company; ERIC CHELINI, an individual; STEVEN KAY, an individual; and VERTEBRAL TECHNOLOGIES, INC., a Minnesota corporation,

Defendants.

Case No. 3:21-cv-00856-WHO

**DEFENDANTS ERIC CHELINI AND GSRV-VTI MANAGEMENT, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: May 26, 2021
Time: 2:00 PM
Ctrm: 2
Judge: the Hon. William H. Orrick

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 26, 2021 at 2:00 P.M., or as soon thereafter as this matter may be heard before the Honorable William H. Orrick in Courtroom 2 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants GSRV-VTI Management, LLC and Eric Chelini will, and hereby do, move pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ("FAA") and Rule 12(b)(3) of the Federal Rules of Civil Procedure, for an order compelling Plaintiffs Hui Ma, Ailing Zhao, Xi Liu, Yixuan Wang, and Rui Zhang ("Plaintiffs") to arbitrate the claims set forth in their Complaint for Damages, Restitution, and Other Appropriate Equitable Relief, and to dismiss the action or, alternatively, to stay the action in favor of arbitration. This motion is made on the grounds that valid, enforceable, and irrevocable agreements to arbitrate exist, which encompass the claims asserted in Plaintiffs' complaint against these moving defendants.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Eric Chelini and Kaylen Kadotani, and the exhibits thereto, and all papers and pleadings on file in this action, and upon such other and further evidence and argument as may be presented to the Court in connection with or at the hearing on this motion.

DATED: April 20, 2021

HANSON BRIDGETT LLP

By: */s/ Kaylen Kadotani*
LAWRENCE M. CIRELLI
KAYLEN KADOTANI
Attorneys for Defendants
ERIC CHELINI and GSRV-VTI
MANAGEMENT, LLC

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 6

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 6

A. Plaintiffs' allegations ..... 6

1. *The parties* ..... 6

2. *Summary of Plaintiffs' complaint* ..... 7

B. In connection with their investments, Plaintiffs executed certain agreements that include broad arbitration provisions. ..... 8

1. *The LP Plaintiffs' Agreements* ..... 8

2. *The LLC Plaintiffs' Agreements* ..... 10

C. Plaintiffs have rejected Defendants' request to submit this case to arbitration. ..... 11

III. LEGAL STANDARD ..... 11

IV. ARGUMENT ..... 12

A. The Court must enforce the arbitration clauses against Plaintiffs ..... 12

1. *Plaintiffs' agreements contain valid and enforceable arbitration provisions* ..... 12

2. *The arbitration agreements delegate the issue of arbitrability to the arbitrator, thus the Court is precluded from ruling on whether the arbitration clauses encompass Plaintiffs' claims.* ..... 14

3. *Even if the Court were to rule on whether the arbitration agreements encompassed Plaintiffs' complaint, the Court must still order the case to arbitration because Plaintiffs' complaint clearly falls within the broad arbitration provisions.* ..... 15

B. The Court should dismiss or, alternatively, stay this action pending arbitration ..... 17

V. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................ 11

*AT&T Techs., Inc. v. Communications Workers of Am.*,
475 U.S. 643 (1986) ........................................ 16

*Binder v. Aetna Life Ins. Co.*,
75 Cal. App. 4th 832 (1999) ........................................ 13

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002) ........................................ 18

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........................................ 14

*Burris v. Discover Bank*,
No. 8:19-cv-01092-JLS-DFM, 2019 WL 9516076 (C.D. Cal. Sept. 20, 2019) ........................................ 16

*Caviani v. Mentor Graphics Corp.*,
19-cv-01645-EMC, 2019 WL 4470820 (N.D. Cal. Sep. 18, 2019) ........................................ 14

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ........................................ 17

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ........................................ 12

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ........................................ 12

*Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*,
282 F.Supp.2d 1131 (N.D. Cal. 2003) ........................................ 16

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ........................................ 14

*Kaltwasser v. AT & T Mobility LLC*,
812 F.Supp.2d 1042 (N.D. Cal. 2011) ........................................ 12

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) ........................................ 17, 18

*Loewen v. McDonnell*, 403 F. Supp. 3d 832 (N.D. Cal. 2019) .......... 14

*Makarowski v. AT&T Mobility LLC*, No. CV 09-1590-GAF, 2009 WL 1765661 (C.D. Cal. Jun. 18, 2009) .......... 16

*Martin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*, 89 Cal. App. 4th 1042 (2001) .......... 13

*Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151 (9th Cir. 2013) .......... 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .......... 11, 12

*Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 12

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981 (9th Cir. 2017) .......... 14

*Reigelsperger v. Siller*, 40 Cal. 4th 574 (2007) .......... 13

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) .......... 14

*Rep. of Nicar. v. Standard Fruit Co.*, 937 F.2d 469 (9th Cir. 1991) .......... 17

*Rowe v. Exline*, 153 Cal.App.4th 1276 (2007) .......... 17

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) .......... 16

*Swift v. Zynga Game Network Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) .......... 18

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004) .......... 17

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989) .......... 12

**Statutes**

United States Code, Title 9,

§ 1 .......... 1

§ 2 .......... 12

§ 3 .......... 17

§ 4 .......... 12

**Other Authorities**

Code of Federal Regulations, Title 8,

§ 204.6 .......... 7

Federal Rules of Civil Procedure,

Rule 8 .......... 15

Rule 11 .......... 15

Rule 12 .......... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Hui Ma, Ailing Zhao, Xi Liu, Yixuan Wang, and Rui Zhang ("Plaintiffs") allege nine causes of action against Defendants Golden State Renaissance Ventures, LLC, dba Golden Gate Global; GSRV Management, LLC; GSRV-VTI Management, LLC; Eric Chelini; Steven Kay; and Vertebral Technologies, Inc. relating to investments that Plaintiffs made through the EB-5 Immigrant Investment Program ("**EB-5 Program**"). In short, the EB-5 Program provides an avenue for foreign investors to obtain U.S. residency if the investor meets certain qualifications and makes a substantial at-risk investment into a commercial enterprise that results in the creation of at least 10 full-time jobs for U.S. workers. Here, the Plaintiffs, who are Chinese citizens, allege that the Defendants committed fraud, breached fiduciary duties, and violated California's Unfair Competition Law, among other claims, with respect to their investments through this program.

In connection with and in furtherance of their EB-5 investments, the Plaintiffs were required to join one of two investment entities and execute certain agreements, which facilitated and governed the investments that were made towards Defendant Vertebral Technologies, Inc. ("**VTI**"). These agreements, however, contain valid, unambiguous, and broad arbitration provisions that encompass the claims made in Plaintiffs' complaint. Accordingly, Defendants GSRV-VTI Management LLC and Eric Chelini hereby move to compel arbitration, pursuant to the terms of these agreements.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' allegations

#### 1. *The parties*

Plaintiffs are individual Chinese citizens. (Complaint, ¶ 18 [Dkt. 1].) For purposes of this motion, Plaintiffs are distinguishable by their membership in one of two investment entities:

| GSRV-VTI, LP | GSRV-VTI II, LLC |
|---|---|
| Hui Ma<br>Ailing Zhao<br>Yixuan Wang | Xi Liu<br>Rui Zhang |

(See, *id.*, ¶¶ 6, 83, 92; FN 1.) Plaintiffs Ma, Zhao, and Wang are collectively referred to herein as

the "**LP Plaintiffs**," and Plaintiffs Liu and Zhang are collectively referred to herein as the "**LLC Plaintiffs**."

Plaintiffs allege that Defendant Golden State Renaissance Ventures, LLC, dba Golden Gate Global ("**GSRV LLC**") owns the "regional center"[1] for purposes of participation in the EB-5 Program. (*Id.*, ¶ 21.) Defendant GSRV Management, LLC was created in 2011 to serve as GSRV LLC's manager. (*Id.*, ¶ 22.) Defendant Steven Kay is a member of GSRV LLC and a controlling member and manager of GSRV Management, LLC. (*Id.*, ¶ 25.) GSRV LLC, GSRV Management, LLC, and Steven Kay are collectively referred to herein as the "**GGG Defendants**."

Plaintiffs also allege that Defendant GSRV-VTI Management, LLC is the designated manager of GSRV-VTI II, LLC (*i.e.*, the LLC investment entity) and became the General Partner of GSRV-VTI, LP (*i.e.*, the LP investment entity). (*Id.*, ¶¶ 23, 84, 90.) Plaintiffs further allege that Defendant Eric Chelini was the founder of the GSRV Regional Center and was, at all relevant times, the manager and sole member of GSRV-VTI Management, LLC. (*Id.*, ¶ 24.) This motion is filed jointly on behalf of Defendants Eric Chelini and GSRV-VTI Management, LLC (the "**GSRV-VTI Defendants**").

Finally, Defendant VTI is a medical device manufacturing company based out of Minnesota with facilities in Santa Clara County. (*Id.*, ¶¶ 4, 27.) Plaintiffs allege that their EB-5 investments were used to purchase VTI stock. (*Id.*, ¶ 8.)

2. ***Summary of Plaintiffs' complaint***

Plaintiffs allege that they each invested $500,000 (plus a $40,000 fee) in an EB-5 "commercial enterprise," which was intended to develop the manufacturing capacity of VTI in the San Jose, California area. (*Id.*, ¶¶ 2,4.) In furtherance of their participation in these investments, Plaintiffs entered agreements and purchased interests in one of two investment entities, GSRV-VTI, LP or GSRV-VTI II, LLC. (*Id.*, ¶¶ 6, 83, 92.) In turn, the investment entities purchased shares of VTI stock, pursuant to a stock purchase agreement. (*Id.*, ¶¶ 8, 95-96.)

---

[1] "An EB-5 regional center is defined as "any economic unit, public or private, which is involved with the promotion of economic growth, including increased expert sales, improved regional productivity, job creation, and increased domestic capital investment." (Compl., ¶ 32 [citing 8 C.F.R. § 204.6(e) (2015)].)

The thrust of Plaintiffs' complaint is that the Defendants allegedly committed fraud, breached fiduciary duties, and otherwise mismanaged Plaintiffs' investments, such that the funds were allegedly used in a manner inconsistent with the terms of the stock purchase agreement and not in furtherance of VTI's manufacturing facility in San Jose, California. For example, Plaintiffs allege that: they were misled and not informed about VTI's "deteriorating finances" (*Id.*,¶¶ 97-110), VTI had misused Plaintiffs' EB-5 investment funds in violation of the stock purchase agreement (*Id.*, ¶¶ 111-117), and that they were not informed about "crucial changes in circumstances" relating to alleged internal conflicts involving the "GSRV entities" and "claims of mental incapacity." (*Id.*, ¶¶ 118-137.) As a result, Plaintiffs' complaint suggests that their investments have been squandered and their immigration status under the EB-5 Program has been jeopardized.

Plaintiffs' complaint lists nine causes of action, including: (1) fraudulent inducement; (2) breaches of fiduciary duties owed by LLC managers; (3) breaches of fiduciary duties owed by general partners; (4) constructive fraud; (5) fraudulent concealment; (6) conversion; (7) violation of Minnesota's Voidable Fraudulent Transfers Act; (8) violation of California's Unfair Competition Law; and (9) failure to provide documents and accounting.

**B. In connection with their investments, Plaintiffs executed certain agreements that include broad arbitration provisions.**

As noted above, in furtherance of their EB-5 investments, Plaintiffs executed agreements and purchased shares in one of two investment entities. These agreements are discussed below.

1. ***The LP Plaintiffs' Agreements***

In response to a Private Offering Memorandum, which explained and offered to foreign investors the opportunity to invest in VTI through the EB-5 program, the LP Plaintiffs executed GSRV-VTI, LP's Subscription Agreement for Limited Partnership Interest Unit ("**LP Subscription Agreement**"). (Declaration of Eric Chelini ("Chelini Dec.") at ¶ 2; Exhibits A-C; see also, Compl., ¶ 83.) These agreements provided each subscribing investor a "unit" of Limited Partnership interests in GSRV-VTI, LP, in exchange for a payment of $540,000 "in accordance with the terms and conditions described [in the LP Subscription Agreement] and the Limited

Partnership Agreement of GSRV-VTI, LP" ("**Partnership Agreement**"). (Exhibits A-C, at § 1(a).) The LP Subscription Agreements further appointed Eric Chelini as each subscribing investor's "true and lawful representative and attorney in fact in [the subscribing investor's] name, place and stead, . . . (iii) to execute, acknowledge, swear to and file, in the name and on behalf of the [subscribing investor]: (A) the Partnership Agreement, to be entered into pursuant to this Subscription Agreement[.]" (Exhibits A-C, at § 1(c).) The LP Subscription Agreements also state that "[t]his Subscription Agreement, the [Private Offering] Memorandum, and the Company's Limited Partnership Agreement sets forth the entire agreement and understanding among the parties hereto with respect to the transactions contemplated hereby and supersedes any and all prior agreements and understandings relating to the subject matter hereof." (Exhibits A-C, at § 6.) Thus, pursuant to the LP Subscription Agreements, each of the LP Plaintiffs also agreed to the terms and conditions of the Partnership Agreement. (Chelini Dec., ¶ 3.)

The Partnership Agreement was entered into by and among GSRV-VTI Management LLC, as its general partner, and the limited partners, *i.e*., the investors whose LP Subscription Agreements had been accepted by the general partner. (Chelini Dec., ¶ 4; Exhibit D, at § 1.1.) Mr. Chelini executed the agreement on behalf of GSRV-VTI Management. (Chelini Dec., ¶ 4; Exhibit D, at pg. 27.) The Partnership Agreement states that the "primary objectives of the Partnership are to invest in [VTI] by acquiring shares of common and/or preferred stock of VTI . . .; advance the strict social criteria of the East Bay Regional Center; and assist in the qualification of the Limited Partners seeking lawful conditional and permanent residence . . . in the United States through the [EB-5 Program], in accordance with the confidential Private Offering Memorandum[.]" (Exhibit D, at § 6.)

The Partnership Agreement includes the following arbitration clause:

> Arbitration. **The Partners waive their right to seek remedies in court, including any right to a jury trial**. The Partners agree that in the event of ***any* dispute arising between the parties, such dispute shall be settled by arbitration** to be conducted in the county and state of the principal office of the General Partner at the time of such dispute **in accordance with the rules of the Judicial Arbitration and Mediation Service ("JAMS") applying the laws of California. Disputes will not be resolved in any other forum or venue.** The Partners agree that such arbitration shall be conducted by one or more mutually-agreeable arbitrators or, if no agreement can be reached, by a panel of arbitrators consisting of one arbitrator

> chosen by each of the participating parties, plus an additional arbitrator chosen by the arbitrators. Pre-arbitration discovery shall be limited to the greatest extent provided by the rules of JAMS, the arbitration award will not include factual findings or conclusions of law, and no punitive damages shall be awarded. The Partners understand that any party's right to appeal or to seek modification of rulings in an arbitration is severely limited. Any award rendered by the arbitrators shall be final and binding and judgment may be entered upon it in any court of competent jurisdiction in the county and state of the principal office of the General Partner at the time such award is rendered. The Partners consent to conducting any arbitration under this Agreement at a location and facility recommended by the arbitrator, which shall not be located more than twenty (20) miles from the address of the General Partner.

(*Id*., § 22) (emphases added.) The parties have also agreed that the Partnership Agreement shall be interpreted under California law. (*Id*., § 25.)

2. ***The LLC Plaintiffs' Agreements***

Similar to the LP Plaintiffs, the LLC Plaintiffs also executed a Subscription Agreement ("**LLC Subscription Agreement**") to acquire interests in the second investment entity, GSRV-VTI II, LLC, for the purposes of investing in VTI through the EB-5 Program. (Chelini Dec., ¶ 5; Exhibits E-F, at Recitals, §§ A, E.) The LLC Subscription Agreements required each subscriber to also accept and execute the Amended and Restated Operating Agreement of GSRV-VTI II, LLC ("**LLC Operating Agreement**") to complete the subscription process. (Chelini Dec., ¶ 6; Exhibits E-F, at Recitals, § G.)

The LLC Operating Agreements were entered into by and among GSRV-VTI Management, LLC, as the Manager of the LLC, and the investors (*i.e*., LLC Plaintiffs), as Members of the LLC. (Chelini Dec., ¶ 7; Exhibits G-H, at pg. 2, §§ 1.31, 1.36; see also, Compl., ¶ 92.) Mr. Chelini executed the agreement on behalf of GSRV-VTI Management, LLC. (Chelini Dec., ¶ 7; Exhibits G-H, at pg. 35.) The LLC Operating Agreements state that the "primary objectives" of GSRV-VTI II, LLC are to "invest in [VTI]," advance the strict social criteria of the regional center, and to assist "in the qualification of its Investing Members seeking lawful conditional and permanent residence" through the EB-5 Program. (Exhibits G-H, at § 4.1.)

The LLC Operating Agreements also contain the following arbitration clause:

> <u>Arbitration</u>: ***Any*** **dispute, controversy or claim** ***arising out of*** **or** ***in connection with,*** **or** ***relating to,*** **this Agreement** or any breach or alleged breach hereof, except allegations of violations of federal or state securities laws, **shall**, with the consent of the Manager (which must be given, if at all, in writing and within ten days of the

> date such matter matures), **be submitted to and settled by arbitration in the State of California**, **pursuant to the rules then in effect of the American Arbitration Association** (or at any other place or under any other form of arbitration mutually acceptable to the parties so involved), with venue in San Francisco, California. Any award rendered shall be final and conclusive upon the parties, and a judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction. The expenses of the arbitration shall be borne equally by the parties thereto provided that each party shall pay for and bear the cost of its own experts, gathering of evidence and counsel's fees, except that in the discretion of the arbitrator, any award may include the cost of the party's counsel fees if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy or claim to be submitted to arbitration as a dilatory tactic or that such matter is frivolous.

(*Id*., at § 20.3) (emphases added.) The parties have also agreed that the LLC Operating Agreements shall be interpreted under California law. (*Id*., at § 20.9.)

### C. Plaintiffs have rejected Defendants' request to submit this case to arbitration.

On April 9, 2021, counsel for all parties participated in a video conference in which the subject of arbitration pursuant to the above contract provisions was discussed. (Declaration of Kaylen Kadotani, filed herewith ("Kadotani Dec."), at ¶ 2.) During that conference, counsel for the GGG Defendants, along with counsel for the GSRV-VTI Defendants, informed Plaintiffs' counsel that these defendants were considering moving this case into arbitration. (*Ibid*.) The parties agreed to continue the conference to April 13, 2021 so that all counsel could review the relevant agreements and prepare for a more-substantive meet-and-confer. (*Ibid*.) On April 13th, the GGG and GSRV-VTI Defendants reiterated their intention and request that the case proceed to arbitration pursuant to the above-referenced agreements. (*Id.*, ¶ 3.) Counsel for VTI also indicated a willingness to proceed to arbitration. (*Ibid.*) Plaintiffs' counsel disagreed with the applicability of the arbitration provisions and advised that Plaintiffs would not agree to arbitration. (*Id*., ¶ 4.)

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983). As a result, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like

defense to arbitrability." *Id*. at 24–25.

In deciding a motion to compel arbitration, the court must apply a two-part test: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1119 (9th Cir. 2008) (citation omitted). A party seeking arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *See, Peter v. DoorDash, Inc*., 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020). "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). "In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation." *Kaltwasser v. AT & T Mobility LLC*, 812 F.Supp.2d 1042, 1046 (N.D. Cal. 2011) (citations omitted); *see also* 9 U.S.C. § 2. In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ*., 489 U.S. 468, 476 (1989).

Assuming the test is met, "the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); see also 9 U.S.C. § 4.

## IV. <u>ARGUMENT</u>

### A. The Court must enforce the arbitration clauses against Plaintiffs

Because Plaintiffs are bound by valid arbitration clauses and the clauses encompass the claims at issue in this case, the Court *must* order this case to proceed to arbitration. *Cox*, 533 F.3d at 1119; *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.

#### 1. ***Plaintiffs' agreements contain valid and enforceable arbitration provisions***

Under California law,[2] mutual assent is the key to contract formation and consent may be manifested by conduct. *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). Generally, "one who signs an instrument, which on its face is a contract, is deemed to assent to all its terms." *Martin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc*., 89 Cal. App. 4th 1042, 1049 (2001). Unexpressed subjective intentions are irrelevant. *Reigelsperger v. Siller*, 40 Cal. 4th 574, 579-80 (2007).

Here, there is no dispute that both sets of Plaintiffs have entered into agreements that include valid arbitration provisions. First, as set forth above, each of the LP Plaintiffs executed the LP Subscription Agreement, which explicitly identifies and integrates the terms and provisions of the Partnership Agreement. (*See*, Chelini Dec., ¶ 2; Exhibits A-C, at §§ 1(a), 6.) Moreover, the LP Plaintiffs also agreed to appoint Eric Chelini as their attorney in fact to enter into the Partnership Agreement on their behalf in furtherance of the investment enterprise. (Exhibits A-C, at § 1(c).) And, as discussed above, the Partnership Agreement includes a clear, conspicuous, and explicit arbitration provision, in which the parties "waive[d] their right to seek remedies in court" and have agreed to resolve "*any* dispute arising between [them] . . . by arbitration." (Exhibit D, at § 22.) As a result, there exists a valid arbitration agreement among the LP Plaintiffs and GSRV-VTI, LP's general partner, GSRV-VTI Management, LLC – of which Eric Chelini is the managing member.

Second, in connection with their EB-5 investments, the LLC Plaintiffs executed the LLC Operating Agreement with GSRV-VTI, LLC's manager, GSRV-VTI Management, LLC. This agreement also includes a clear, conspicuous, and explicit arbitration provision, which mandates that "*[a]ny* dispute, controversy or claim *arising out of* or *in connection with*, or *relating to*, this Agreement or any breach or alleged breach hereof, . . . be submitted to and settled by arbitration." (Exhibits G-H, at § 20.3) (emphases added.) Thus, there exists a valid arbitration agreement among the LLC Plaintiffs and GSRV-VTI Management, LLC – of which Eric Chelini is the managing member.

[2] By their terms, the Partnership Agreement and LLC Operating Agreement are to be interpreted under California law.

All Plaintiffs have agreed to arbitration, pursuant to the relevant contract documents.

2. ***The arbitration agreements delegate the issue of arbitrability to the arbitrator, thus the Court is precluded from ruling on whether the arbitration clauses encompass Plaintiffs' claims.***

Normally, the second question the Court would address in a motion to compel arbitration is whether the arbitration agreements encompass the parties' dispute. Here, however, the Court need not reach this issue because both agreements contain a delegation clause that empowers the arbitrator to make this jurisdictional determination. While the question of "whether the parties have submitted a particular dispute to arbitration" is generally an issue for "judicial determination," the arbitrator can make that determination where the parties "clearly and unmistakably" so provide. *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002); *see also*, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or **whether their agreement covers a particular controversy**.") (Emphasis added.)

Indeed, "when the parties have incorporated by reference the rules of the American Arbitration Association ('AAA'), [for example], which state in relevant part that the arbitrator shall have the power to rule on his or her own jurisdiction . . .," the parties have "clearly and unmistakably" delegated questions of arbitrability to the arbitrator. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (citing *Brennan v. Opus Bank,* 796 F.3d 1125, 1130 (9th Cir. 2015)); *see also, Caviani v. Mentor Graphics Corp.*, 19-cv-01645-EMC, 2019 WL 4470820, at *4 (N.D. Cal. Sep. 18, 2019) ("When a signed arbitration agreement includes a reference to specific arbitration rules – e.g., AAA, JAMS, etc. – the Ninth Circuit has held that the parties agreed to delegate arbitrability itself to the arbitrator."); *Loewen v. McDonnell*, 403 F. Supp. 3d 832, 838 (N.D. Cal. 2019) ("The Court is persuaded by the **prevailing view** that the 'incorporat[ion] [of] rules that empower an arbitrator to decide issues of arbitrability . . . serves as **clear and unmistakable evidence** of the parties' intent to delegate such issues to an arbitrator") (emphasis added.)

Here, both arbitration provisions specifically reference private arbitration rules, and thus

delegate the issue to the arbitrator. First, the Partnership Agreement states that disputes "shall be settled by arbitration . . . **in accordance with the rules of the Judicial Arbitration and Mediation Services** ('JAMS')." (Chelini Dec., Exhibit D, § 22) (emphasis added.) JAMS has two sets of arbitration rules, both of which state that:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability as a preliminary matter.

(Kadotani Dec., at ¶¶ 5-8, Exhibit 1, at Rule 11(b), and Exhibit 2, at Rule 8(b) [attaching JAMS Comprehensive Arbitration Rules & Procedures and Streamlined Arbitration Rules & Procedures].)

Second, the LLC Operating Agreement requires that disputes "be submitted to and settled by arbitration in the State of California, **pursuant to the rules then in effect of the American Arbitration Association** (or at any other place or under any other form of arbitration mutually acceptable to the parties so involved)." (Chelini Dec., Exhibits G-H, at § 20.3) (emphasis added.) AAA's arbitration rules provide that:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterlcaim.

(Kadotani Dec., ¶¶ 9-11; Exhibit 3, at R-7(a) [attaching AAA Commercial Arbitration and Mediation Procedures].)

Accordingly, because both agreements delegate certain "gateway" questions to the arbitrators under the applicable JAMS and AAA rules, including questions of jurisdiction, arbitrability, scope of agreement, among others, the Court need not rule on whether the agreements encompass the claims raised in Plaintiffs' complaint. The agreements have properly delegated this inquiry to the arbitrators.

   3. ***Even if the Court were to rule on whether the arbitration agreements encompassed Plaintiffs' complaint, the Court must still order the case to arbitration because Plaintiffs' complaint clearly falls within the broad arbitration provisions.***

Under the FAA, a court must compel arbitration, "unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am*., 475 U.S. 643, 650 (1986) (citations omitted). "To require arbitration, [] **factual allegations need only 'touch matters' covered by the contract** containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc*., 175 F. 3d 716, 721 (9th Cir. 1999) (emphasis added.) "The preference for arbitration is particularly strong when the arbitration clause is broad." *Homestake Lead Co. of Mo. v. Doe Run Res. Corp*., 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003) (citations omitted). Courts routinely conclude that arbitration provisions using the phrases "arising under" or "relating to" "generally indicate an intent to arbitrate a broad scope of claims." *Burris v. Discover Bank*, No. 8:19-cv-01092-JLS-DFM, 2019 WL 9516076, at *3 (C.D. Cal. Sept. 20, 2019) (language "arising out of or relating to … the relationships resulting from this Account or any other dispute between [the parties]" was "especially broad"); *Makarowski v. AT&T Mobility LLC*, No. CV 09-1590-GAF (CWx), 2009 WL 1765661, at *3 (C.D. Cal. Jun. 18, 2009) (language "all disputes and claims" between the parties was "all encompassing").

Here, both arbitration clauses are broadly phrased and undoubtedly encompass Plaintiffs' complaint. The relevant language from the Partnership Agreement states that "The Partners **waive their right to seek remedies in court**, including any right to a jury trial. The Partners agree that in the event of ***any*** **dispute arising between the parties**, such dispute shall be settled by arbitration . . ." (Chelini Dec., Exhibit D, at § 22) (emphasis added.) Similarly, the LLC Operating Agreement states, in relevant part, that "**[a]ny dispute**, controversy or claim **arising out of** or **in connection with**, or **relating to**, **this Agreement** or any breach or alleged breach hereof, except allegations of violations of federal or state securities laws, shall, . . . be submitted to and settled by arbitration." (Chelini Dec., Exhibits G-H, at § 20.3.)

Both agreements clearly demonstrate an intent to cover a broad scope of claims. The factual allegations in Plaintiffs' complaint do not just "'touch matters' covered by the contract[s] containing the arbitration clause[s]"; the crux of Plaintiffs' entire complaint stems from, involves, relates to, and depends on these underlying contracts. Plaintiffs' participation in the EB-5 Program and the VTI investment enterprise required them to join the investment entities and thus execute

the subject agreements. In other words, this dispute would not exist had Plaintiffs not entered these agreements. As a result, the entirety of the complaint, including Plaintiffs' claims for fraudulent inducement and concealment, breaches of fiduciary duties, conversion, unfair competition, and failure to provide documents, is related to and arises out of these investment entities and the subject agreements. Moreover, Defendants GSRV-VTI Management, LLC and Eric Chelini are signatories to these critical agreements and are alleged to have committed and/or aided and abetted in the acts and omissions in Plaintiffs' complaint. Thus, the arbitration agreements unquestionably encompass Plaintiffs' claims against these defendants. The GGG Defendants should also be compelled to arbitrate Plaintiffs' claims because the GGG Defendants are alleged to be alter egos of the GSRV-VTI Defendants, notwithstanding that some of GGG Defendants are not signatories to the arbitration agreements. *See, Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006) (non-signatory alter egos may be bound to arbitration agreements); *Rowe v. Exline*, 153 Cal.App.4th 1276, 1285 (2007) (alleged alter egos of a party are effectively the same as the party).

In sum, the GSRV-VTI Defendants satisfy the two-part test required to compel this case into arbitration. The Plaintiffs have clearly executed and are thus bound by valid arbitration agreements; the agreements properly delegate questions of jurisdiction and arbitrability to the arbitrators; and, in any event, the arbitration agreements encompass the subject dispute.

**B. The Court should dismiss or, alternatively, stay this action pending arbitration**

The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Rep. of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991); *see also*, 9 U.S.C. § 3. District courts have discretion to dismiss an action where all claims in the action are subject to an arbitration agreement. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1060 (9th Cir. 2004). Even if the Court declines to dismiss the action, Defendants are entitled to a stay. *Leyva v. Certified Grocers of Cal., Ltd*., 593 F.2d 857, 863–64 (9th Cir. 1979). And even if only some of the claims in this action are subject to arbitration, the entire action should be stayed because courts routinely grant motions to stay where a ruling by the arbitrator on the arbitrable claims may impact the resolution of the claims before the court, and awaiting a ruling by the arbitrator might conserve the court's

resources. *Swift v. Zynga Game Network Inc*., 805 F. Supp. 2d 904, 917-18 (N.D. Cal. 2011); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002). So too here. Accordingly, this court should exercise its broad discretion and stay the entire action pending arbitration. *Leyva*, 593 F.2d at 863-64 (a court's exercise of discretion "does not require that the issues in [arbitration] are necessarily controlling of the action before the court").

**V. CONCLUSION**

The Partnership Agreement and LLC Operating Agreement both contain valid, enforceable, and irrevocable arbitration clauses. These clauses also properly delegate issues with respect to jurisdiction and arbitrability to the arbitrators, thus the Court need not determine whether these agreements encompass the claims raised in Plaintiffs' complaint. However, even if the Court were to make this determination, the same conclusion would result because Plaintiffs' complaint unquestionably falls within the broad arbitration clauses in Plaintiffs' agreements.

Accordingly, for the reasons discussed above, Defendants GSRV-VTI Management, LLC and Eric Chelini respectfully request that the Court grant this motion and order this case to proceed to arbitration. The moving defendants further request that the Court dismiss this action or, alternatively, stay this action pending arbitration.

DATED: April 20, 2021

HANSON BRIDGETT LLP

By: */s/ Kaylen Kadotani*

LAWRENCE M. CIRELLI
KAYLEN KADOTANI
Attorneys for Defendants
ERIC CHELINI and GSRV-VTI
MANAGEMENT, LLC