1  ROBERT H. BUNZEL (SBN 99395)
     *rbunzel@bzbm.com*
2  SEAN R. McTIGUE (SBN 286839)
     *smctigue@bzbm.com*
3  JOSEPH J. FRARESSO (SBN 289228)
     *jfraresso@bzbm.com*
4  BARTKO ZANKEL BUNZEL & MILLER
   A Professional Law Corporation
5  One Embarcadero Center, Suite 800
   San Francisco, California 94111
6  Telephone: (415) 956-1900
   Facsimile:  (415) 956-1152
7
8  Attorneys for Defendants GOLDEN STATE
   RENAISSANCE VENTURES, LLC; GSRV
   MANAGEMENT, LLC; and STEVEN KAY
9

10                    UNITED STATES DISTRICT COURT

11        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12

13  HUI MA, AILING ZHAO, XI LIU, YIXUAN      Case No. 3:21-cv-00856-WHO
    WANG, and RUI ZHANG,
14                                            **DEFENDANTS GOLDEN STATE**
                 Plaintiffs,                  **RENAISSANCE VENTURES, LLC, GSRV**
15                                            **MANAGEMENT, LLC AND STEVEN**
            v.                                **KAY'S NOTICE OF MOTION AND**
16                                            **MOTION TO COMPEL ARBITRATION;**
    GOLDEN STATE RENAISSANCE                   **MEMORANDUM OF POINTS AND**
17  VENTURES, LLC., dba Golden Gate Global,    **AUTHORITIES IN SUPPORT**
    a California Limited Liability Company;
18  GSRV MANAGEMENT, LLC, a California         Judge:   Hon. William H. Orrick
    Limited Liability Company; GSRV-VTI       Date:    May 26, 2021
19  MANAGEMENT, LLC, a California Limited      Time:    2:00 p.m.
    Liability Company; ERIC CHELINI, an       Crtrm.:  2, 17th Floor
20  individual; STEVEN KAY, an individual; and
    VERTEBRAL TECHNOLOGIES, INC., a
21  Minnesota corporation,

22               Defendants.

23

24

25

26

27

28

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on May 26, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 2, via Zoom, before the Honorable William H. Orrick in the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California, Defendants Golden State Renaissance Ventures, LLC, dba Golden Gate Global (GGG), GSRV Management, LLC and Steven Kay will move this Court for an Order compelling arbitration.

This motion is based upon 9 U.S.C. § 4 and Plaintiffs being parties to a partnership agreement and operating agreement affecting interstate commerce that both contain arbitration provisions encompassing Plaintiffs' claims against Defendants.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Robert H. Bunzel, the Declaration of Eric Chelini in Support of Defendants Eric Chelini and GSRV-VTI Management, LLC's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Proceedings (to be filed in connection with Defendants GSRV-VTI Management, LLC and Chelini's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Proceedings), all cited authorities, all pleadings and papers on file in this action, and such oral argument and other evidence as the Court shall consider prior to or at the time of hearing on this Motion.

DATED:  April 20, 2021

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation


By:      /s/ Robert H. Bunzel
Robert H. Bunzel
Attorneys for Defendants GOLDEN STATE
RENAISSANCE VENTURES, LLC; GSRV
MANAGEMENT, LLC; and STEVEN KAY

# **<u>TABLE OF CONTENTS</u>**

**Page**

I.     INTRODUCTION ................................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................................2

    A.    The Relationship Between the Parties ......................................................................2

    B.    The Partnership Agreement for GSRV-VTI and Operating Agreement for GSRV-VTI II that Govern the Relationships Between the Plaintiffs and GGG Defendants Include Arbitration Clauses ............................................................3

    C.    Plaintiffs' Breach of Fiduciary Duty Claims are Premised on the LP Partnership Agreement and LLC Operating Agreement ...........................................4

    D.    Plaintiffs Allege Defendants Are Alter Egos and Frequently Treat Defendants Collectively as a Single Actor When Pleading Their Claims ................5

III.    THE COURT SHOULD COMPEL PLAINTIFFS TO ARBITRATE CLAIMS AGAINST THE GGG DEFENDANTS: GSRV, LLC, GSRV MANAGEMENT, LLC, AND STEVEN KAY ........................................................................................................5

    A.    The Parties Delegated the Decision to Determine Whether Plaintiffs' Claims Are Arbitrable to the Arbitrator So This Court Need Not Reach Arbitrability ..............................................................................................................5

    B.    In Any Event, the Broad Arbitration Clauses in the LP Partnership Agreement and LLC Operating Agreement Encompass Plaintiffs' Claims Against the GGG Defendants ....................................................................................7

        1.    Fiduciary-Duty-Based Claims ......................................................................8

        2.    Fraud-Based Claims .....................................................................................8

        3.    Conversion Claims ......................................................................................10

    C.    The Court Should Compel Plaintiffs' Claims Against the GGG Defendants to Arbitration ..........................................................................................................11

        1.    Defendant GSRV, LLC is Alleged to Be a Signatory to the LP Partnership Agreement that Can Compel Plaintiffs and Alter Ego Defendants to Arbitrate Plaintiffs' Claims .................................................11

        2.    The GGG Defendants Are Alleged Alter Egos of GSRV-VTI Management, LLC And Consent to Arbitrate LLC Plaintiffs' Claims Together with GSRV-VTI Management, LLC ..............................................11

        3.    The GGG Defendants Are Alleged Alter Egos of Parties to the LP Partnership and LLC Operating Agreements That Are Entitled to Enforce the Arbitration Provisions Contained in These Agreements ..........12

        4.    GGG Defendants Are Allowed to Move to Compel Pursuant to Equitable Estoppel ...................................................................................13

IV.     THE COURT SHOULD STAY NON-ARBITRABLE CLAIMS, IF ANY,
        PENDING THE RESOLUTION OF THE ARBITRATION ..................................................14

V.      CONCLUSION ..............................................................................................................16

DEFENDANTS' NOTICE OF MOTION TO COMPEL ARBITRATION; MPA IN SUPPORT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ambercroft Trading Ltd. v. Biddy,*
    2020 WL 1820599 (N.D. Cal., Case No. 19-cv-06810, Apr. 10, 2020) ................................. 6

5

6

*Arthur Andersen LLP v. Carlisle,*
    556 U.S. 624 (2009) ............................................................................................................. 12, 13

7

8

*Brennan v. Opus Bank,*
    796 F.3d 1125 (9th Cir. 2015) ..................................................................................................... 6

9

*Caviani v. Mentor Graphics Corporation,*
    2019 WL 4470820 (N.D. Cal., Case No. 19-cv-01645, Sept. 18, 2019) ................................. 6

10

11

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.,*
    2020 WL 620294 (C.D. Cal., Case No. 8:19-CV-00642, Jan. 9, 2020)................................. 14

12

*Comer v. Micor, Inc.,*
    436 F.3d 1098 (9th Cir. 2006)........................................................................................... 11, 12

13

14

*Dryer v. Los Angeles Rams,*
    40 Cal. 3d 406 (1985)................................................................................................................. 7

15

16

*Goldman v. KPMG LLP,*
    173 Cal. App. 4th 209 (2009).............................................................................................. 13, 14

17

*Guidewire Software, Inc. v. Chookaszian,*
    2012 WL 5379589 (N.D. Cal., Case No. 12-cv-03224, Oct. 31, 2012)................................... 7

18

19

*Hawkins v. KPMG LLP,*
    423 F. Supp. 2d 1038 (N.D. Cal. 2006) ................................................................................. 13

20

21

*In re Henson,*
    869 F.3d 1052 (9th Cir. 2017).................................................................................................. 13

22

*Hofer v. Emley,*
    2019 WL 4575389 (N.D. Cal., Case No. No. 19-CV-02205, Sept. 20, 2019)........................ 13

23

24

*In re Holl,*
    925 F.3d 1076 (9th Cir. 2019)................................................................................................... 6

25

26

*Kramer v. Toyota Motor Corp.,*
    705 F.3d 1122 (9th Cir. 2013).................................................................................................. 14

27

*Levi Strauss & Co. v. Aqua Dynamics Systems, Inc.,*
    2016 WL 6082415 (N.D. Cal., Case No. 15-cv-04718, Oct. 18, 2016)................................. 12

28

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ............................................................. 15

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ............................................................. 13

*NORCAL Mutual Ins. Co. v. Newton*,
    84 Cal. App. 4th 64 (2000) ................................................................. 13

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
    862 F.3d 981 (9th Cir. 2017) ........................................................ 5, 6, 7

*Prograph Int'l Inc. v. Barhydt*,
    928 F. Supp. 983 (N.D. Cal. 1996) ..................................................... 12

*Rowe v. Exline*,
    153 Cal. App. 4th 1276 (2007) ...................................................... 11, 12

*Sharp Corp. v. Hisense USA Corp.*,
    2017 WL 6017897 (N.D. Cal, Case No. 17-cv-03341, Dec. 5, 2017) ............................. 14, 15

*Shepardson v. Adecco USA, Inc.*,
    2016 WL 1322994 (N.D. Cal., Case No. 15-cv-05102, Apr. 5, 2016) ............................. 14, 15

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ................................................... *passim*

*SST Millennium LLC v. Mission Street Development LLC*,
    2019 WL 2342277 (N.D. Cal., Case No. 18-cv-06681, Jun. 3, 2019) ............................. 15

**Statutes**

California Corporations Code
    § 15904.08 ................................................................................. 4, 8
    § 17704.09 ................................................................................. 4, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a diversity action brought by five wealthy foreign Plaintiff investors against a number of U.S. entities and two individuals related to Plaintiffs' investments in the GSRV-VTI, LP and GSRV-VTI II, LLC investment funds.  The partnership agreement governing GSRV-VTI, LP and the operating agreement governing GSRV-VTI II, LLC—that Plaintiffs are bound by— both broadly require any disputes be submitted to arbitration.  Indeed, because the arbitration provisions incorporate specific rules of arbitration the issue of arbitrability itself should be decided by the arbitrator.  The Court should grant moving Defendants' motion to compel arbitration and allow the arbitrator to fulfil that role.  In any event, Plaintiffs' claims are encompassed by the broad arbitration provisions at issue because Plaintiffs' claims touch upon or arise from the partnership and operating agreements in which the arbitration provisions reside.

Alleged alter ego Defendants[1] may move to compel Plaintiffs' claims, despite not being signatories to the agreements, because the alleged alter ego Defendants consent to arbitration demands made by the other Defendants who are signatories to the arbitration provisions. Additionally, as alleged alter egos to signatories, Defendants may under California law directly compel Plaintiffs to arbitrate their claims. Finally, alleged alter ego Defendants may also move to compel Plaintiffs to arbitrate pursuant to the doctrine of equitable estoppel.

The parties have met and conferred and effectively agree that all disputes should be resolved in a single forum, though they disagree as to arbitrability.[2]  In the event only some of Plaintiffs' claims are compelled to arbitration, any remaining claims should be stayed to promote efficiency and give deference to the parties' agreements to broadly arbitrate disputes.

---

[1] While the alter ego allegations would be denied, the import of these allegations should govern the disposition of this motion.

[2] *See* Decl. Robert H. Bunzel (hereafter "Bunzel Decl.") filed herewith at ¶ 6.

## II.     FACTUAL BACKGROUND

### A.     The Relationship Between the Parties

Plaintiffs Hui Ma, Ailing Zhao, Xi Liu, Yixuan Wang, and Rui Zhang filed their complaint in the Northern District of California on February 3, 2021.  Dkt. No. 1.  Plaintiffs Hui Ma, Yixuan Wang, and Ailing Zhao are limited partners in GSRV-VTI, LP ("GSRV-VTI," "LP Plaintiffs"). *Id.*, p. 3 fn. 1.  Plaintiffs Xi Liu and Rui Zhang are members of GSRV-VTI II, LLC ("GSRV-VTI II," "LLC Plaintiffs").  *Id.*  The LP Plaintiffs and LLC Plaintiffs are Chinese citizens participating in the EB-5 Immigrant Investor Program administered through the United States Citizenship and Immigration Services ("USCIS").  *Id.*, ¶ 1.

Defendant Golden State Renaissance Ventures, LLC d/b/a Golden Gate Global ("GSRV, LLC") is a regional center that facilitates investments by EB-5 investors in various entities, such as, Defendant Vertebral Technologies, Inc.  *Id.*, ¶¶ 3, 30-32.  Defendant GSRV Management, LLC is alleged to be the manager of Golden State Renaissance Ventures, LLC.  *Id.*, ¶ 22.  Defendant Steven Key is alleged to be a member of both Golden State Renaissance Ventures, LLC and GSRV Management, LLC.  *Id.*, ¶ 25.  Collectively, these defendants are the "GGG Defendants."

Defendant GSRV-VTI Management, LLC is both the general partner of GSRV-VTI and the managing member of GSRV-VTI II.  *Id.*, ¶ 23.  Defendant Eric Chelini is the manager of GSRV-VTI Management, LLC.  *Id.*, ¶ 24.  Collectively, these defendants are the "GSRV-VTI Defendants."

LP Plaintiffs and LLC Plaintiffs allege that the GGG Defendants and GSRV-VTI Defendants are alter egos of one another and refer to both groups collectively as "GSRV" in the complaint.  *Id.*, ¶¶ 26, 65.

Defendant Vertebral Technologies, Inc. ("VTI") is a Minnesota company that the GSRV-VTI and GSRV-VTI II investment funds purchased shares in via a Stock Purchase Agreement. *Id.*, ¶¶ 6-8, 95-96.  Plaintiffs do not allege that they own any shares of VTI directly but instead merely allege that they are either limited partners or members of the GSRV-VTI or GSRV-VTI II investment entities that purchased shares of VTI.

**B.**   **The Partnership Agreement for GSRV-VTI and Operating Agreement for GSRV-VTI II that Govern the Relationships Between the Plaintiffs and GGG Defendants Include Arbitration Clauses**

LP Plaintiffs bring claims arising out of the GSRV-VTI, LP Limited Partnership Agreement ("LP Partnership Agreement"), specifically claims for breach of the fiduciary duty owed by general partners to limited partners (Count 5), aiding and abetting the same (Count 6), Fraudulent Concealment (Count 9), Conversion (Count 10), and Unfair Competition (Count 12). The LP Partnership Agreement provides at Section 22:

> 22. Arbitration. **<u>The Partners waive their right to seek remedies in court, including any right to a jury trial. The Partners agree that in the event of any dispute arising between the parties, such dispute shall be settled by arbitration</u>** to be conducted in the county and state of the principal office of the General Partner at the time of such dispute in accordance with the rules of the Judicial Arbitration and Mediation Service ("JAMS") applying the laws of California. Disputes will not be resolved in any other forum or venue. The Partners agree that such arbitration shall be conducted by one or more mutually-agreeable arbitrators or, if no agreement can be reached, by a panel of arbitrators consisting of one arbitrator chosen by each of the participating parties, plus an additional arbitrator chosen by the arbitrators. Pre-arbitration discovery shall be limited to the greatest extent provided by the rules of JAMS, the arbitration award will not include factual findings or conclusions of law, and no punitive damages shall be awarded. The Partners understand that any party's right to appeal or to seek modification of rulings in an arbitration is severely limited. Any award rendered by the arbitrators shall be final and binding and judgment may be entered upon it in any court of competent jurisdiction in the county and state of the principal office of the General Partner at the time such award is rendered. The Partners consent to conducting any arbitration under this Agreement at a location and facility recommended by the arbitrator, which shall not be located more than twenty (20) miles from the address of the General Partner.[3]

LLC Plaintiffs bring claims arising out of the GSRV-VTI II, LLC Amended and Restated Operating Agreement ("LLC Operating Agreement"), specifically claims for breach of the fiduciary duty owed by LLC Managers (Count 2), aiding and abetting the same (Count 3), Constructive Fraud (Count 8), Fraudulent Concealment (Count 9), Conversion (Count 10), and Unfair Competition (Count 12). The LLC Operating Agreement provides at Section 20.3:

---

[3] Declaration of Eric Chelini in Support of Defendants Eric Chelini and GSRV-VTI Management, LLC's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Proceedings , Ex. D, § 22 ("Chelini Decl."). Emphasis Added.

**20.3 Arbitration: Any dispute, controversy or claim arising out of or in connection with, or relating to, this Agreement or any breach or alleged breach hereof**, except allegations of violations of federal or state securities laws, **shall**, with the consent of the Manager (which must be given, if at all, in writing and within ten days of the date such matter matures), **be submitted to and settled by arbitration** in the State of California, pursuant to the rules then in effect of the American Arbitration Association (or at any other place or under any other form of arbitration mutually acceptable to the parties so involved), with venue in San Francisco, California. Any award rendered shall be final and conclusive upon the parties, and a judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction. The expenses of the arbitration shall be borne equally by the parties thereto provided that each party shall pay for and bear the cost of its own experts, gathering of evidence and counsel's fees, except that in the discretion of the arbitrator, any award may include the cost of the party's counsel fees if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy or claim to be submitted to arbitration as a dilatory tactic or that such matter is frivolous.[4]

**C.     Plaintiffs' Breach of Fiduciary Duty Claims are Premised on the LP Partnership Agreement and LLC Operating Agreement**

Plaintiffs allege that the GGG Defendants and GSRV-VTI Defendants[5] became fiduciaries "of the project's foreign investors [i.e., the Plaintiffs] as a matter of law" by virtue of being the general partner of GSRV-VTI and the manager of GSRV-VTI II. *Id.*, ¶ 52.  Indeed, LLC Plaintiffs' claim for breach of fiduciary duty is premised on GSRV-VTI Management, Inc. being the manager of GSRV-VTI II under Cal. Corp. Code § 17704.09. *Id.*, ¶¶ 197-199.  Similarly, LP Plaintiffs' claim for breach of fiduciary duties depends on the allegations that Defendants GSRV, LLC and GSRV-VTI Management, Inc. were previously and are currently the general partner of VTI LP under Cal. Corp. Code § 15904.08. *Id.*, ¶¶ 224-225.  The breach of fiduciary duty claims made by the LP and LLC Plaintiffs against Defendants GSRV-VTI Management, LLC and GSRV, LLC are virtually identical.  *See, Id.*, ¶¶ 195-210, 223-235.

---

[4] Chelini Decl., Exs. G-H, § 20.3.

[5] Collectively referred to as "GSRV" in the Complaint.

**D.      Plaintiffs Allege Defendants Are Alter Egos and Frequently Treat Defendants Collectively as a Single Actor When Pleading Their Claims**

LP Plaintiffs and LLC Plaintiffs allege that at all times the GGG Defendants and GSRV-VTI Defendants were alter egos of one another.  Dkt. No. 1, ¶ 26.  Plaintiffs attempt to buttress their alter ego theory by alleging that "[t]he numerous different GSRV affiliate entities through which the Regional Center appears to operate exist only on paper."  *Id.*, ¶ 60.  Plaintiffs reiterate that all "GSRV Defendants are properly treated as mere alter egos of one another and may refer to all GSRV Defendants collectively simply as 'GSRV.'"  *Id.*, ¶ 65.

Moreover, the Complaint repeatedly refers to the actions of all Defendants collectively, without distinguishing between Defendants, in an attempt to provide a basis for the asserted claims.  For example, Plaintiffs' fraudulent inducement claim alleges that: "Defendants concealed several material developments," "Defendants concealed material changes regarding VTI's finances," "Defendants concealed VTI's promise," and "Defendants had jointly represented."  *Id.*, ¶¶ 177-178, 183-184.  Similarly, Plaintiffs' constructive fraud claim alleges that: "Defendants failed to disclose," "Defendants knowingly concealed," "Defendants' prior representations," and "Defendants acted despicably."  *Id.*, ¶¶ 252-255.  Plaintiffs' conversion claim is no different and alleges that: "Defendants improperly took and retained … Defendants have, without authorization," that Plaintiffs' "payments and property" were "wrongfully converted by Defendants," "[a]s a direct result of Defendants' misappropriation," and "Defendants acted despicably."  *Id.*, ¶ 257.  It is apparent that the Complaint treats the actions of all Defendants as intertwined.

**III.    THE COURT SHOULD COMPEL PLAINTIFFS TO ARBITRATE CLAIMS AGAINST THE GGG DEFENDANTS: GSRV, LLC, GSRV MANAGEMENT, LLC, AND STEVEN KAY**

**A.      The Parties Delegated the Decision to Determine Whether Plaintiffs' Claims Are Arbitrable to the Arbitrator So This Court Need Not Reach Arbitrability**

The Federal Arbitration Act strongly favors arbitration and any doubts concerning whether claims are arbitrable are resolved in favor or arbitration.  *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017).  Consistent with this philosophy, when arbitration

clauses include specific rules of arbitration, the arbitrator—not the Court—determines whether the claims are arbitrable. *Portland Gen. Elec.*, 862 F.3d at 985 (gateway issue of whether claims are arbitrable delegated to arbitrator where specific rules of arbitration are incorporated into the arbitration clause); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (incorporation of AAA rules into an arbitration clause provides clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); *Caviani v. Mentor Graphics Corporation*, 2019 WL 4470820, at *4 (N.D. Cal., Case No. 19-cv-01645, Sept. 18, 2019) (incorporation of JAMS rules into arbitration clause delegated authority to the arbitrator to determine whether the claims were arbitrable).

The arbitration provision of the LP Agreement requires that "any dispute … shall be settled by arbitration to be conducted … in accordance with the rules of the Judicial Arbitration and Mediation Service ('JAMS')."  Chelini Decl. Ex., D, § 22.  Similarly, the LLC Agreement contains an arbitration provision that requires: "[a]ny dispute … be submitted to and settled by arbitration in the State of California, pursuant to the rules then in effect of the American Arbitration Association."  *Id.*, Exs. G-H, § 20.3.  Because both arbitration provisions incorporate specific arbitration rules, it is clear that the parties agreed to delegate the question of arbitrability to the arbitrator.  *Portland Gen. Elec.*, 862 F.3d at 985.

Defendants anticipate that Plaintiffs will argue that not all agreements between the parties contain arbitration provisions.[6]  This is irrelevant.  Where the parties have delegated the issue of arbitrability to the arbitrator in one of many agreements between the parties it is for the arbitrator to decide whether the asserted claims are encompassed within the scope of the arbitration clause. *Ambercroft Trading Ltd. v. Biddy*, 2020 WL 1820599, at *5 (N.D. Cal., Case No. 19-cv-06810, Apr. 10, 2020) ("[W]here there are multiple agreements between the parties, the parties' delegation of the issue of arbitrability to the arbitrator in one agreement requires the arbitrator, not the Court, to decide whether Plaintiffs' claims fall within the scope of the arbitration agreement.");

---

[6] The LP Partnership Agreement is incorporated by reference into subscription agreement for VTI LP.  *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019).  *See*, Dkt. No. 1, Ex. A, § 1(a) where plaintiffs subscribe "in accordance with the terms and conditions described herein and in the Limited Partnership Agreement of GSRV-VTI LP."

1   *Guidewire Software, Inc. v. Chookaszian*, 2012 WL 5379589, at *5 (N.D. Cal., Case No. 12-cv-

2   03224, Oct. 31, 2012) (Referring the issue of arbitrability to the arbitrator where a letter agreement

3   granting the right to stock options contained an arbitration clause but a later agreement governing

4   the terms of the stock options did not).

5       Accordingly, the Court need not determine whether Plaintiffs' claims are arbitrable, and

6   should grant GGG Defendants' motion to compel arbitration because the arbitrator—not the

7   Court—should determine whether Plaintiffs' claims are arbitrable.

8       **B.    In Any Event, the Broad Arbitration Clauses in the LP Partnership
            Agreement and LLC Operating Agreement Encompass Plaintiffs' Claims
9           Against the GGG Defendants**

10       Plaintiffs' claims are encompassed within the scope of the broad arbitration provisions in

11   the LP Partnership Agreement and LLC Operating Agreement.  Any doubts concerning whether

12   claims are arbitrable are resolved in favor or arbitration.  *Portland Gen. Elec.*, 862 F.3d at 985.

13   Whether claims are arbitrable is a low bar.  To be arbitrable, Plaintiffs' allegations need only

14   "touch matters" covered by the arbitration clauses at issue.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d

15   716, 721 (9th Cir. 1999).

16       The LP Agreement provides that in the event of  "*any dispute* arising between the parties,

17   such dispute" shall be arbitrated.[7]  The LLC Agreement provides that "*any dispute*, controversy or

18   claim arising out of or in connection with, or relating to, this Agreement or any breach or alleged

19   breach hereof, except allegations of violations of federal or state securities laws, shall" be

20   arbitrated.[8]  The "arising out of or in connection with" language in the LLC Agreement is almost

21   identical to the "arising in connection with" language that the 9th Circuit held encompasses "every

22   dispute between the parties having a significant relationship to the contract and all disputes having

23   their origin or genesis in the contract." *Simula*, 175 F.3d at 721.  Moreover, broad arbitration

24   clauses like these encompass both tort and contract claims. *Dryer v. Los Angeles Rams*, 40 Cal. 3d

25   406, 418, fn. 12 (1985).  ("A long line of California and federal cases holds that claims framed in

26

27   ────────────────
    [7] Emphasis Added.

28   [8] Emphasis Added.

1  tort are subject to contractual arbitration provisions when they arise out of the contractual

2  relationship between the parties.").

3       Here, all claims asserted against the GGG Defendants arise out of or are related to the LLC

4  Operating Agreement and LP Partnership Agreement.  Therefore, all claims are arbitrable as

5  described in more detail below.  *Simula,* 175 F.3d at 721.

6              **1.     Fiduciary-Duty-Based Claims**

7       LLC Plaintiffs' claim for breach of fiduciary duty depends on the LLC Operating

8  Agreement appointing GSRV-VTI Management, Inc. as the manager of GSRV-VTI II, which

9  triggers the duties imposed by Cal. Corp. Code § 17704.09.  *Id.*, ¶¶ 197-199.  Similarly, LP

10 Plaintiffs' claim for breach of fiduciary duty depends on the allegations that Defendants GSRV,

11 LLC and GSRV-VTI Management, Inc. were previously and are now the general partner of VTI

12 LP to establish liability under Cal. Corp. Code § 15904.08.  *Id.*, ¶¶ 224-225.  These claims clearly

13 "touch upon," have a significant relationship to, and have their origin in the LP Partnership and

14 LLC Operating Agreements.  Thus, these claims are arbitrable.  *Simula,* 175 F.3d at 721.

15      Plaintiffs' aiding and abetting breach of fiduciary duty claims are derivative of Plaintiffs'

16 breach of fiduciary claims.  Because the alleged fiduciary duties arise from the LP Partnership and

17 LLC Operating Agreements, the derivative aiding and abetting claims also "touch upon" and

18 ultimately arise out of the LP Partnership and LLC Operating Agreements.  *Simula,* 175 F.3d at

19 721.  Accordingly, these claims are also arbitrable.  *Id.*

20              **2.     Fraud-Based Claims**

21      Plaintiffs' constructive fraud claim, which alleges that GSRV Management, LLC and

22 GSRV LLC "became Plaintiffs' fiduciaries once Plaintiffs subscribed to the Project Funds" is also

23 arbitrable because it depends on the LP Partnership Agreement and LLC Operating Agreement to

24 create the fiduciary duties Defendants are alleged to have breached.  *Id.*, ¶¶ 249-250; *Simula,* 175

25 F.3d at 721 (allegations that "touch upon" or arise from agreements containing arbitration clauses

26 are arbitrable).

27      Plaintiffs' fraud claims also clearly arise out of a dispute between the parties to the LP

28 Partnership Agreement in connection with the sole purpose of GSRV-VTI: Enabling LP Plaintiffs

to invest in VTI.[9]  *Id.*, ¶ 6 (GSRV-VTI was "created for the Plaintiffs' investments in the GSRV-VTI Project").  The LP Plaintiffs and Defendant GSRV-VTI Management LLC are partners in GSRV-VTI and parties to the LP Partnership Agreement.  Dkt No. 1, p. 3 fn. 1; Chelini Decl., Ex. D, § 1.1.  Plaintiffs' fraudulent inducement claim alleges that "Defendants concealed VTI's promise to use EB-5 funds in violation of the Stock Purchase Agreement."  Dkt No. 1, ¶ 183.  The Stock Purchase Agreement is alleged to be an agreement between GSRV-VTI, which is governed by the LP Partnership Agreement, GSRV-VTI II, and VTI.  *Id.*, ¶¶ 6, 8.  Obviously, Plaintiffs could not have been damaged by Defendants alleged fraud without the purchase of VTI shares by GSRV-VTI via the Stock Purchase Agreement.  Thus, Plaintiffs' fraudulent inducement claims clearly "touch upon" and have a significant relationship to the activities of GSRV-VTI, which are governed by the LP Partnership Agreement, and are therefore arbitrable.  *Simula,* 175 F.3d at 721.

Further confirmation that Plaintiffs' fraud claims are arbitrable because they have a significant relationship to the LP Partnership Agreement is provided by the GSRV-VTI Subscription Agreement, which recites:

> 1(a)  The undersigned hereby irrevocably subscribes (the "Subscription") for one (1) Unit, at the price of Five Hundred Thousand Dollars ($500,000) plus Forty Thousand Dollars ($40,000) per Unit as a Syndication Fee, **in accordance with the terms and conditions described herein and in the Limited Partnership Agreement of GSVR-VTI, LP (the "Partnership Agreement")**. [10]

The GSRV-VTI Subscription Agreement further appoints Defendant Chelini as the LP Plaintiffs' "true and lawful representative and attorney in fact … (iii) **to execute,** acknowledge, swear to and file, in the name and on behalf of the undersigned: (A) **the Partnership Agreement, to be entered into pursuant to this Subscription Agreement**…"[11]  The purpose of the GSRV-VTI Subscription Agreement was to cause LP Plaintiffs to enter into the LP Partnership Agreement—whose terms the LP Plaintiffs agreed to, including the arbitration provision, when

---

[9] Plaintiffs' unfair competition claims are arbitrable for the same reasons as the underlying wrongful conduct alleged to support these claims.

[10] Dkt. No. 1, Ex. A, § 1(a)

[11] Id., § 1(c).

they entered into the GSRV-VTI Subscription Agreement.  *Id.*, §§ 1(a), 1(c).  Thus, any alleged

claim that fraud induced LP Plaintiffs to enter into the GSRV-VTI Subscription Agreement also

induced LP Plaintiffs to enter into the LP Partnership Agreement.  Consequently, Plaintiffs'

fraudulent inducement claims have a significant relationship to the LP Partnership Agreement and

are arbitrable.  *Simula,* 175 F.3d at 721.

Plaintiffs' fraudulent concealment claim also relies on the Stock Purchase Agreement and

alleges that absent Defendants' supposed concealment of information Plaintiffs could have acted

to prevent "the close of the Stock Purchase Agreement," thereby avoiding the loss of their

investments in GSRV-VTI  and GSRV-VTI II.  *Id.*, ¶ 253.  Plaintiffs' fraudulent concealment

claim is a dispute between the parties to the LP Partnership Agreement—the LP Plaintiffs and

GSRV-VTI Management, LLC—which is encompassed by the LP Partnership Agreement

arbitration clause.  Chelini Decl, Ex. D, § 22. ("The Partners agree that … any dispute arising

between the parties … shall be settled by arbitration.").  Similarly, LLC Plaintiffs' fraudulent

concealment claim is clearly captured by the broad arbitration provision of the LLC Operating

Agreement that encompasses any dispute "arising out of or in connection with, or relating to, this

Agreement or any breach or alleged breach hereof" because it relates to actions of GSRV-VTI

Management, LLC in connection with and relating to the operation of GSRV-VTI II.  Chelini

Decl., Exs. G-H, § 20.; *Simula,* 175 F.3d at 721.  Thus, Plaintiffs' fraudulent concealment claim is

arbitrable.

### 3.    Conversion Claims

Plaintiffs' conversion claim is also arbitrable.  Plaintiffs allege that all Defendants

"improperly took and retained Plaintiffs' investment funds."  Dkt. No. 1, ¶ 257.  LP Plaintiffs

claims are clearly made in their capacity as partners of GSRV-VTI and include claims against

GSRV-VTI Management, LLC, who is also a party to the LP Partnership Agreement.  Thus,

Plaintiffs' claims are arbitrable because they are a "dispute arising between the parties" subject to

the arbitration provision of the LP Partnership Agreement.  Chelini Decl, Ex. D, § 22.  LLC

Plaintiffs' conversion claim also arises out of and has a significant relationship to obligations

1   created by LLC Operating Agreement that broadly requires claims to be arbitrated.  Chelini Decl.,

2   Exs. G-H, § 20.3; *Simula*, 175 F.3d at 721.

3       **C.      The Court Should Compel Plaintiffs' Claims Against the GGG Defendants to
            Arbitration**

4
5       **1.      Defendant GSRV, LLC is Alleged to Be a Signatory to the LP
                Partnership Agreement that Can Compel Plaintiffs and Alter Ego
                Defendants to Arbitrate Plaintiffs' Claims**

6

7           Plaintiffs allege that Defendant GSRV, LLC "was the General Partner of GSRV-VTI, LP

8   until around early 2016."  Dkt No. 1, ¶ 21.  Thus—as alleged—any claims by the LP Plaintiffs[12]

9   against Defendant GSRV, LLC are disputes between the partners of GSRV-VTI and parties to the

10  LP Partnership Agreement.  These claims are clearly encompassed by the arbitration provision in

11  the LP Partnership Agreement that requires any dispute between the parties to be settled by

12  arbitration.  Chelini Decl., Ex. D, § 22.

13          Defendants GSRV Management, LLC and Kay are alleged to be alter egos of GSRV, LLC.

14  *Supra*, § II.C; Dkt. No. 1, ¶¶ 26, 65.  Non-signatory alter egos of a signatory to an arbitration

15  agreement may be bound by the arbitration agreement.  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101

16  (9th Cir. 2006) (non-signatory alleged alter egos may be bound to arbitration agreements); *Rowe v.

17  Exline*, 153 Cal. App. 4th 1276, 1285 (2007) (alleged alter egos of a party are effectively the same

18  as the party).  Defendants GSRV Management, LLC and Kay consent, as reflected in this motion,

19  to be bound by the arbitration provision in the LP Partnership Agreement with their alleged alter

20  ego Defendant GSRV, LLC.  Therefore, the Court should order all GGG Defendants to arbitrate

21  the LP Plaintiffs' claims.

22      **2.      The GGG Defendants Are Alleged Alter Egos of GSRV-VTI
                Management, LLC And Consent to Arbitrate LLC Plaintiffs' Claims
                Together with GSRV-VTI Management, LLC**

23

24          Defendant GSRV-VTI Management, LLC is the general partner of GSRV-VTI and is a

25  party to the LP Partnership Agreement.  Dkt. No. 1, ¶¶ 23; Chelini Decl., Ex. D. § 1.1.  The LP

26  Plaintiffs are also partners in GSRV-VTI LP and parties to the LP Partnership Agreement.  Dkt.

27

28  _____
    [12] "Plaintiffs Ma, Wang, and Zhao are limited partners of GSRV-VTI, LP."  Dkt. No. 1, p. 3, fn 1.

No. 1, p. 3, fn 1.  Accordingly, LP Plaintiffs' claims against GSRV-VTI Management, LLC in relation to the LP Partnership Agreement are arbitrable.  *Supra*, § III.B.

Similarly, Defendant GSRV-VTI Management, LLC is the manager of GSRV-VTI II and therefore a party who is bound by the arbitration clause in the LLC Operating Agreement.  Dkt. No. 1, ¶¶ 6, 90; Chelini Decl., Ex. G-H, p. 1 (Agreement "is made by and among Manager and such persons as hereafter become members").  Similarly, the LLC Plaintiffs are members of GSRV-VTI II and parties to the LLC Operating Agreement.  Dkt. No. 1, p. 3, fn 1, Chelini Decl., Exs. G-H.  The LLC Plaintiffs' claims are made against GSRV-VTI Management, LLC, and are similarly between parties to the LLC Operating Agreement, in relation to the LLC Operating Agreement with the result that LLC Plaintiffs' claims are arbitrable.  *Supra*, § III.B.

Defendant GSRV-VTI Management, LLC seeks to compel the arbitration of all claims. The GGG Defendants are alleged to be alter egos of Defendant GSRV-VTI Management, LLC. *Supra*, § II.C; Dkt. No. 1, ¶¶ 26, 65.  The GGG Defendants consent to arbitrate the arbitrable claims made against their alleged alter ego Defendant GSRV-VTI Management, LLC.  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (Non-signatory alter egos of a signatory to an arbitration agreement may be bound by the arbitration agreement).

### 3. The GGG Defendants Are Alleged Alter Egos of Parties to the LP Partnership and LLC Operating Agreements That Are Entitled to Enforce the Arbitration Provisions Contained in These Agreements

As noted above, LP Plaintiffs and LLC Plaintiffs allege that GSRV, LLC; GSRV Management, LLC; GSRV-VTI Management, LLC; Chelini; and Kay are alter egos of one another.  *Supra*, § II.C; Dkt. No. 1, ¶¶ 26, 65.  A non-signatory's ability to compel arbitration is governed by state contract law. *See Arthur Andersen LLP*, 556 U.S. at 631.  Alleged alter egos of a party are effectively the same as the party.  *Rowe*, 153 Cal. App. 4th at 1285.  Alleged alter egos may enforce arbitration agreements even though they are technically not signatories to the arbitration agreement on the theory that they are effectively the same as the alter ego signatory. *Id.*; *Levi Strauss & Co. v. Aqua Dynamics Systems, Inc.*, 2016 WL 6082415, at *9 (N.D. Cal., Case No. 15-cv-04718, Oct. 18, 2016) citing *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 991

(N.D. Cal. 1996) ("[a]lleged alter egos are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed.").

### 4. GGG Defendants Are Allowed to Move to Compel Pursuant to Equitable Estoppel

Even as non-signatories to the contracts containing the arbitration provisions at issue here, the doctrine of equitable estoppel allows GGG Defendants to move to compel arbitration under them. "[C]ourts must look to 'principles of state contract law' to determine whether a party has agreed to arbitrate." *Hofer v. Emley*, 2019 WL 4575389, at *5 (N.D. Cal., Case No. No. 19-CV-02205, Sept. 20, 2019) (*citing Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)). "California law permits non-signatories to invoke arbitration agreements in limited circumstances under the doctrine of equitable estoppel." *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017). "The theory behind equitable estoppel is that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory'." *Id.* (*quoting Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013)); *see also NORCAL Mutual Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 84 (2000) ("No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens."). It is further premised on the idea that "where a lawsuit against non-signatories is inherently bound up with claims against a signatory, the court should compel arbitration in order to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration." *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006).

The Ninth Circuit has "adopted as a controlling statement of California law the equitable estoppel rule set forth in *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009)." *Murphy*, 724 F.3d at 1229. That is:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the

> signatory alleges substantially interdependent and concerted
> misconduct by the nonsignatory and another signatory and the
> allegations of interdependent misconduct are founded in or intimately
> connected with the obligations of the underlying agreement.

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (*citing Goldman*, 173 Cal. App. 4th at 219, 221) (internal citations omitted)." *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, 2020 WL 620294, at **4–5 (C.D. Cal., Case No. 8:19-CV-00642, Jan. 9, 2020).

Here, LP Plaintiffs and LLC Plaintiffs' allegations meet either of the independently sufficient bases to enable GGG Defendants to compel arbitration under the doctrine of equitable estoppel.  First, the claims of LP Plaintiffs and LLC Plaintiffs, as explained above, rely on and are "intimately founded in and intertwined with" the LLC Operating Agreement and the LP Partnership Agreement.  Alternatively, and second, LP Plaintiffs and LLC Plaintiffs "allege[] substantially interdependent and concerted misconduct by the nonsignatory and another signatory [GSRV-VTI Management, LLC] and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of" the LLC Operating Agreement and the LP Partnership Agreement, in making all of their alter ego allegations. *E.g.*, Dkt. No. 1, ¶¶ 26, 60, 65, 117-178, 183-184, 252-255, 257.

## IV.   THE COURT SHOULD STAY NON-ARBITRABLE CLAIMS, IF ANY, PENDING THE RESOLUTION OF THE ARBITRATION

The parties in meet-and-confer sessions have generally agreed that the disputes in this action should not be fractured or proceed in multiple fora. Bunzel Decl. ¶ 6. The Court should exercise its discretion to stay any claims that remain pending the resolution of the arbitration. *Sharp Corp. v. Hisense USA Corp.*, 2017 WL 6017897, at **3-4 (N.D. Cal, Case No. 17-cv-03341, Dec. 5, 2017) (Court has discretion to stay non-arbitrable claims); *Shepardson v. Adecco USA, Inc.*, 2016 WL 1322994, at *6 (N.D. Cal., Case No. 15-cv-05102, Apr. 5, 2016).  To assess whether to stay non-arbitrable claims the Court may consider: 1) the possible damage which may result from the grant of a stay; 2) the hardship or inequity which a party may suffer in being required to go forward, and 3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

1   *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005); *Sharp*, 2017 WL 6017897, at *4;

2   *SST Millennium LLC v. Mission Street Development LLC*, 2019 WL 2342277, at *4 (N.D. Cal.,

3   Case No. 18-cv-06681, Jun. 3, 2019).

4        The crux of this litigation relates to alleged fraud by VTI that the other Defendants—for

5   which the GGG Defendants here are alleged to be alter egos—have purportedly participated in or

6   failed to identify in violation of their alleged fiduciary obligations.  *Supra*, § II, Dkt. No. 1, ¶¶ 26,

7   65.  In essence, Plaintiffs seek to recover the funds they invested in GSRV-VTI, LP and GSRV-

8   VTI II, LLP as damages.[13]  Dkt. No. 1 at 53.  As a result, Plaintiffs will suffer no hardship or

9   inequity if any non-arbitrable claims are stayed pending arbitration.

10        Staying any non-arbitrable claims will also promote the orderly and efficient resolution of

11   Plaintiffs' claims.  The underlying factual and legal issues between all asserted claims are closely

12   related, with the result that a ruling by the arbitrator on any of Plaintiffs' fraud or breach of

13   fiduciary duty claims will foreclose or greatly simply the disposition of any remaining claims.

14   *Shepardson*, 2016 WL 1322994, at *6 (non-arbitrable claims that are derivative in nature to

15   arbitrable claims should be stayed); *Sharp*, 2017 WL 6017897, at *5 (stay of non-arbitrable claims

16   warranted where claims intertwined with arbitrable claims); *SST Millennium LLC*, 2019 WL

17   2342277, at *5 (stay of remaining claims appropriate where resolution of arbitrable claims will

18   likely resolve or simplify the non-arbitrable claims).  Accordingly, the Court should exercise its

19   discretion to stay any claims that the Court concludes are not arbitrable to promote the most

20   orderly and efficient resolution of this dispute.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26

27   [13] Plaintiffs also seek injunctive relief against VTI.  However, because Plaintiffs have not alleged
they are shareholders of VTI, Plaintiffs appear to lack standing to bring these claims against VTI.

28   Instead, Plaintiffs allege they invested in GSRV-VTI, LP and GSRV-VTI II, LLC and that these
investment funds—not the individual Plaintiffs—are shareholders of VTI.  Dkt. No. 1, ¶¶ 6-8.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.     CONCLUSION**

For the above reasons, the motion of Defendants Golden State Renaissance Ventures, LLC, dba Golden Gate Global, GSRV Management, LLC and Steven Kay to compel arbitration and to stay any remaining claims in the proceedings should be granted.

Respectfully submitted,

DATED:  April 20, 2021                    BARTKO ZANKEL BUNZEL & MILLER
                                          A Professional Law Corporation


                                 By:    _____/s/ Robert H. Bunzel_____
                                          Robert H. Bunzel
                                          Attorneys for Defendants GOLDEN STATE
                                          RENAISSANCE VENTURES, LLC; GSRV
                                          MANAGEMENT, LLC; and STEVEN KAY