Rongping Wu (*pro hac vice*)
  lwu@dgwllp.com
Katherine Burghardt Kramer (*pro hac vice*)
  kkramer@dgwllp.com
DGW KRAMER LLP
One Rockefeller Plaza, Ste 1060
New York, NY 10020
Tel.:  (917) 633-6860
Fax:  (917) 630-6183

Olivia M. Goestch (State Bar No. 319012)
  ogoetsch@dgwllp.com
DGW KRAMER LLP
7545 Irvine Center Drive, Ste 200
Irvine, CA 92618
Tel.:  (949) 266-6311
Fax:  (917) 630-6183

*Attorneys for Plaintiffs Hui MA, Ailing ZHAO, Xi LIU, Yixuan WANG, and Rui ZHANG*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HUI MA, AILING ZHAO, XI LIU, YIXUAN WANG, and RUI ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN STATE RENAISSANCE VENTURES, LLC, *dba* Golden Gate Global, a California Limited Liability Company; GSRV MANAGEMENT, LLC, a California Limited Liability Company; GSRV-VTI MANAGEMENT, LLC, a California Limited Liability Company; ERIC CHELINI, an individual; STEVEN KAY, an individual; and VERTEBRAL TECHNOLOGIES, INC., a Minnesota corporation,<br><br>Defendants. | Case No. 3:21-cv-00856-WHO<br><br>**PLAINTIFFS' OMNIBUS BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION**<br><br>*Declarations of Plaintiffs Hui Ma, Ailing Zhao, Xi Liu, Yixuan Wang, and Rui Zhang filed concurrently*<br><br>Complaint filed:    Feb. 3, 2021<br><br>Date:             May 26, 2021<br>Time:             2 p.m.<br>Courtroom:    Courtroom 2, 17th fl.<br>Judge:            Hon. William H. Orrick |

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma, et al., v. Golden State Renaissance Ventures, LLC, et al.* — Case No. 3:21-cv-00856-WHO

# Table of Contents

INTRODUCTION AND SUMMARY ................................................................. 1

FACTUAL BACKGROUND .......................................................................... 2

ARGUMENT ............................................................................................. 4

    A.   LEGAL STANDARD ......................................................................... 4

    B.   THE LP PLAINTIFFS CANNOT BE COMPELLED TO ARBITRATE BECAUSE THEY DID NOT SIGN AN ARBITRATION AGREEMENT ................................................ 5

        1.  Because the LP Plaintiffs Did Not Sign the LPA, its Arbitration Clause is Not Enforceable. .......................................................................................... 6

        2.  Further Evidence Corroborates that the LP Plaintfifs Did Not Have Notice of the LPA Arbitration Clause. .................................................................................... 8

        3.  The LP Subscription Agreement, Which is Signed, Does Not Contain an Arbitration Clause and Does Not Bind the LP Plaintiffs to Arbitrate. ...................................... 9

    C.   THE LLC PLAINTIFFS ARE NOT BOUND TO ARBITRATE BY THE OPERATING AGREEMENT OR THE LLC SUBSCRIPTION AGREEMENT. ................................ 12

        1.  The LLC Operating Agreement is Not Validly Signed by the LLC Plaintiffs ............ 13

        2.  The LLCSA Does Not Save the Arbitration Clause of the OA. ............................ 15

        3.  The LLCSA's Forum Selection Clause Supersedes the OA ............................... 16

    D.   THE NON-SIGNATORY DEFENDANTS LACK STANDING TO ENFORCE ARBITRATION. 18

        1.  The Non-Signatory Defendants Do Not Have Standing as Alleged Alter Egos ............ 18

        2.  Plaintiffs Are Not Equitably Estopped from Opposing Non-Signatories' Efforts to Arbitrate. ......................................................................................... 19

        3.  The Arbitration Clause of the LPA Expressly Applies Only to Signatories. ............. 20

        4.  Defendant VTI Lacks Any Standing to Compel Arbitration. .............................. 21

    E.   BOTH PURPORTED ARBITRATION CLAUSES ARE INVALID DUE TO PROCEDURAL UNCONSCIONABILITY. ..................................................................... 21

    F.   THE PARTIES DID NOT AGREE TO DELEGATE ARBITRABILITY TO AN ARBITRATOR 24

    G.   IF THE COURT COMPELS PARTIAL ARBITRATION, THE LITIGATION SHOULD NOT BE STAYED. ..................................................................................... 25

CONCLUSION .......................................................................................... 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

# Table of Authorities

## CASES

*Adajar v. RWR Homes, Inc.*, 160 Cal. App. 4th 563 (2008) --------------------------------- 12, 14, 16

*Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320 (9th Cir. 2015) ----------------------- 5

*ASUS Comput. Int'l v. InterDigital, Inc.*, No. 15-cv-01716-BLF, 2015 U.S. Dist. LEXIS 118794
  (N.D. Cal. Aug. 25, 2015) ------------------------------------------------------------------------- 25

*Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50 (2013)------------------------ 8

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015)-------------------------------------------- 25

*Britton v. Co.-op Banking Grp.*, 916 F.2d 1405 (9th Cir. 1990) ----------------------------------- 18

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013) ---------------------------------- 23

*Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126 (9th Cir. 2000) ---------------------------- 5

*FDIC v. LSI Appraisal, LLC*, No. SA CV 11-706 DOC (ANx), 2011 U.S. Dist. LEXIS 126980
  (C.D. Cal. Nov. 2, 2011) -------------------------------------------------------------------------- 22

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)------------------------------------ 6

*Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052 (9th Cir. 2018) --------------------------- 25

*Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009) ------------------------------------------ 20

*Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) ------------------------------------------------ 23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019)-------------------------- 6

*In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Litig.*, 470 F. Supp. 3d 1117,
  (C.D. Cal. 2020)------------------------------------------------------------------------------- 7, 19

*In re Holl*, 925 F.3d 1076 (9th Cir. 2019) --------------------------------------------------------- 11

*Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295 (2017) ----------------------------------------- 7

*Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013) --------------------------------- 23

*Kinney v. United Healthcare Servs.*, 70 Cal. App. 4th 1322 (1999) ------------------------------ 24

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) ---------------------------------- 8

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013)----------------------------------- 20

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983)------------- 22

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016)-------------------------------- 6, 22

*Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011)---------------------------------------------- 6, 24

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) -------------------------------- 5, 8

*Norcia v. Samsung Telcoms. Am. LLC*, 845 F.3d 1279 (9th Cir. 2017)---------------------------- 19

*Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006) --------------------------------- 26

*Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44 (1997)------------------------------------- 11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ------------------------- 5, 16

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) -------------- 19

*Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989) --------- 19

*Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019) ------------------------------------ 5, 14, 16

*Wireless Warehouse, Inc. v. Boost Mobile, LLC*, No. SACV 09-1436-MLG, 2010 U.S. Dist.
  LEXIS 21835 (C.D. Cal. Mar. 10, 2010) -------------------------------------------------------- 21

*Yang v. Majestic Blue Fisheries, Ltd. Liab. Co.*, 876 F.3d 996 (9th Cir. 2017)---------------------- 20

*Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968 (N.D. Cal. 2015) --------------------------------- 25

## STATUTES

9 U.S.C. § 2 ---------------------------------------------------------------------------------------- 6

Cal. Civ. Code § 1589 ----------------------------------------------------------------------------- 8

Cal. Civ. Code § 1642 ---------------------------------------------------------------------------- 17

Cal. Civ. Code § 2330 ----------------------------------------------------------------------------- 7

iii

## INTRODUCTION AND SUMMARY

All Defendants have either moved to compel arbitration or joined a motion to compel arbitration.  (Doc. 42, 44, and 45.)  Plaintiffs Hui Ma, Ailing Zhao, Xi Liu, Yixuan Wang, and Rui Zhang (collectively, "**Plaintiffs**") now file this omnibus response in opposition to the Motion to Compel Arbitration filed by Golden State Renaissance Ventures, LLC, GSRV Management LLC, and Steven Kay (Doc. 45), the Motion to Compel Arbitration and Dismiss, or, Alternatively, Stay Proceedings, filed by Eric Chelini and GSRV-VTI Management, LLC (Doc. 42), and the Notice of Joinder in Defendants' Motions to Compel Arbitration, filed by Vertebral Technologies, Inc. (Doc. 44).  Due to overlapping factual and legal issues, Plaintiffs file a single response.  Because each of these motions fails, the matter should proceed in this Court.

Hui Ma, Ailing Zhao, and Yixuan Wang, who invested in the LP Fund, may be referred to as the "**LP Plaintiffs**."  Xi Liu and Rui Zhang, who invested in the LLC Fund, may be referred to as the "**LLC Plaintiffs**."

The LP Plaintiffs cannot be compelled to arbitrate because they did not sign a contract with an arbitration clause.  It is undisputed that the sole copy of the Limited Partnership Agreement ("**LPA**") containing an arbitration clause is not signed by any LP Plaintiffs.  *See* Doc. 42-1, Ex. D.  The LP Plaintiffs had no notice of the arbitration clause in the LPA, because they did not receive the document.  An agreement to arbitrate requires consent, and Plaintiffs could not consent to an arbitration clause in a document that they did not see and did not sign.  The subscription agreement signed by each of the LP Plaintiffs (the "**LPSA**") does not contain an arbitration clause. *See* Doc. 42-1, Ex. A-C.  Nor does it incorporate the arbitration clause of the LPA, and the LPA post-dates the LP Plaintiffs' subscriptions.

The LLC Plaintiffs cannot be compelled to arbitrate either.  The subscription agreements signed by the LLC Plaintiffs (the "**LLCSA**") do not contain an arbitration clause, but rather give an exclusive forum of this Court.  *See* Doc. 42-1, Ex. E, F.  The Operating Agreement ("**OA**") expressly does not modify any terms of the LLCSA.  While the OA contains an arbitration clause, and Defendants purport to submit copies of the OA signed by the LLC Plaintiffs, those signatures are not valid.  The reasons for invalidity include: (1) the LLC Plaintiffs did not receive a copy of

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

1

Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

the OA; (2) the signatures are unreliable due to variable ink color and apparent duplication; (3) the signature pages are a different size from the rest of the OA; (4) the document title on the signature pages does not match the cover page of the OA; (5) the signature pages are not dated; and (6) Defendants do not give any explanation of the provenance of the "signed" OAs.

The only signatory to the LPA and OA is GSRV-VTI Management, LLC.  The non-signatories to the agreements lack standing to enforce the arbitration clauses.  Defendants attempt a "have your cake and eat it too" argument with respect to Plaintiffs' alter ego allegations.  While strenuously denying any alter ego liability, they also seek to assert standing to compel arbitration based upon alter ego status.  Equitable estoppel does not preclude Plaintiffs from opposing these motions, as Plaintiffs' claims do not derive from the terms of the LPA or OA.  Notably, Plaintiffs do not bring claims for breach of either the LPA or OA.  In addition, the LPA arbitration clause is quite narrow and only applies to its signatories.

Both clauses are procedurally unconscionable because Plaintiffs were <u>irrevocably</u> bound under the subscription agreements prior to the earliest date on which they could have received the arbitration agreements, based on the dates of the OA and LPA.

Any issues of arbitrability should not be delegated to an arbitrator.  In the event that the Court compels arbitration in part, the remaining claims should not be stayed.

Because Defendants cannot show that Plaintiffs consented to arbitrate their claims in this action, <u>all</u> of the Defendants' motions necessarily fail.  "For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

For these reasons, and as discussed further below, Defendants' motions to compel arbitration should be denied in their entirety, and the matter should proceed in this Court.

## FACTUAL BACKGROUND

This action was initiated by five individual Chinese citizens seeking to recover their transfers of $540,000 to one of two investment funds ("**Funds**") in order to invest in the "GSRV-

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

2                                    Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

VTI Project" (the "**Project**").  The Funds are GSRV-VTI, LP (the "**LP Fund**") and GSRV-VTI II, LLC, (the "**LLC Fund**").

Plaintiffs incorporate the following reference chart to track the projects[1]:

| GSRV-VTI, LP | GSRV-VTI II, LLC |
|---|---|
| Hui Ma<br>Ailing Zhao<br>Yixuan Wang | Xi Liu<br>Rui Zhang |

The only two documents at issue containing arbitration clauses are the LPA and the OA. For the LP Plaintiffs, Defendants rely on the LPA to move to compel arbitration.  For the LLC Plaintiffs, Defendants rely on the OA.  All of the LP Plaintiffs and the LLC Plaintiffs attest under oath that they were not given copies of the LPA or the OA.  *See* attached Declarations of Ma ¶¶ 12-16, Wang ¶¶ 10-13, Zhao ¶¶ 12-16, Zhang ¶¶ 13-18, and Liu ¶¶ 13-18 (together, "Plaintiff Declarations").

Defendants have not put forth any copies of the LPA signed by the LP Plaintiffs, and the LP Plaintiffs attest that they never signed those documents.  *See* Plaintiff Declarations, Ma ¶¶ 12-16, Wang ¶¶ 10-13, Zhao ¶¶ 12-16.  As a matter of basic black-letter law, the LP Plaintiffs cannot be bound by a document that they did not see and did not sign.  For the two LLC Plaintiffs, Defendants have submitted purported signature pages for the OA.  However, the LLC Plaintiffs attest that these signatures are <u>not valid</u>, and other evidence corroborates this testimony.  *See* Plaintiff Declarations, Zhang ¶¶ 13-18 and Liu ¶¶ 13-18.  Likewise, the LLC Plaintiffs cannot be bound by a document that they did not see and did not sign.

Each Plaintiff attests that they did sign a subscription agreement, either a LPSA or a LLCSA.  *See* Plaintiff Declarations, Ma ¶¶ 9-12, Wang ¶¶ 9-12, Zhao ¶¶ 9-12, Zhang ¶¶ 9-13, and Liu ¶¶ 9-13.  However, neither the LPSA nor the LLCSA contained an arbitration clause.  Although the LPSA and LLCSA each mention, respectively, a limited partnership agreement or an operating

---

[1] Credit to Defendants GSRV-VTI Management LLC and Eric Chelini for submitting an identical chart in their moving papers, which has proven a useful reference.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

3

Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

agreement, this mere reference alone does not incorporate the arbitration clauses of the LPA and OA into the LPSA and LLCSA.

Plaintiffs agree that each LP Plaintiff signed the <u>LPSA</u>, although dates of execution are not provided in the documents submitted by Defendants. (*See* Doc 42-1 at 12, 21, 30.)  The documents do show, however, the date on which the LP Plaintiffs' subscriptions were accepted.  Eric Chelini accepted each plaintiff's subscription, and signed their LP Subscription Agreements, as "Managing Member" of the Fund's "General Partner," GSRV LLC, as follows.  Plaintiff Ma's subscription was accepted "effective as of January 15, 2014." (*Id.* at 12.)  Plaintiff Zhao's subscription was accepted "effective as of April 18, 2014." (*Id.* at 21.)  Yixuan Wang's subscription was accepted "effective as of April 18, 2014." (*Id.* at 21, 30.)

The LPA is dated January 15, 2015.  *See* Doc. 42-1, Ex. D.  Thus, the LPA is dated <u>after</u> the date the LP Plaintiffs' subscriptions were accepted.

Further, Plaintiffs agree that each LLC Plaintiffs signed the <u>LLCSA</u>.  Those documents show the date of execution.  Plaintiff Zhang subscribed as of February 6, 2015, and Plaintiff Liu subscribed as of April 3, 2015.  (Doc. 42-1, Ex. E, F.)  However, the OA is dated April 27, 2015. (Doc. 42-1, Ex. G and H.)  Thus, the OA is also dated <u>after</u> the LLC Plaintiffs subscribed.

<b><u>ARGUMENT</u></b>

**A.    <u>LEGAL STANDARD</u>**

The Federal Arbitration Act ("FAA") "imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion."  *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (internal quotation omitted).  When a party moves to compel arbitration under the FAA, the court must ordinarily determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  As to both issues, the burden is on the party seeking to compel arbitration. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

"[T]he party seeking to compel arbitration[] must prove the existence of a valid agreement by a preponderance of the evidence."  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019).

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

4                                    Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

"In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation omitted).  The choice-of-law rules of the forum state – here, California – apply to federal courts sitting in diversity.  *Id.*

Issues of arbitrability may be delegated to the arbitrator, but only where "'clear and unmistakable' evidence" establishes the contracting parties' intent to agree to such a delegation. *Momot v. Mastro*, 652 F.3d 982, 987–88 (9th Cir. 2011) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  In any event, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).  Likewise, courts—not arbitrators—decide whether a "generally applicable contract defense, such as fraud, duress, or unconscionability" invalidates an agreement where the defense is directed toward an arbitration agreement, or toward a subordinate agreement supposedly delegating issues of arbitrability to the arbitrator.  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016).

B.  **THE LP PLAINTIFFS CANNOT BE COMPELLED TO ARBITRATE BECAUSE THEY DID NOT SIGN AN ARBITRATION AGREEMENT**

There is no document with an enforceable arbitration clause signed by the LP Plaintiffs.  On this basis, all Defendants' motions to compel arbitration as to the LP Plaintiffs must be denied.

In moving to compel arbitration, all Defendants rely on the Subscription Agreement entered by the LP Plaintiffs – the LPSA – and the Limited Partnership Agreement – the LPA.  *See* Doc. 42-1, Ex. A-D (LPSAs and unsigned LPA).

The LPSA is signed by the three LP Plaintiffs, but it does not contain an arbitration clause. While the LPA contains an arbitration clause, the document is not binding on the LP Plaintiffs because they did not see it and did not sign it.  Accordingly, there is no document to support a motion to compel arbitration as to the LP Plaintiffs.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

5                                    Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

### 1.  Because the LP Plaintiffs Did Not Sign the LPA, its Arbitration Clause is Not Enforceable.

Defendants rely upon the LPA most heavily in moving to compel arbitration against the LP Plaintiffs.

However, the LPA is not signed by any Plaintiff.  *See* Doc. 42, Ex. D.  The document submitted by Defendants in support of their Motions is unsigned.  In addition, the LP Plaintiffs attest under oath that they did not see the LPA and they did not sign it.  *See* Plaintiff Declarations, Ma ¶¶ 12-16, Wang ¶¶ 10-13, Zhao ¶¶ 12-16 (confirming that they did not sign the LPA).  At no point has Mr. Chelini represented that he executed the LPA on any Plaintiff's behalf.  *See* Decl. of Eric Chelini, Dkt. 42-1 at 2 ¶ 4.)

The GSRV-VTI Motion several times suggests that Plaintiffs should be deemed to have consented to all the LPA's terms on account of the power of attorney they granted Mr. Chelini in Section 1(c) of the LPSAs.  (Dkt. 42 at 10, 14.)  But this argument fails.  First, as noted, Mr. Chelini did not actually sign the LPA on any Plaintiff's behalf, and therefore cannot claim that he did so under power of attorney.  *See, e.g.*, *In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Litig.*, 470 F. Supp. 3d 1117, 1126 (C.D. Cal. 2020) (effort by principal to claim that agent entered arbitration agreement on its behalf fails without evidence that agent was working within scope of agency).  Defendants have not submitted a copy of the LPA with signatures for the LP Plaintiffs executed under a power of attorney.  As noted, the sole copy of the LPA submitted by Defendants is unsigned by the LP Plaintiffs.  *See* Doc. 42-1, Ex. D.  Even if Mr. Chelini theoretically had a power of attorney to execute the LPA for the LP Plaintiffs – and he did not – he cannot simply rely on a potential power of attorney to bind the LP Plaintiffs now to the LPA.

Second, Section 1(c) of the LPSA could not reasonably be read as granting Mr. Chelini authority to enter an arbitration agreement on LP Plaintiffs' behalf, when the LP Plaintiffs had no reason to expect as much.  *See* Cal. Civ. Code § 2330 ("An agent represents his principal for all purposes within the scope of his actual or ostensible authority . . . ."); *Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295, 303 (2017) ("the proper inquiry is not only whether there is any sort of preexisting agency relationship with one of the signatories to the arbitration agreement . . . but also

DGW KRAMER LLP
One Rockefeller Plaza
New York, NY 10020

6

Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

whether that preexisting relationship is of such a nature that it supports a finding of implied authority for one of the signatories to bind the nonsignatory by their arbitration agreement.") (internal quotations and alterations omitted).

Third, to the extent that Mr. Chelini and GSRV-VTI Management LLC intended to use a limited power of attorney to unwittingly bind the LP Plaintiffs to arbitrate disputes with them and against their will, such an action is an unenforceable breach of fiduciary duty that goes against all principles of equity.

It is a black letter tenet of contract law that a party cannot be bound by a document that he or she did not see and did not sign.  California contract law "requires the parties agree to the same thing in the same sense." *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 60 (2013).  "Mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen*, 763 F.3d at, 1175 (9th Cir. 2014) (internal quotations and alterations omitted). As such, in order to form a contract, the parties must have actual or constructive knowledge of its terms. *Id.* at 1177; *see also, e.g.*, Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.").

Thus, to be bound to an agreement to arbitrate, a party must have actual notice of the arbitration provision.  "[The] principle of knowing consent applies with particular force to provisions for arbitration.  If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014).  Here, not only can Defendants not show the requisite mutual assent, but the evidence in fact shows that the LP Plaintiffs did not know of or consent to any arbitration agreement concerning their claims here.

Because the LP Plaintiffs did not see and did not sign the LPA, they cannot be bound by its arbitration clause.  For this reason, the sole Signatory Defendant – GSRV Management LLC – cannot compel arbitration against the LP Plaintiffs.  Likewise, the Non-Signatory Defendants

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

7                    Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

cannot compel arbitration against the LP Plaintiffs for the same reason, because there is no agreement by the LP Plaintiffs to arbitrate.

### 2. Further Evidence Corroborates that the LP Plaintfifs Did Not Have Notice of the LPA Arbitration Clause.

In addition to the fact that it is unsigned by any LP Plaintiff, the LPA has other serious problems that support a conclusion that its arbitration clause is not enforceable here.

First, the LPA is dated <u>after Plaintiffs' subscription agreements were accepted.</u> The only date listed on the LPA provided by Defendants is January 15, 2015. As noted above, the subscription agreements of the three LP Plaintiffs were accepted in the spring of 2014, roughly nine to twelve months prior to the date of the LPA. The LP Plaintiffs cannot be bound by an arbitration clause in a document that, apparently, did not exist at the time they executed the LPSAs. *See also infra*, Section V, procedural unconscionability.

Second, the LP Subscription Agreement and the LPA identify <u>different general partners</u> of GSRV-VTI LP, which is the partnership entity into which the LP Plaintiffs ostensibly became limited partners. In the LPSA, the general partner of GSRV-VTI LP is identified as Golden State Renaissance Ventures, LLC. *See* Doc. 42-1, Ex. C, p. 1 ("The undersigned hereby irrevocably appoints Eric Chelini, the managing member of the Company's [GSRV-VTI LP] general partner, Golden State Renaissance Ventures, LLC ('General Partner') . . ."). By contrast, the LPA itself identifies GSRV-VTI Management LLC as the general partner. *See* Doc. 42-1, Ex. D, p. 1 ("General Partner: GSRV-VTI Management LLC, a California limited liability company"). This also indicates that the LPSA and LPA could not have been executed at the same time.[2]

---

[2] The GGG Defendants contend that Golden State Renaissance Ventures LLC ("**GSRV LLC**") is "alleged to be a signatory" to the LPA, and therefore has standing. This argument borders on nonsensical, since no party has identified a Limited Partnership Agreement with GSRV LLC as a signatory. *See* GGG Motion, p. 11. The only LPA identified here is attached to the GSRV-VTI Defendants' motion papers. *See* Doc. 42-1, Ex. D. The signatory on that document is GSRV-VTI Management, LLC. If there were an earlier Limited Partnership Agreement identifying GSRV LLC as the general partner of GSRV-VTI LP, the burden is on the GGG Defendants to produce such a document and demonstrate that it contained an arbitration clause. No such evidence has been identified. The GGG Defendants cannot bootstrap themselves into signatory status for <u>this</u> LPA by claiming to have possibly been signatories to an earlier, non-produced and likely non-existent document.

Further, Defendants are in a far better position than Plaintiffs to identify and produce the full

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

8

Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

Third, although the LPA filed with Defendants' papers refers to a "Schedule A" of limited partners, no such document is attached.  *See* Doc. 42-1, Ex. D, p. 27.  Thus, the LPA does not identify whether these LP Plaintiffs are even ostensible parties.

Clearly, the LP Plaintiffs cannot be bound by a document that they did not see and did not sign.  Moreover, the evidence submitted by Defendants shows that the LPA may not have even been written until nine to twelve months <u>after</u> the LP Plaintiffs signed their LPSAs.

On this basis alone, all of Defendants' motions to compel arbitration against the LP Plaintiffs must be denied.[3]

**3.  The LP Subscription Agreement, Which is Signed, Does Not Contain an Arbitration Clause and Does Not Bind the LP Plaintiffs to Arbitrate.**

The key agreement governing the LP Plaintiffs' investments is the LP Subscription Agreement.  The LPSA provides the terms of payment and acceptance for an investor's subscription (Doc. 42, Ex. A–C, pp. 2–3, §§ 2–3).   Roughly half of the six-page agreement is devoted to the subscriber's representations and indemnification obligations (pp. 3–5, §§ 4–5).

The LPSA does not contain an arbitration clause.  Instead, it simply designates California law for resolution of disputes.  There is no specified forum for dispute resolution.  *See, e.g.*, Doc. 42-1, Ex. A (Ma LPSA), part 10 ("This Subscription Agreement shall be governed by and construed in accordance with the laws of the State of California as applied to residents of California executing contracts wholly to be performed in California.").

_____

universe of subscription agreements, partnership agreements, and operating agreements.  As attested in their Declarations, Plaintiffs received very few documents.  *See generally* Plaintiff Declarations.  To the extent an earlier partnership agreement exists, to which GSRV LLC was a signatory and which contains an arbitration clause, the burden is on GSRV LLC to have produced such a document in support of its motion.  Its omission leads to a single conclusion, that no such document exists.

[3] Moreover, the LPA is not central to Plaintiffs' claims.  It is mentioned in only <u>three</u> of the 293 paragraphs in Plaintiffs' Complaint.  (Doc. 1 at 19 ¶¶ 84–86.)  And those references merely highlight "investors' lack of management or, essentially, involvement of any kind in the operation of the Fund and the Project."  (*See id.* at 20 ¶ 94.)  The Complaint does not contain any cause of action for breach of the LPA, or any cause of action arising from any of the LPA's terms. While it frequently refers to the fiduciary duties owed by the General Partner of the LP Fund to the Fund's limited partners, those are non-derogable statutory duties imposed as a matter of public law.  The key document for the LP Plaintiffs' claims is the LPSA, which does not have an arbitration clause.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

9                                    Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

Defendants nonetheless contend that the LPA's arbitration agreement is binding upon the LP Plaintiffs because some provisions in the LP Subscription Agreement, which all parties agree Plaintiffs did execute, refer to a "Limited Partnership Agreement."  (*See, e.g.*, Doc. 42 at 13; Dkt. 45 at 12 n.6.)  It is correct that the LPSA refers to something called a limited partnership agreement. *See, e.g*., Doc. 42-1, Ex. A, part 6 (Ma LPSA) ("This Subscription Agreement, the Memorandum, and the Company's Limited Partnership Agreement set[] forth the entire agreement and understanding among the parties[.]").  However, the LPSA does not identify the date of the supposed Limited Partnership Agreement at issue, or any other identifying information.  It is therefore unclear to what specific document the LPA refers.

The GSRV-VTI Motion appears to argue that the arbitration agreement should be binding upon the Plaintiffs by operation of the integration of the two contracts purportedly resulting from § 1(a) and § 6 of the LPSA.  But these provisions merely reference "the Company's Limited Partnership Agreement" and indicate the integration of that agreement into the parties' overarching agreement.  They contain no clue as to any of the LPA's terms and make no reference to any agreement to arbitrate.

In their motion, the GGG Defendants likewise contend that the terms of the LPA were <u>all</u> incorporated by reference into the LP Subscription Agreement, and the LPA's arbitration clause should be deemed binding on the LP Plaintiffs for that reason, regardless of the fact that Defendants have not identified a copy of the LPA signed by the LP Plaintiffs.  (Doc. 45 at 12 n.6.)  However, although the LPSA refers to a limited partnership agreement, it does not actually integrate the terms of the limited partnership agreement into the LPSA.  Rather, the specific language of the LPSA reflect that the limited partnership agreement is a standalone document, albeit part of the same overall bundle.  *See* Doc. 42-1, Ex. A, part 6 (Ma LPSA) ("This Subscription Agreement, the Memorandum, <u>and</u> the Company's Limited Partnership Agreement set[] forth the entire agreement and understanding among the parties[.]") (emphasis added).  There is no term in the LPSA that incorporates all of the terms of a limited partnership agreement by reference.  Moreover, even if there were, based on the dates, the LPA attached to Defendants' papers cannot be the document

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

10

Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

1    referenced in the LPSA.  As noted, the LPSAs were executed in early 2014, and the LPA submitted

2    by Defendants is dated January 15, 2015.

3         To support their position, the GGG Defendants cite *In re Holl*, 925 F.3d 1076 (9th Cir.

4    2019).  *Holl*, however, makes clear why this argument fails.  *See id.* at 1084 (quoting *Shaw v.*

5    *Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997)).  As stated in *Shaw* and applied in *Holl*:

> It is, of course, the law that the parties may incorporate by reference
> into their contract the terms of some other document.  But each case
> must turn on its facts.  For the terms of another document to be
> incorporated into the document executed by the parties the reference
> must be clear and unequivocal, ***the reference must be called to the***
> ***attention of the other party*** and he must consent thereto, and ***the***
> ***terms of the incorporated document must be known or easily***
> ***available to the contracting parties***.

*Shaw*, 58 Cal. App. 4th at 54 (internal quotations omitted) (emphasis added).  Applying *In re Holl*

and *Shaw*, the LPA's supposed arbitration agreement plainly cannot be deemed incorporated by

reference into the LPSA.  As noted, the Subscription Agreement merely references, without

emphasis or identifying details, a "Partnership Agreement."  (*See, e.g.*, Doc. 42-1, Ex. A, LPSA at

1–2 §§ 1(a), 1(c); *id.* at 6, § 6.)  It does not mention any particular provisions or give any indication

as to what those might say.  It most certainly does not mention any arbitration agreement.

     Further, the LP Plaintiffs were not provided a copy of the LPA before or when signing their

subscription agreements.  *See generally* Plaintiff Declarations.  In *Adajar v. RWR Homes, Inc.*, 160

Cal. App. 4th 563, 570–71 (2008), RWR argued that the plaintiffs should be compelled to

arbitration pursuant to a provision in a "sample warranty booklet" referred to in their signed

agreements with the defendant.  RWR did not produce the exact "sample warranty booklet" that

was referred to in the plaintiffs' applications, but did produce "2001 and 2002 warranty booklets"

RWR had sent to some, but not all, of the plaintiffs in 2001 and 2002, after the events giving rise

to plaintiffs' causes of action.  The court found that RWR had failed to meet its burden of showing

the existence of arbitration agreement.  *See id.* ("We may not simply infer the 2001 and 2002

warranty booklets issued to plaintiffs after the close of escrow were identical to the sample warranty

booklet referred to in the applications . . . .  It was RWR's burden to prove an arbitration contract,

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

11                                    Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

however, and no arguable presumption arises as to plaintiffs' knowledge when RWR failed to submit the sample warranty booklet referred to in the application.").

As noted above, the sole LPA produced by Defendants is dated <u>after</u> the subscription acceptance dates for the LP Plaintiffs.  The LP Plaintiffs cannot be bound by a document that apparently did not exist at the time they signed an agreement that may have referred to it.  Since the evidence indicates that the LPA and the LP Plaintiffs' Subscription Agreements were not contemporaneous documents, Defendants cannot seriously argue that this LPA was "reasonably available" to Plaintiffs upon signing their subscription agreements, such that they might become aware of its terms before irrevocably subscribing to the LP Fund.

C.   **THE LLC PLAINTIFFS ARE NOT BOUND TO ARBITRATE BY THE OPERATING AGREEMENT OR THE LLC SUBSCRIPTION AGREEMENT**

Likewise, the LLC Plaintiffs are also not bound to arbitrate under either the OA or the LLCSAs.  Defendants have produced LLCSA agreements signed by both LLC Plaintiffs.  The LLC Plaintiffs concur that they signed these documents.  *See* Plaintiff Declarations, Liu ¶ 9, Zhang ¶ 9.  The LLCSA does not contain an arbitration clause.  Instead, the LLCSA contains a clause selecting the forum and venue of this Court.  *See* Doc. 42-1, Ex. E (Liu LLCSA), § 16(c) ("Any litigation arising under this Agreement shall be prosecuted <u>exclusively</u> in the state or federal courts residing in San Francisco, California[.].") (emphasis added).

The OA does contain an arbitration clause.[4]  The Defendants also purport to produce OA agreements signed by the LLC Plaintiffs.  *See* Doc. 42-1, Ex. G and H.  However, as discussed further below, the signatures <u>are not valid</u>, and therefore the OA's arbitration clause cannot be enforced against the LLC Plaintiffs.  Likewise, the provisions of the signed LLCSAs are not sufficient to bind the LLC Plaintiffs to arbitration.

---

[4] The arbitration clause in the OA is materially different from the arbitration clause in the LPA. For example, the LPA designates JAMS for resolution of disputes, whereas the OA designates AAA.  In addition, the LPA purports to preclude an arbitration award for punitive damages, while the OA does not.  *See* Doc. 42-1, Ex. D, G, and H.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

1. **The LLC Operating Agreement is Not Validly Signed by the LLC Plaintiffs.**

Although the OA contains an arbitration clause and purports to be fully executed, the evidence shows that the LLC Plaintiffs did not sign it and did not have notice of its terms. Therefore, the LLC Plaintiffs are not bound by the purported arbitration clause contained in the OA.

Specifically, Plaintiff Zhang attests: "I was not sent or asked to review a copy of the Operating Agreement for GSRV-VTI II, LLC, attached as Exhibit H to Mr. Chelini's declaration." (Zhang Decl. ¶ 13.) Plaintiff Zhang further testifies: "I do not recognize the contents of Defendants' Exhibit H. As best I can tell, I have never seen this document before. I was not given a copy of the Operating Agreement for GSRV-VTI II, LLC, before I signed the Subscription Agreement." (*Id.* ¶¶ 14-15.)

Plaintiff Liu attests: "Separately, the [Immigration] Agency also sent me several signature pages, with instructions on how to fill them out. Even after I signed the Subscription Agreement, I was not sent or asked to review a copy of the Operating Agreement for GSRV-VTI II, LLC, attached as Exhibit G to Mr. Chelini's declaration[.]" (Liu Decl. ¶¶ 12-13.) Plaintiff Liu further testifies: "I do not recall signing the Operating Agreement for GSRV-VTI II, LLC." (*Id.* ¶ 16.)

The burden of proving the existence of an arbitration agreement is on Defendants. *Huuuge*, 944 F.3d at 1219; *Adajar*, 160 Cal. App. 4th at 570–71. Although Defendants have produced signature pages ostensibly executed by the LLC Plaintiffs, neither Plaintiff has any recollection of signing the OA, and there are serious problems with Defendants' evidence. This evidence overall outweighs Defendants' prima facie showing of an arbitration clause in the OA. The LLC Plaintiffs aver under oath that they do not recall signing the OA. Other evidence corroborates this testimony.

First, the LLC Plaintiffs may have been given standalone signature pages for the OA, not the document itself. Plaintiff Zhang attests to receiving standalone signature pages, and to signing a blank sheet of paper. *See* Zhang Decl. ¶ 12. Plaintiff Liu also attests to receiving standalone signature pages. *See* Liu Decl. ¶ 12. However, neither remembers signing the OA. *See* Zhang Decl. ¶ 16; Liu Decl. ¶ 16.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

13                                    Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

Second, the signatures themselves are problematic and not reliable.  The signature page for Plaintiff Liu shows that different color ink was used for her supposed signature and for the rest of the handwritten content, and the handwriting corresponding to each color ink looks different.  (Doc. 42-1, Ex. G, at 135.)  The signature provided for Plaintiff Zhang, meanwhile, appears <u>exactly</u> identical to the signatures in her subscription agreement.  (*Compare, id.* Ex. H at 177, *with, id.* Ex. F at 80–81.)  Plaintiff Zhang attests that she does not recall signing the OA.  *See* Zhang Decl. ¶ 16. This supports an inference that the signature may have been electronically copied from another document.[5]

Third, a close look at the documents submitted by Defendants shows that the signature pages for the OAs are a different size than the rest of the document.  (Doc. 42-1, Ex. G, p. 36, Ex. H, p. 36.)  This suggests that the OA signature pages were pulled from a different source than the body of the document, and corroborates Plaintiffs' testimony that they did not see or sign the complete OA.

Fourth, the title that appears on both OA signature pages does not match the cover page of the document.  The signature page says "GSRV-VTI II, LLC OPERATING AGREEMENT." (Doc. 42-1, Ex. G, p. 36, Ex. H, p. 36.)  However, the title of the document as a whole is "<u>AMENDED AND RESTATED</u> OPERATING AGREEMENT of GSRV-VTI II, LLC."  (Doc. 42-1, Ex. G and H) (emphasis added).

Fifth, the two signature pages for the OA are not dated.  *See* Doc. 42-1, Ex. G, p. 36, Ex. H, p. 36.

Sixth, Defendants' evidence is itself unreliable.  Defendant Chelini's declaration, which is all that Defendants have provided to authenticate the content of Exhibits G–H, merely says that: "The LLC Operating Agreements were entered into by and among . . . the investors (i.e., LLC

---

[5] To be clear, the LLC Plaintiffs are not accusing these Defendants of forgery.  At this point, that question is not before the Court.  The issue is whether the LLC Plaintiffs consented to be bound by an arbitration clause in the OA.  For a host of reasons, the answer is no, and the analysis does not turn on whether the OA signature pages were forged and if so, by whom.  If the adjudication of this Motion will turn on the reliability of the signatures, Plaintiffs request an opportunity to conduct limited discovery of the documents submitted by Defendants, and request an evidentiary hearing if required by the Court.  However, Plaintiffs do not believe such a process is necessary to resolve this pending issue.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

Plaintiffs), as Members of the LLC. . . . True and correct copies of the executed LLC Operating Agreements are attached hereto as Exhibits G-H."   (Dkt. 42-1 at 3, ¶ 7.)   Among other things, Defendant Chelini does not explain where he found these documents, how they were maintained all these years, or where he obtained the documents from in the first place.  These omissions are particularly significant here given the problems identified above.

Because Plaintiffs' sworn declarations state that they did not enter arbitration agreements, and Defendants' supposed evidence to the contrary is not credible, Defendants have failed to meet their burden of proving the existence of an arbitration agreement entered by the LLC plaintiffs. *Huuuge*, 944 F.3d at 1219; *Adajar*, 160 Cal. App. 4th at 570–71.  The LLC Plaintiffs should not be compelled to arbitrate their claims for that reason alone.  An agreement to arbitrate requires actual notice and consent, as giving up one's right to trial is a serious decision.  See *Stolt-Nielsen*, 559 U.S. at 681 ("arbitration is a matter of consent, not coercion.").  Nevertheless, Defendants' motions further fail for several additional reasons.

### 2.   The LLCSA Does Not Save the Arbitration Clause of the OA.

The fact that the LLCSAs are signed by the LLC Plaintiffs does not enable Defendants to bootstrap that signature onto the arbitration clause of the OA.  The LLCSA provides a different forum selection clause for dispute resolution.  The <u>LLCSA</u> (§ 16(c)) requires that disputes arising under it be resolved "exclusively" in state or federal court in San Francisco, California.  *See* Doc. 42-1, Ex. E, F.  Thus, the LLCSA contains a venue selection clause and provides for resolution of disputes through litigation, not arbitration.

The <u>LLCSA</u> generally concerns the terms of Plaintiffs' investments.  It states the price term that subscribers must pay to invest, and imposes various other obligations on subscribers, who, for example, are required to make numerous representations and acknowledgments.  By contrast, the <u>OA</u> concerns the operation and management of the LLC Fund, which it places entirely under the control and authority of the Fund's Manager.  The OA imposes essentially no obligation on non-managing members, whose rights it expressly restricts.

Defendants cannot contend that the arbitration provision of the OA was incorporated into the signed LLCSAs.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

15                                    Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

1    First, the LLCSA does not incorporate the OA by reference.  The LLCSA does not mention

2  the OA in referring to the parties' agreement.  Specifically, the LLCSA states: "This Agreement

3  constitutes the entire Agreement between the parties and supersedes all prior oral or written

4  agreements between the parties hereto with respect to the subject matter hereof."  *See* Doc. 42-1,

5  Ex. E, p. 11.  The paragraph does not refer to the Operating Agreement.

6    Second, as with the LPA, the timing does not line up.  Plaintiff Liu executed the LLCSA on

7  April 3, 2015.  (Dkt. 42-1, Ex. E at 14.)[6]  Plaintiff Zhang executed the LLCSA on February 6, 2015.

8  (Doc. 42-1, Ex. F, at 14.)  However, the OA purportedly signed by Plaintiff Liu is dated April 27,

9  2015.  (Doc. 42-1, Ex. G, p. 2.)  Likewise, the OA purportedly signed by Plaintiff Zhang is also

10  dated April 27, 2015.  (Doc. 42-1, Ex. H, p. 2.)  Both of these dates are <u>after</u> the execution of their

11  LLCSAs.

12    **3.   The LLCSA's Forum Selection Clause Supersedes the OA.**

13    The venue and forum selection clause in the LLCSA supersedes any subsequent dispute

14  resolution provision of the OA, by the terms of both the LLCSA and the OA.

15    The LLCSA, in Section 16(c), mandates that "litigation arising under this Agreement shall

16  be prosecuted exclusively in the state or federal courts residing in San Francisco, California."  This

17  conflicts with the purported arbitration clause in the OA.

18    In addition, the LLCSA states that no provisions of the LLCSA can be modified or waived

19  except in writing signed by the party against whom it is asserted.  *See* Doc. 42-1, Ex. E and F, §

20  16(b).

21    The OA then contains an integration clause, stating that it does not limit any provisions of

22  the LLCSA.  Here, the OA's integration clause further specifically states that it "shall not limit the

23  provisions of [the LLCSA]" (§ 20.10).  (Dkt. 42-1, Ex. G and H, p. 32.)  *See* Cal. Civ. Code § 1642

24  ("Several contracts relating to the same matters, between the same parties, and made as parts of

25  substantially one transaction, are to be taken together.").  Accordingly, the purported arbitration

---

[6] As another oddity regarding dates, Eric Chelini apparently accepted Plaintiff Liu's subscription
agreement on March 9, 2015, which predated the execution of the document by Plaintiff Liu.  (Doc.
42-1, Ex. E., p. 14, 16.)

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

1    agreement provided in OA Section 20.3 must be construed in conjunction with the forum selection

2    clause in SA Section 16(c).

3        Obviously the same dispute cannot both be "settled by arbitration" and "prosecuted

4    exclusively in . . . state or federal court[]."  It follows that, because the OA expressly does not limit

5    the provisions of the LLCSA, the forum selection clause of the LLCSA is not "limit[ed]" by any

6    terms of the OA, including the arbitration clause.  *See* Cal. Civ. Code § 1642.

7        The correct reading of the two provisions simply carves out from the scope of the OA's

8    arbitration clause all disputes that fall within the scope of LLCSA section 16(c)—*i.e.*, "any dispute,

9    disagreement, or issue of construction or interpretation arising [under the SA] whether relating to

10   its execution, its validity, the obligations provided therein or performance thereof[.]"

11       The validity of the LLCSA, the obligations it created, and the parties' performance of those

12   obligations are precisely the issues that the LLC Plaintiffs present in the Complaint.  The origin of

13   this action is in the misrepresentations that Plaintiffs allege Defendants made to them before each

14   Plaintiff paid Defendants $540,000 to invest in the Project— misrepresentations on which Plaintiffs

15   reasonably relied in deciding to invest and in fact investing in the Project.  The Complaint is

16   centered around Plaintiffs' investments themselves, which were alleged to be improperly obtained.

17   In essence, as alleged, the LLCSA underpins the claims of the LLC Plaintiffs, not the OA.

18       The claims in the Complaint do not arise from terms in the OA.  Notably, it is mentioned in

19   only one of the 293 paragraphs in Plaintiffs' Complaint.  (Dkt. 1 at 20, ¶ 94.)  The Complaint does

20   not assert independent injuries rooted in some duty of the Manager set forth in the OA.   The

21   multiple breaches of fiduciary duties alleged in the complaint compounded Plaintiffs' injuries over

22   several years.  However, Plaintiffs' claims for breach of fiduciary duties are based in statutory

23   provisions, not in any contract term in the OA.  While these claims require showing the existence

24   of a fiduciary relationship, here, the elements of such a relationship are sufficiently established by

25   the terms of the LLCSA.   The contents of the OA itself are thus inapposite.  While the fiduciary

26   duties owed by managers to the non-managing members of an LLC are important concepts in the

27   Complaint, and breaches of these duties underlie several of Plaintiffs' claims, these fiduciary duties

28   are statutory in nature, imposed as a matter of public law and are non-derogable by contract.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

17                                Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

D.     **THE NON-SIGNATORY DEFENDANTS LACK STANDING TO ENFORCE ARBITRATION**

"Standing, of course, is always a threshold issue. When evaluating a motion to compel arbitration, the first determination is whether the parties intended to contract for arbitration." *Britton v. Co.-op Banking Grp*., 916 F.2d 1405, 1413 n.9 (9th Cir. 1990). As non-signatories to the OA and LPA, the GGG Defendants, VTI, and Mr. Chelini lack standing to enforce the arbitration clauses.[7]  Even if the arbitration clauses were effective despite the myriad problems identified above – and they are not – the GGG Defendants and the other non-signatories lack standing to invoke the clauses.

The "liberal federal policy regarding the scope of arbitrable issues is inapposite" when the question is "whether a particular party is bound by the arbitration agreement." *Norcia v. Samsung Telcoms. Am. LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017) (citation omitted).  *See also Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so[.]").  Even setting aside the numerous other issues identified above, because the Plaintiffs did not have a contractual relationship with the Non-Signatory Defendants, Plaintiffs cannot be compelled to arbitrate those claims.

**1.  The Non-Signatory Defendants Do Not Have Standing as Alleged Alter Egos.**

The Non-Signatory Defendants attempt to have their cake and eat it too.  While asserting that they are certainly <u>not</u> alter egos of each other, the Non-Signatory Defendants simultaneously argue that they should receive the benefit of being treated as alter egos for the sole purpose of compelling arbitration.  *See* GGG Motion, Doc. 45 p. 1 ("While the alter ego allegations would be denied, the import of these allegations should govern the disposition of this motion.").  But applicable case law defeats this argument.

---

[7] The parties disagree about whether Mr. Chelini, personally, is a signatory.  Because Mr. Chelini has signed the operative documents only as a representative of GSRV-VTI Management, LLC, and not on an individual basis, he is not a signatory.  Accordingly, Plaintiffs direct the non-signatory arguments to Mr. Chelini as well.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

18                                                     Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

In the case of *In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Litig*., 470 F. Supp. 3d 1117, 1124 n.2 (C.D. Cal. 2020), the court rejected a party's "bizarre position that its own corporate veil should be pierced." *See id*. ("In other words, Ford claims that it itself is an 'assign' of the Lease because its wholly-owned subsidiary's wholly-owned subsidiary is an 'assign' of the Lease. But it is axiomatic that, in the absence of corporate veil-piercing—an equitable remedy to prevent injustice—parent and subsidiary corporations are distinct entities, with distinct obligations and liabilities. Thus, in seeking to enforce the Arbitration Provision as an 'assign' based on its subsidiary's subsidiary being an 'assign,' Ford implicitly takes the bizarre position that its own corporate veil should be pierced, thereby also implying that there is some abuse of the corporate form in its own chain of ownership, from which, incidentally, it should benefit. This is nonsensical and the Court rejects this argument without further discussion.") (internal citations omitted).

Likewise, in the matter of *Yang v. Majestic Blue Fisheries, Ltd. Liab. Co*., 876 F.3d 996, 1003-04 (9th Cir. 2017), the court rejected an attempt to compel arbitration based on alter-ego allegations when those allegations had been expressly disclaimed. *See id*. at 1004-05 ("Where, as here, an alter ego or agency relationship 'was expressly disavowed,' the non-signatory cannot compel arbitration under that theory.").

Because the Non-Signatory Defendants have expressly disavowed any alter ego allegations, they cannot use those allegations as a sword to compel arbitration. *See* GGG Motion, Doc. 45 p. 1 ("the alter ego allegations would be denied").

### 2. Plaintiffs Are Not Equitably Estopped from Opposing Non-Signatories' Efforts to Arbitrate.

The GGG defendants contend that Plaintiffs should be equitably estopped from opposing arbitration. *See* Doc. 45, GGG Motion, p. 13-14.  The GGG Defendants' argument misses the mark, because Plaintiffs are not suing for breach of the LPA or OA.  The claims brought in the Complaint are for fraudulent inducement, breach of fiduciary duty, constructive fraud, fraudulent concealment, conversion, fraudulent transfer, unfair competition, and accounting.   (Doc. 1, Complaint.)

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

19                                        Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

Under Ninth Circuit law, a non-signatory can enforce an arbitration clause through equitable estoppel under two circumstances, as set forth in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013).  First, "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract." *Id.* (citing *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221, 92 Cal. Rptr. 3d 534 (2009)).  Second, "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory <u>and</u> the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Id.* (citing *Goldman*, 173 Cal. App. 4th at 219) (internal quotations omitted) (emphasis added).

The GGG Defendants correctly state the law as well, but the Non-Signatory Defendants do not meet either standard.  The first prong does not apply here.  Plaintiffs are not "signatories" asserting claims against "non-signatories," nor do Plaintiffs bring claims arising under either the LPA or the OA.  Plaintiffs do not assert any claims for breach of either agreement, and both agreements are mentioned fewer than five times <u>altogether</u> in the Complaint.  Likewise, the second prong does not apply either because the allegations of interdependent misconduct – of which there are many – are not "founded in" or "intimately connected with" the LPA or OA.  As discussed above, Plaintiffs' claims arise independently of the specific terms of the LPA and OA.  Notably, the GGG Defendants present no analysis on this point, but rather simply provide a lengthy string cite to the Complaint, presumably to show how many times Plaintiffs alleged interdependent misconduct.  *See* Doc. 45, GGG Motion, p. 14.  While interdependent misconduct is a required, it is not dispositive, and the Non-Signatory Defendants cannot show that the acts of interdependent misconduct alleged in the Complaint are "founded in" or "intimately connected with" the LPA or OA.  As a result, Defendants' arguments for equitable estoppel fall short.

### 3.  The Arbitration Clause of the LPA Expressly Applies Only to Signatories.

Finally, as to the LP Plaintiffs, the arbitration clause of the LPA is very narrow and only applies to disputes "arising between the parties."  (Doc. 42-1, Ex. D) ("The Partners agree that in the event of <u>any dispute arising between the parties</u>, such dispute shall be settled by

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

20                                                  Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

arbitration[.]") (emphasis added).  As noted above, the only ostensible "parties" to the LPA are Plaintiffs and GSRV-VTI Management, LLC, the sole signatory.  As a result, the Non-Signatory Defendants cannot assert standing under the arbitration clause of the LPA.  Where an arbitration clause is narrow, as the one in the LPA certainly is, the Court must construe the clause to give effect to its intended narrowness.  *See, e.g., Wireless Warehouse, Inc. v. Boost Mobile, LLC*, No. SACV 09-1436-MLG, 2010 U.S. Dist. LEXIS 21835, at *15 (C.D. Cal. Mar. 10, 2010) ("Given the Agreement's narrow arbitration clause, it does not evidence intent to require arbitration of disputes related only peripherally to the Agreement or raising issues largely distinct from the interpretation and performance of the Agreement.") (internal quotations omitted); *see also FDIC v. LSI Appraisal, LLC*, No. SA CV 11-706 DOC (ANx), 2011 U.S. Dist. LEXIS 126980, at *16 (C.D. Cal. Nov. 2, 2011) ("The Ninth Circuit has held that where an agreement contains a narrow arbitration clause, disputes that fall outside the scope of the arbitration clause should not be compelled to arbitration.") (citing *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)).[8]

   **4.  Defendant VTI Lacks Any Standing to Compel Arbitration.**

   Perhaps recognizing the weakness of their position, VTI has submitted only a two-page joinder.  (Doc. 44.)  VTI acknowledges that it is a non-signatory defendant.  As such, all of Plaintiffs arguments raised above apply with equal force to VTI.   Plaintiffs oppose any request for VTI to "voluntarily" join the arbitration, as VTI must show a valid arbitration agreement upon which to move to compel arbitration.  Because there is no such agreement that encompasses VTI, VTI's request for joinder must be denied.

**E.     BOTH PURPORTED ARBITRATION CLAUSES ARE INVALID DUE TO PROCEDURAL UNCONSCIONABILITY**

   The Court should also deny Defendants' attempt to compel arbitration because both the LPA and OA arbitration clause are invalid due to procedural unconscionability.  Even if Defendants could show a properly executed arbitration agreement – and they cannot – the arbitration clauses

---

[8] Because the arbitration clause of the OA is quite broadly worded, the LLC Plaintiffs do not rely on the scope of the arbitration clause.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

21                                    Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

of both the LPA and OA should not be enforced against any of Plaintiffs on the grounds of unconscionability.

Both arbitration provisions would be invalid even if Plaintiffs had in fact agreed to them, because they are procedurally unconscionable.  Even as constrained in this action by FAA preemption, unconscionability, like other general contract defenses, may invalidate an arbitration agreement under California law. *Mohamed*, 848 F.3d at 1209.  Although the FAA preempts a state law unconscionability argument "that is unfavorable to arbitration," it does not "immunize all arbitration agreements from invalidation no matter how unconscionable they may be, so long as they invoke the shield of arbitration." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013); *see also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058–59 (9th Cir. 2013) (en banc).

 "Procedural unconscionability focuses on the factors of surprise and oppression." *Kilgore*, 718 F.3d at 1059 (quoting *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003)).  The arbitration clauses in the LPA and OA are procedurally unconscionable for several reasons.  First, Defendants intentionally did not give the any Plaintiffs reasonable notice of the arbitration clause.  In the case of the OA, the clause is buried in a 30-page English-only document. See Doc. 42-1, Ex. G-H.  In the case of the LPA, the clause is buried on the penultimate page of a 27-page English-only document. *See* Doc. 42-1, Ex. D.  Notably, when Defendants wanted to ensure comprehension by the Plaintiffs, they provided documents in both English and Chinese. *See, e.g.,* Doc. 1-3 (marketing materials appended to Complaint).  In addition, Exhibit E to the Complaint shows a letter that was sent to Plaintiffs by Eric Chelini.  (Doc. 1-5; *see also, e.g.*, Doc. 1 at 31–32, ¶¶ 157–61.)   Both documents concern information that Defendants, or some of them, plainly wanted Plaintiffs and other Project investors to have.  And both documents are written with Chinese translations following every paragraph, apparently designed to ensure comprehension.  All of the Plaintiffs have attested that they have very limited proficiency in English. *See* Plaintiff Declarations, ¶¶ 5.

The timing of the documents also proves procedural unconscionability.  It is undisputed that the LPA is dated <u>after</u> the LP Plaintiffs signed their LPSAs and were accepted. *See* Doc. 42-1, Ex. A-D.  However, the LPSA provides that the subscriber "irrevocably subscribes" and "is not entitled

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

22

Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

to cancel, terminate, or revoke this Subscription, any agreements of the undersigned hereunder or the power of attorney granted hereby," except if the LLC entity rejects the subscription.  Doc. 42-1, Ex. A-C, part 1.  Thus, the LP Plaintiffs had <u>no choice</u> with regards the purported arbitration clause in the purported LPA, as they could not have terminated their subscription as of January 15, 2015, because they had already been accepted.  This is procedurally unconscionable.

For the LLC Plaintiffs, the LLCSA also subscribed them "irrevocably." *See* Doc. 42-1, Ex. E and F, Recital part I; *see also id*. § 4(b) ("The Subscriber understands that . . . his or her subscription for Membership Interests is irrevocable (unless the Company otherwise consents in writing in its sole and absolute discretion).").  While the LLCSAs were signed – irrevocably – on April 3, 2015 (Liu) and February 6, 2015 (Zhang), the OA upon which Defendants rely was dated <u>after</u> those dates.  *See* Doc. 42-1, Ex. G, H, p. 1 (dated April 27, 2015).

Thus, the inclusion of an arbitration clause in the LPA and OA, when none was present in either the LPSA or LLCSA, is procedurally unconscionable, because Plaintiffs were <u>irrevocably bound</u> by whatever terms were placed into the later-dated documents.  *See Kinney v. United Healthcare Servs*., 70 Cal. App. 4th 1322, 1329, 83 Cal. Rptr. 2d 348, 353 (1999) ("The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party.").

In addition, the arbitration clause is not highlighted within the document.  It is given no particular prominence.  Nor does either arbitration clause identify all of the rights that Plaintiffs are giving up by agreeing to arbitrate.  A contractual term is likely unconscionable when it is hidden within a lengthy document.  *See id*. at 1329 ("The second component of procedural unconscionability encompasses an aspect of surprise, with the terms to which the party supposedly agreed being hidden in a prolix printed form drafted by the party seeking to enforce them.").

On this basis as well, Defendants' motions to compel arbitration should be denied as to all Plaintiffs.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

23   Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

**F.** <u>**THE PARTIES DID NOT AGREE TO DELEGATE ARBITRABILITY TO AN ARBITRATOR**</u>

There is no "clear and unmistakable" evidence that the Plaintiffs intended to delegate the issue of arbitrability to an arbitrator, despite reference to JAMS or AAA rules of procedure.

The default rule is that "gateway issues of arbitrability presumptively are reserved for the court[.]"  *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).  Proving otherwise requires "clear and convincing evidence" of an intention to do so.  *Id.*

For the reasons discussed above, Plaintiffs did not have notice of the purported arbitration clauses.  Even if they did have notice – and they did not – the arbitration clauses were provided to them solely in English.  Plaintiffs have very limited proficiency in English.  *See* Plaintiff Declarations, ¶¶ 5.  Moreover, Plaintiffs are not familiar with "JAMS" or "AAA," as attested in their declarations.  *See* Plaintiff Declarations, Ma ¶ 21, Wang ¶ 21, Zhang ¶ 23, Liu ¶ 23, and Zhao ¶ 21.  Given this lack of familiarity with the arbitration rules and U.S. court procedures, Plaintiffs are not "sophisticated parties."

Defendants rely on the reference to JAMS rules in the LPA and AAA rules in the OA, but those references, standing alone, are not enough to delegate arbitrability to an arbitrator in the context of parties such as Plaintiffs.  In the case of sophisticated parties, the courts may infer significance from reference to a set of arbitration rules, but so far, the Ninth Circuit has not extended that holding to non-sophisticated parties.  *See, e.g., Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (limiting holding to "the facts of the present case, which do involve an arbitration agreement between sophisticated parties") (internal quotations omitted); *see also Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018) (declining to decide whether incorporation of arbitration rules affected delegation of threshold questions for non-sophisticated parties).  Plaintiffs here are not sophisticated for purposes of interpreting a purported arbitration clause.  *See, e.g.*, Zhang Decl. ¶ 23 ("I am not familiar with the 'American Arbitration Association' ('AAA'), the AAA rules, or how those rules are different from the rules of this Court.").  Particularly given the language barrier, the lack of familiarity with the U.S. judicial system, and the lack of familiarity with arbitration proceedings, the Court should not infer that Plaintiffs understood

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

the significance of a reference to a particular set of arbitration rules – if indeed Plaintiffs had seen such a document, which they did not.

Even if the Court concludes that the documents evince a "clear and unmistakable intent" to delegate these threshold issues, the Court must also determine whether Defendants' requests to compel arbitration are "wholly groundless." Because of the threshold problems with enforcing the arbitration clauses as discussed at length above, along with the narrowness of the LPA arbitration clause, Defendants' motions are, in this case, "wholly groundless," thus precluding delegation of the issue to an arbitrator. *See, e.g., ASUS Comput. Int'l v. InterDigital, Inc.*, No. 15-cv-01716-BLF, 2015 U.S. Dist. LEXIS 118794, at *14 (N.D. Cal. Aug. 25, 2015) ("When the parties clearly and unmistakably delegate arbitrability to an arbitrator, the Court's only remaining inquiry is to determine whether the assertion of arbitrability is 'wholly groundless.'). *See also Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 975 (N.D. Cal. 2015) ("The 'wholly groundless' inquiry allows the court to prevent a party from 'asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration.'") (quoting *Qualcomm Inc. v. Nokia Corp*., 466 F.3d 1366, 1373 n.5 (Fed. Cir. 2006) (applying Ninth Circuit law).

G.     **IF THE COURT COMPELS PARTIAL ARBITRATION, THE LITIGATION SHOULD NOT BE STAYED**

In the event that the Court partially compels arbitration – and it should not compel any claims to arbitration, for the numerous reasons outlined above – the Court should not automatically stay the remainder of the litigation. While the GSRV-VTI Defendants conclusorily assert that the Court could and should stay the litigation, they fail to identify any specific circumstances that would justify that action. *See* Doc. 42, p. 17-18. For example, the GSRV-VTI Defendants fail to identify any specific ruling by an arbitrator would impact claims pending before this Court. Although Plaintiffs generally concurred during a meet-and-confer with Defendants that this dispute resolution process should not proceed piecemeal, any such general statement is <u>not</u> a concession that this litigation should be stayed pending resolution of any portion that is sent to arbitration.

DGW KRAMER LLP
ONE ROCKEFELLER PLAZA
NEW YORK, NY 10020

25                    Case No. 3:21-cv-00856-WHO
PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.

1

## <u>CONCLUSION</u>

2

Based upon the foregoing and the accompanying Plaintiff Declarations, Plaintiffs

3

respectfully request that the Court deny Defendants' motions to compel arbitration, or for joinder,

4

in their entirety.

5

6

DATED:  May 5, 2021                    By:      DGW KRAMER LLP

7

8

_/s/ Katherine Burghardt Kramer_

Rongping Wu

9

Katherine Burghardt Kramer
Olivia M. Goetsch

10

*Counsel for Plaintiffs Hui MA,*

11

*Ailing ZHAO, Xi LIU, Yixuan*
*WANG, and Rui ZHANG*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DGW KRAMER LLP**
One Rockefeller Plaza
New York, NY 10020

26                              Case No. 3:21-cv-00856-WHO

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
*Ma*, et al., *v. Golden State Renaissance Ventures, LLC*, et al.