HANSON BRIDGETT LLP
LAWRENCE M. CIRELLI, SBN 114710
lcirelli@hansonbridgett.com
KAYLEN KADOTANI, SBN 294114
kkadotani@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:     (415) 541-9366

Attorneys for Defendants
ERIC CHELINI and GSRV-VTI
MANAGEMENT, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| HUI MA, AILING ZHAO, XI LIU, YIXUAN WANG, and RUI ZHANG,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN STATE RENAISSANCE VENTURES, LLC, dba Golden Gate Global, a California Limited Liability Company; GSRV MANAGEMENT, LLC, a California Limited Liability Company; GSRV-VTI MANAGEMENT, LLC, a California Limited Liability Company; ERIC CHELINI, an individual; STEVEN KAY, an individual; and VERTEBRAL TECHNOLOGIES, INC., a Minnesota corporation,<br><br>Defendants. | Case No. 3:21-cv-00856-WHO<br><br>**REPLY DECLARATION OF ERIC CHELINI IN SUPPORT OF DEFENDANTS ERIC CHELINI AND GSRV-VTI MANAGEMENT, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY PROCEEDINGS**<br><br>Date:  May 26, 2021<br>Time: 2:00 PM<br>Ctrm: 2<br>Judge: the Hon. William H. Orrick |

--                     Case No. 3:21-cv-00856-WHO
REPLY DECLARATION OF ERIC CHELINI IN SUPPORT OF DEFENDANTS ERIC CHELINI AND GSRV-VTI
MANAGEMENT, LLC'S MOTION TO COMPEL ARBITRATION

17520198.1

I, Eric Chelini, declare as follows:

1. I am a Defendant in this case, as well as the managing member of Defendant GSRV-VTI Management, LLC, a position I have held at all times relevant to the facts disclosed herein. I am also a former member of Golden State Renaissance Ventures, LLC ("GSRV"). I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I am submitting this "Reply" declaration in support of Defendants' motion to compel arbitration (Dkt. 42) in order to respond to the arguments and allegations raised in Plaintiffs' opposition (Dkt. 49.)

3. Through my above-referenced roles, I am familiar with the various documents involved with the GSRV-VTI EB-5 investment project. I am also familiar with the manner in which these documents were prepared and shared with prospective investors. Generally speaking, the documents related to this project, such as the private offering memoranda, subscription agreements, the Partnership Agreement, LLC Operating Agreement, and other documents, were prepared by GSRV or GSRV-VTI Management, or at their direction, and were then shared with prospective investors through an Immigration Agent in China.

4. The Immigration Agent we worked with on the GSRV-VTI project was Shurui Gao. Among her responsibilities, Ms. Gao served as an intermediary between the investors, including Plaintiffs, and the two GSRV-VTI investment entities (GSRV-VTI, LP and GSRV-VTI II, LLC). Ms. Gao was provided with all relevant documents and agreements concerning the GSRV-VTI project and investment entities before the investors executed any agreements.

5. In 2013, for example, GSRV-VTI, LP's then-counsel prepared a number of documents at my direction that were intended to be part of the overall packet of materials that would be shared with prospective investors. One such document was the underlined proposed version of the Partnership Agreement, a true and correct copy of which is attached hereto as ***Exhibit I***.

6. The purpose of this proposed Partnership Agreement was to assist prospective investors evaluate and analyze the GSRV-VTI investment opportunity.

REPLY DECLARATION OF ERIC CHELINI IN SUPPORT OF DEFENDANTS ERIC CHELINI AND GSRV-VTI MANAGEMENT, LLC'S MOTION TO COMPEL ARBITRATION

17520198.1

7.     It is my understanding and belief that a copy of this proposed Partnership Agreement was provided to each of the LP Plaintiffs through Ms. Gao, at the same time that the LP Plaintiffs received the Private Offering Memorandum and the LP Subscription Agreement. Ms. Gao recently confirmed to me that she did, in fact, provide the Partnership Agreement to the LP Plaintiffs at that time. Likewise, Ms. Gao also recently confirmed to me that she also provided the LLC Plaintiffs with all relevant documents, including the Private Offering Memorandum, LLC Subscription Agreement, and LLC Operating Agreement, at the same time. In short, I have been informed and therefore believe that all Plaintiffs were in possession of all relevant agreements and information at the time they executed their Subscription Agreements. Furthermore, at no point was I made aware of any objections by the Plaintiffs or received any other indication that the Plaintiffs did not understand or agree to the terms of the agreements.

8.     After we received and accepted the LP Subscription Agreements from the investors, I then executed the Partnership Agreement on behalf of both the General Partner and Limited Partners pursuant to authority granted to me in the LP Subscription Agreements. This explains why the date on the executed Partnership Agreement occurs after the execution of the LP Subscription Agreements.

9.     Before it was executed, the Partnership Agreement was amended to reflect a change to the General Partner from GSRV to GSRV-VTI Management, LLC, and to update the date of the document. <u>There were no other changes to the Partnership Agreement</u>. Indeed, the arbitration provision at issue in this motion is the same in both the proposed and executed versions of the Partnership Agreement.  (See, Eric Chelini Dec. [Dkt. 42-1] at Exhibit D, § 22.)

10.     The Partnership Agreement indicates that the Limited Partners are listed in "Schedule A." Unfortunately, this Schedule A was inadvertently omitted from the version of the Partnership Agreement that was attached to my original declaration at Exhibit D. A true and correct copy of "Schedule A" to the Partnership Agreement is attached hereto as ***Exhibit J***.  The names of the other Limited Partners have been redacted to maintain third-party privacy and in compliance with sections 13.7 and 13.8 of the Partnership Agreement. *See also*, Plaintiff's Complaint at footnote 8.

17520198.1

11.     In connection with and in furtherance of the GSRV-VTI project, the Plaintiffs were required to submit and gain approval of I-526 petitions as part of the USCIS's EB-5 Program requirements.

12.     Based on my records, each of the five Plaintiffs in this lawsuit filed I-526 petitions that were subsequently approved by the USCIS, as follows:

| Name | Approx. Date Submitted | Approx. Date Approved |
|------|------------------------|------------------------|
| Hui Ma | May 1, 2014 | October 2015 |
| Ailing Zhao | October 14, 2014 | April 2016 |
| Yixuan Wang | October 20, 2014 | June 2016 |
| Xi Liu | September 8, 2015 | August 2017 |
| Rui Zhang | July 22, 2015 | August 2017 |

13.     For purposes of the GSRV-VTI investment project, GSRV-VTI, LP and GSRV-VTI II, LLC were the New Commercial Enterprises ("NCE") and Vertebral Technologies, Inc. was the "Job Creating Entity" ("JCE"), as required and defined by the EB-5 Program.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of May, 2021, at Oakland, California.



Eric Chelini

Digitally signed by Eric Chelini
Date: 2021.05.12 14:15:53
-07'00'

Eric Chelini

REPLY DECLARATION OF ERIC CHELINI IN SUPPORT OF DEFENDANTS ERIC CHELINI AND GSRV-VTI MANAGEMENT, LLC'S MOTION TO COMPEL ARBITRATION

17520198.1

# EXHIBIT I

# EXHIBIT I

## LIMITED PARTNERSHIP AGREEMENT
## OF
## GSRV-VTI, LP

### *A California Limited Partnership*

This Limited Partnership Agreement is entered into as of [_____, 2014], by and among the parties described in Section 1.1, as listed in **Schedule A** hereto.

1.    Parties and Formation

    1.1    Parties.  The parties to this Agreement and the partners of the Partnership are:

| | |
|---|---|
| General Partner: | Golden State Renaissance Ventures LLC, a California limited liability company; |
| Limited Partners: | Those persons who have received, reviewed and completed the Investment Documents, and whose Subscription Agreements with the Partnership have been accepted by the General Partner on behalf of the Partnership (each of such persons having executed a counterpart of this Agreement personally) for a subscription amount of Five Hundred Thousand Dollars ($500,000), all as reflected in the records of the Partnership (such persons being herein sometimes called, collectively, "Limited Partners" and, individually, a "Limited Partner").  The Limited Partners are at times collectively referred to as the "Limited Partners." In addition, the General Partner, and the Limited Partner(s) are at times collectively referred to as the "Partners." |

    1.2    Formation.  The General Partner has formed a limited partnership (the "Partnership") under the Act by filing a certificate of limited partnership of the Partnership.  The Partners agree that the General Partner shall file or record any additional, supplemental or amended certificates of limited partnership and like documents as the General Partner may deem necessary or advisable in accordance herewith.  The Partners agree further that they shall comply with the requirements and provisions of the Act, which shall govern the rights and liabilities of the Partners, except as otherwise provided in this Agreement.

2.    Name.  The name of the Partnership shall be, and its business shall be conducted under the name, GSRV-VTI, LP.

3.    Term.  The Partnership began on the date a certificate of limited partnership of the Partnership was first filed in the Office of the Secretary of State of the State of California, and shall continue until indefinitely or until terminated in accordance with this Agreement.

- 1 -

015001.0002\1479857.3

4. <u>Addresses</u>.

4.1 <u>Partnership and General Partner</u>. The principal place of business and principal executive office of the Partnership shall be the office of the General Partner at set forth at the end of this Agreement, or such other place or places as the General Partner may from time to time designate by notice to each Limited Partner. The Partnership may also maintain such other offices at such other places as the General Partner may deem advisable. Notwithstanding the foregoing provisions of this section 4.1, the Partnership shall continuously maintain an office in California at which shall be kept the records required by section 10.

4.2 <u>Limited Partners</u>. The address of each Limited Partner is set forth in such Limited Partner's Subscription Agreement. A Limited Partner may change such address by notice to the General Partner, which notice shall become effective on receipt or such later time as such notice may specify.

4.3 <u>Agent for Service of Process</u>. The agent for service of process of the Partnership shall be the General Partner, whose address is set forth at the end of this Agreement. The General Partner may change such agent for service of process or such address from time to time in the manner provided by applicable law; provided that the Partnership shall continuously maintain in California an agent for service of process on the Partnership.

5. <u>Certain Definitions</u>. Any terms used in this Agreement, which are not defined in this section 5 or elsewhere herein, shall have the meanings assigned to them in the Investment Documents. As used in this Agreement, the following terms shall have the meanings indicated:

5.1 "Act" means the California Uniform Limited Partnership Act of 2008, as amended.

5.2 "Affiliate" means, with reference to a specified person, any person directly or indirectly controlling, controlled by or under common control with the specified person, a person owning or controlling ten (10%) percent or more of the outstanding voting securities of the specified person, a person ten (10%) percent or more of whose outstanding voting securities are owned or controlled by the specified person, any officer, director or general partner or trustee of the specified person, and if the specified person is an officer, director, general partner or trustee, any corporation, partnership or trust for which the specified person acts in any such capacity.

5.3 "Asset Management Fee" means the compensation payable to the General Partner for its services in managing the assets, business and affairs of the Partnership as set forth in section 12.1.

5.4 "Asset(s)" are described and defined in section 6 of this Agreement.

5.5 "Capital Account" means the Capital Account established as provided in Section 10.3(a) as may be adjusted from time to time pursuant to Section 10.3:

- 2 -

5.6 "Capital Contribution" means a cash investment in, services, or assets contributed to the Partnership by a Partner, whether initially contributed or subsequently contributed as permitted herein, but excluding loans designated as such.

5.7 "Code" means the Internal Revenue Code of 1986, as amended from time to time (or any corresponding provisions of succeeding law).

5.8 "Depreciation" means, for each Fiscal Year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction allowable under the Code with respect to an asset for such Fiscal Year or other period, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such Fiscal Year or other period, depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization or other cost recovery deduction for such Fiscal Year or other period bears to such beginning adjusted tax basis.

5.9 "Expenses" shall be those costs set forth in section 11.3, and for the purposes of this definition shall include the Asset Management Fee payable to the General Partner.

5.10 "Fiscal Quarter" means the period commencing on the date the Partnership commences business and ending on the succeeding March 31, June 30, September 30 or December 31, as the case may be, each period thereafter of three calendar months ending on any March 31, June 30, September 30 or December 31, or the period from the January 1, April 1, July 1 or October 1, as the case may be, preceding the date of dissolution and termination of the Partnership and ending on the date of dissolution and termination of the Partnership.

5.11 "Fiscal Year" means the period commencing on the date the Partnership commences business or commencing on any subsequent January 1, and ending on the succeeding December 31, or, if earlier, ending on the date of dissolution and termination of the Partnership.

5.12 "Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(a) The initial Gross Asset Value of any asset contributed by a Partner to the Partnership shall be the gross fair market value of such asset, determined as provided in section 10.6;

(b) The Gross Asset Values of all Partnership assets shall be adjusted to equal their respective gross fair market values, determined as provided in section 10.6, as of the following times: (i) the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis Capital Contribution; (ii) the distribution by the Partnership to a Partner of more than a de minimis amount of Partnership property, unless all Partners receive simultaneous distributions of undivided interests in the distributed property in proportion to their respective Ownership Percentages; (iii) the last day of each Fiscal Quarter; and (iv) a liquidation within the meaning of Regulations section 1.704-1(b)(2) (ii)(g);

- 3 -

(c)     The Gross Asset Value of any Partnership property distributed to any Partner shall be the gross fair market value of such Partnership property, determined as provided in section 10.6, on the date of distribution;

(d)     The Gross Asset Value of any Partnership property shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such Partnership property pursuant to Code section 734(b) or 743(b), but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Regulations section 1.704-1(b)(2)(iv)(m); provided, however, that Gross Asset Values shall not be adjusted pursuant to this section 5.12(d) to the extent that the General Partner determines that an adjustment pursuant to section 5.12(b) is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this section 5.12(d); and

(e)     If the Gross Asset Value of an asset has been determined or adjusted pursuant hereto, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses, and Capital Accounts shall be adjusted in accordance with Regulations section 1.704-1(b)(2)(iv)(g) and the Partners' distributive shares of depreciation, depletion, amortization, gains and Losses for tax purposes with respect to such property shall be determined to take account of the variation between the adjusted tax basis and the Gross Asset Value of such property in the same manner as under Code section 704(c).

5.13     "ICA" means the United States Investment Company Act of 1940, as amended.

5.14     "Investment Documents" means those documents, which were submitted by the General Partner to the Limited Partners for the purpose of evaluating the prospect of investing in this Partnership, including (without limitation) that certain Subscription Agreement (see section 5.25), Private Offering Memorandum, and this Agreement.

5.15     "Majority in interest of the Limited Partners" means Limited Partners whose Ownership Percentages, on the first day of the Fiscal Quarter during which such majority is to be determined, aggregate more than fifty (50%) percent of the Ownership Percentages on such date of all Limited Partners.

5.16     "Management Company" means a company, which the General Partner may hire to assist in managing the Assets, or the business of the Partnership.

5.17     "Outside Accountants" means the independent public accountants regularly engaged by the Partnership to compile, review or audit its financial statements or prepare its tax returns.

5.18     The "Ownership Percentage" of a Partner at any date means the percentage computed by dividing that Partner's Capital Account balance at that date by the aggregate of all Partners' Capital Account balances at that date.

5.19     "Priority Return" means, with respect to each Partner, a sum equal to ten percent (10%) of each Partner's Capital Contribution.

5.20    "Profit Allocation" means the Profit Allocation as defined in section 10.4(b).

5.21    "Profits" and "Losses" mean for each Fiscal Year, Fiscal Quarter or other period, an amount equal to the Partnership's taxable income or loss for such Fiscal Year, Fiscal Quarter or other period, determined in accordance with Code section 703(a) (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

(a)    Any income of the Partnership that is exempt from Federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this section 5.21 shall be added to such taxable income or loss;

(b)    Any expenditures of the Partnership described in Code section 703(a)(2)(b) or treated as Code section 705(a)(2)(b) expenditures pursuant to Regulations section 1.704-1(b)(2)(iv)(i), and not otherwise taken into account in computing Profits and Losses pursuant to this section 5.21 shall be subtracted from such taxable income or loss;

(c)    If the Gross Asset Value of any Partnership asset is adjusted pursuant to section 5.12(b) or 5.12(d), the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits and Losses;

(d)    Gain or loss resulting from any disposition of Partnership property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of the Partnership property disposed of, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value;

(e)    In lieu of the depreciation, amortization and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Fiscal Year or other period, computed in accordance with section 5.8; and

(f)    Notwithstanding any other provision of this section 5.21, any items that are specially allocated pursuant to section 10.5(b) shall not be taken into account in computing Profits and Losses.

5.22    "Regulations" means the Income Tax Regulations promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

5.23    "Securities" means securities, repurchase agreements and other intangible investment instruments and vehicles of every kind and nature, whether publicly or non-publicly traded, including, without limitation, stocks, notes, bills, bonds, debentures, subscriptions, options, rights, warrants, certificates of deposit, trust receipts, American Depositary Receipts, International Depositary Receipts, equipment trust certificates, interests in partnerships, certificates of interest or participation in any profit-sharing agreement, collateral trust certificates, bankruptcy claims, investment contracts, evidences of indebtedness and derivatives.

- 5 -

5.24    "Subpartnership" means any partnership, limited liability company or other similar entity in which the Partnership has an interest, which will generally be used to acquire an Asset.

5.25    "Subscription Agreement" means any subscription agreement prescribed by the General Partner as a condition precedent to becoming a Limited Partner.

5.26    "Tax Matters Partner" means the tax matters partner appointed by the General Partner for the Partnership, as such term is defined in Code section 6231(a)(7).

5.27    The "Unrecouped Losses" of a Limited Partner shall be all Losses allocated to such Limited Partner reduced (but not below zero) by all Profits allocated to that Limited Partner in the same Fiscal Year that the Losses are so allocated or allocated to such Limited Partner in any subsequent Fiscal Year; provided, however, that if a Limited Partner withdraws capital from the Partnership, such Limited Partner's Unrecouped Losses shall be reduced by multiplying those Unrecouped Losses by a fraction, the numerator of which is the balance of the withdrawing Limited Partner's Capital Account immediately after the withdrawal and the denominator of which is the balance of the withdrawing Limited Partner's Capital Account immediately before the withdrawal.

5.28    "Unreturned Capital" on any date means, as to any Partner, an amount equal to the excess, if any, of (i) the aggregate Capital Contributions of such Partner as of such date, over (ii) the aggregate distributions made to such Partner pursuant to section 9.3 of this Agreement as of such date.

6.    <u>Investment Activities of the Partnership</u>.  The primary objectives of the Partnership are to invest in Vertebral Technologies, Inc. ("VTI") by acquiring shares of common and/or preferred stock of VTI ("Asset"); advance the strict social criteria of the East Bay Regional Center; and assist in the qualification of the Limited Partners seeking lawful conditional and permanent residence ("Green Card") in the United States through the U.S. Citizenship and Immigration Service's ("USCIS") "EB-5 Immigrant Investor" visa program (the "EB-5 Program"), in accordance with the confidential Private Offering Memorandum of the Partnership dated _____, 2014, and all exhibits and supplements, if any, thereto (the "Memorandum").  To these ends, the Partnership may enter into, make and perform all contracts, agreements and other undertakings and engage in all activities and transactions, as the General Partner may consider necessary or advisable to carry out the foregoing objectives and purposes.

7.    <u>Other Activities</u>.  The General Partner shall directly, or through the Management Company, devote to the Partnership such time as may be necessary for the proper performance of its duties hereunder, and the Partners acknowledge that the General Partner and its Affiliates currently engage other various for profit activities and will continue to engage in such activities including, without limitation, acquisition, financing, development and management activities.  Such for profit business activities may include the formation of other similar private equity projects.  Any Partner and such Partner's Affiliates may engage in any activities, whether or not related to the business of the Partnership, and the Partners specifically recognize that some or all of them and their Affiliates are engaged in various aspects of a for-profit business.  Such Partners may continue, or initiate further, such activities.  Each Partner agrees that any Partner and any

Affiliate of any Partner (a) may engage in or possess an interest, direct or indirect, in any business venture of any nature or description for such Partner's own account, independently or with others, including, without limitation, any business, industry or activity in which the Partnership may be interested in investing or may also have investments and (b) may do so without any obligation to report the same to the Partnership or any Partner or to afford the Partnership or any Partner any opportunity to participate therein. Neither the Partnership nor any Partner shall have any right in or to any such independent venture or investment or the revenues or profits derived therefrom.

8.    Waiver of Conflicts.  The fact that any Partner, or any Affiliate of any Partner, or a member of such Partner's family, is employed by, or is directly or indirectly interested in or connected with, any person or entity employed or engaged by the Partnership to render or perform a service, or from whom the Partnership may make any purchase, or to whom the Partnership may make any sale, or from or to whom the Partnership may obtain or make any loan or enter into any lease or other arrangement, shall not prohibit the Partnership from engaging in any transaction with such person or entity, or create any additional duty of legal justification by such Partner or such person or entity beyond that of an unrelated party, and neither the Partnership nor any other Partner shall have any right in or to any revenues or profits derived from such transaction by such Partner, Affiliate, person or entity.

9.    Capital.

9.1    Limited Partners' Contributions.  The Partnership is authorized to offer and sell a limited number of limited partner interests in the Partnership (consistent with the Memorandum, in which such interests are defined as "Units").  Each Limited Partner has made a Capital Contribution in the amount set forth in such Limited Partner's Subscription Agreement, as of the date such Subscription Agreement was accepted by the General Partner on behalf of the Partnership.  The General Partner may establish such minimum initial and additional Capital Contribution as it deems appropriate and that minimum may thereafter be waived or changed in the exclusive discretion of the General Partner.  As of the first day of any Fiscal Quarter, any Limited Partner may, with the consent of the General Partner, make an additional Capital Contribution in an amount deemed appropriate by the General Partner.  With the consent of the General Partner, a Limited Partner may make additional Capital Contributions at times and in amounts other than those set forth above and, in such cases, the General Partner shall, with the advice of the Outside Accountants, cause appropriate adjustments to be made for purposes of applying the accounting and allocation provisions of this Agreement.  Initial or additional Capital Contributions by a Limited Partner pursuant to this section 9.1 shall not require any consent or approval of any other Limited Partner.  The General Partner shall have the sole authority to accept a Subscription Agreement or an additional Capital Contribution as of a date prior to the date the Capital Contribution is actually made, if the General Partner determines that deeming such Capital Contribution to have been made as of an earlier date will not have a material adverse effect on the Limited Partners generally.

9.2    General Partner's Contributions.  The General Partner shall contribute additional Capital Contributions, or not, in its sole discretion.

9.3    Withdrawal, Distributions, and Return of Capital.

(a)    Withdrawals.  Although the Partnership may make distributions to the Partners during the term of the Partnership in return of their Capital Contributions, no Partner, in such Partner's capacity as such, shall have the right to withdraw or to demand a return of any of such Partner's Capital Contribution or Capital Account without the consent of the General Partner (and, in the case of the General Partner, without the consent of a Majority in interest of the Limited Partners (excluding for such purposes any Limited Partner who is an Affiliate of the General Partner)), except upon dissolution and winding up of the Partnership; provided, however, that a termination and reconstitution of the Partnership under Section 708 of the Code and related Treasury Regulations shall not be considered a dissolution or winding up of the Partnership for purposes of this section 9.3.  Except to the extent otherwise provided herein, any return of such Capital Contribution or Capital Account shall be made solely from the assets of the Partnership (including the Capital Contributions of the Partners) and only in accordance with the terms of this Agreement, and no Partner shall have personal liability for the return of any other Partner's capital under this Agreement. Under circumstances requiring a return of any Capital Contribution, no Partner shall have the right to receive property other than cash except as may be specifically provided in this Agreement and, to the extent any monies which any Partner is entitled to receive pursuant to this Agreement or the Act, would constitute a return of capital, each of the Partners consents to the withdrawal of such capital.

(b)    Distributions.  The General Partner, in its exclusive discretion, shall determine the amount, timing, and means of all distributions by the Partnership. Except as otherwise provided in 9.3(c) below, and elsewhere in this Agreement, all distributions shall be made in proportion to the Partners' respective Ownership Percentages as of the end of the Fiscal Quarter preceding the date of the distribution.  Any distributions in kind shall be made at valuations determined as provided in section 10.6.

(c)    Distributions to Limited Partners Upon Dissolution.  The provisions of section 9.3(b) notwithstanding, in the event of dissolution as set forth in section 17, the General Partner shall make distributions to the Limited Partners in an amount equal to their respective Unreturned Capital Account(s) as of the Fiscal Period (as defined in section 10.4) prior to making any other distributions pursuant to the liquidation of the Assets or distribution of any Partnership assets under section 17.2.

(d)    Withholding Distributions.  Each Partner acknowledges and agrees that the Partnership may be required to deduct and withhold tax or to fulfill other obligations of such Partner on any distribution under this section 9.3.  All amounts withheld with respect to distribution to a Partner shall be treated as amounts distributed to such Partner for all purposes under this Agreement as of the effective date of any distribution.

(e)    Restrictions on Withdrawals and Distributions.  The foregoing provisions of this section 9.3 notwithstanding, no distribution shall be made (i) if such distribution would violate any contract or agreement to which the Partnership is then a party or any law then applicable to the Partnership, including without limitation, U.S. immigration laws, regulations and USCIS interpretations relating to the EB-5 Program, or (ii) to the extent that the General Partner, in its exclusive discretion, determines that it is necessary or advisable for the

Partnership to retain any amount otherwise distributable to pay, or to establish a reserve for the payment of, any liability or obligation of the Partnership, whether known or unknown, liquidated, fixed, contingent or other.

9.4  Deposit of Contributions.  Anything in this Agreement to the contrary notwithstanding, all Capital Contributions shall be paid into the Partnership's assets in a manner designated by the General Partner (in its exclusive discretion), and shall not be paid to the General Partner.  Any such payment may be made by check payable to the Partnership's account or by wire transfer to the Partnership's account according to wire transfer instructions furnished by such custodian.

9.5  Partnership Records of Capital Contributions, Withdrawals and Distributions.  On each contribution, withdrawal or distribution of capital as contemplated by this Agreement, the General Partner shall cause the Partnership's records to reflect accurately such contribution, withdrawal or distribution.

9.6  No Interest.  No Partner shall be entitled to receive from the Partnership payment of any interest on any Capital Contribution.

9.7  No Other Contributions.  Without the consent of all Partners, no Partner shall contribute any funds or other property to the capital of the Partnership except as is expressly required or permitted by this Agreement.

9.8  Additional Limited Partners.  After the date hereof, the General Partner may admit any additional person or entity to the Partnership as a Limited Partner as provided in section 9.1 and no consent of any other Limited Partner shall be required for such admission.

9.9  Repurchase of Limited Partnership Interests.  If the USCIS denies a Limited Partner's Form I-526 Petition, the Limited Partner may, within thirty (30) days after issuance of Notice of such denial, request the repurchase of his or her Limited Partnership Interest by the Company at the amount of the original Capital Contribution, less any wire transfer fees.  The repurchase price shall be payable within ninety (90) days after receipt of the repurchase request.

10.  Profits and Losses.

10.1  Books.  The General Partner shall maintain complete and accurate accounts in proper books of all transactions of or on behalf of the Partnership and shall enter or cause to be entered therein a full and accurate account of all transactions on behalf of the Partnership.  The Partnership's books and accounting records shall be kept in accordance with such accounting principles (which shall be consistently applied throughout each accounting period) as the General Partner may determine to be convenient and advisable.

10.2  Accountings.  As soon as is reasonably practicable after the close of each Fiscal Year, and in any event within ninety (90) days after the end of such Fiscal Year, the General Partner shall make or cause to be made a full and accurate inventory and accounting of the affairs of the Partnership as of the close of that Fiscal Year and shall prepare or cause the Outside Accountants to prepare a balance sheet as at the end of such Fiscal Year, a profit and

loss statement for that Fiscal Year and a statement of Partners' equity showing the respective Capital Accounts of the Partners as of the close of such Fiscal Year and the distributions, if any, to Partners during such Fiscal Year, and any other statements and information necessary for a complete and fair presentation of the financial condition of the Partnership, all of which the General Partner shall furnish to each Partner requesting the same.  In addition, the General Partner shall furnish to each Partner information regarding the Partnership necessary for such Partner to complete such Partner's Federal and state income tax returns, including a copy of the Partnership's tax returns and K-1 (including a balance sheet of the Company as of the last day of the applicable period), a statement of income or loss for the Company for such period, and a statement of the Company's cash flow for such period.  On such accounting being made, Profits and Losses during such Fiscal Year shall be ascertained and credited or debited, as the case may be, in the books of account of the Partnership to the respective Partners as herein provided.

      10.3   <u>Capital Accounts</u>.  An individual Capital Account shall be established for each Partner and maintained in accordance with the provisions following.

      10.4   <u>Allocations</u>.  After giving effect to the special allocations set forth in section 10.5, Profits and Losses shall be allocated to the Partners as of the following measuring periods: (w) the Fiscal Year end; (x) the period ending on the date of the closing of any additional Capital Contributions; (y) the period ending on the date of any distribution to any Partner(s); and (z) the period ending on any other date deemed appropriate by the General Partner (each such period a "Fiscal Period") as set forth below.

      (a)   In the case of Losses, such Losses for each Fiscal Period shall be allocated to the Partners in proportion to their respective Ownership Percentages as of the first day of such Fiscal Period.

      (b)   In the case of Profits, such Profits in each Fiscal Period shall be allocated as follows (the "Profit Allocation"): (i) first, to the Partners, in an amount sufficient to reverse the amount of any then outstanding Unrecouped Losses allocated to the Partners in the current and prior fiscal years; (ii) second, to the Partners in proportion to their Priority Returns, until the amount allocated pursuant to this section 10.4(b)(ii) is equal to the Priority Returns for all Partners; and (iii) third, (a) thirty percent (30%) to the General Partner and (b) seventy percent (70%) pro rata to the Partners based on their Ownership Percentages as of the first day of the Fiscal Period.

      (c)   Anything herein to the contrary notwithstanding, any recapture under applicable tax laws shall be allocated to the Partners in the same proportions as the item generating the recapture shall have been allocated.  The General Partner, in its discretion, may waive all or any portion of the Profit Allocation with respect to any Limited Partner in any Fiscal Year.

      (d)   The allocations under this section 10.4 shall be adjusted accordingly and consistent with the terms set forth in section 10 where: (i) there is a distribution to Limited Partners under section 9.3(c), and (ii) the total value of the combined unpaid Capital Accounts of the Partners plus the unpaid Asset Management Fee exceeds the total dissolution proceeds as set forth in section 17.2.

- 10 -

10.5    Special Allocations.  Notwithstanding the allocation provisions of section 10.4, the following special allocations shall be made in allocating Profits and Losses in the following order:

(a)    Section 704(b) Allocations.  Any special allocations necessary to comply with the requirements set forth in section 704(b) of the Code and the corresponding Regulations shall be made, including the qualified income offset and minimum gain chargeback provisions contained therein.

(b)    Tax Allocations.

(i)    Subject to section 10.5(c)(ii) below, in each Fiscal Year, items of income, deduction, gain, loss or credit that are recognized for income tax purposes shall be allocated among the Partners, General and Limited, in such manner as to reflect equitably amounts credited to or debited against the Capital Account of each Partner, whether in such Fiscal Year or in prior Fiscal Years.  To this end, the Partnership shall establish and maintain records that shall show the extent to which the Capital Account of each Partner shall, as of the last day of each Fiscal Year, be comprised of amounts that have not been reflected in the taxable income of such Partner.  To the extent deemed by the General Partner to be feasible and equitable, taxable income and gains in each Fiscal Year shall be allocated among the Partners who have enjoyed the related credits, and items of deduction, loss and credit in each Fiscal Year shall be allocated among the Partners who have borne the burden of the related debits.

(ii)    Notwithstanding any of the foregoing provisions to the contrary, if a Partner withdraws capital during a Fiscal Year, the General Partner, in its exclusive discretion, may elect to make allocations of taxable income and loss as follows:

(A)    Taxable income may first be allocated to each Partner who has withdrawn all or part of such Partner's Capital Account in that Fiscal Year, to the extent that such withdrawal exceeds such Partner's adjusted tax basis in such Partner's interest in the Partnership immediately prior to such withdrawal.  If more than one Capital Account has been so withdrawn in full or in part, such allocations, if made, shall be made to the extent of and in proportion to such differences;

(B)    Taxable loss may first be allocated to each Partner who has withdrawn all of such Partner's Capital Account in that Fiscal Year, to the extent that such Partner's adjusted tax basis in such Partner's interest in the Partnership exceeds that Capital Account immediately prior to such withdrawal.  If more than one Capital Account has been so withdrawn, such allocations, if made, shall be made to the extent of and in proportion to such differences; and

(C)    Taxable income and loss may thereafter be allocated as provided in section 10.5(c)(i).

The General Partner, in its sole discretion, may cause the Partnership to make the election to adjust the basis of Partnership property under Code section 754.  In any year in which the Code section 754 election is in effect, this section 10.5(b)(ii) shall be null and void.

(iii)     Any elections or other decisions relating to such allocations shall be made by the General Partner in any manner that reasonably reflects the purpose and intention of this Agreement.  Allocations pursuant to this section 10.5(c) are solely for purposes of Federal, state and local taxes and shall not affect, or in any way be taken into account in computing, any Capital Account or share of Profits, Losses or other items of any Partner, or distributions to any Partner, pursuant to any provision of this Agreement.

(c)     Other Allocation Rules.

(i)     Generally, all Profits and Losses shall be allocated among the Partners as provided in section 10.4 and this section 10.5.  If Partners are admitted to the Partnership on different dates during any Fiscal Year, the Profits (or Losses) allocated among the Partners for each such Fiscal Year shall be allocated in proportion to their respective Capital Accounts from time to time during such Fiscal Year in accordance with Code section 706, using any convention permitted by law and selected by the General Partner.

(ii)     For purposes of determining the Profits, Losses or any other items allocable to any period, Profits, Losses and any such other items shall be determined on a daily, monthly or other basis, as determined by the General Partner using any permissible method under Code section 706 and the Regulations thereunder.

(iii)     The Partners are aware of the income tax consequences of the allocations made by section 10.4 and this section 10.5 and hereby agree to be bound by section 10.4 and this section 10.5 in reporting their shares of Profits and Losses for income tax purposes.

(iv)     Notwithstanding any of the foregoing provisions to the contrary, if taxable gain to be allocated includes income resulting from the sale or disposition of Partnership property or property of a limited partnership or joint venture in which the Partnership owns an interest that is treated as ordinary income, such gain so treated as ordinary income shall be allocated to and reported by each Partner in proportion to allocations to that Partner of the items that gave rise to such ordinary income, and the Partnership shall keep records of such allocations.  In the event of the subsequent admission of any new Partner, any item that would constitute "unrealized receivables" under Code section 751 and the Regulations thereunder shall not be shared by the newly admitted Partners, but rather shall remain allocated to existing Partners.

(d)     Provisional Allocation.  If any amount claimed by the Partnership to constitute a deductible expense in any Fiscal Year is treated by any federal, state or local taxing authority as a payment made to a Partner in such Partner's capacity as a member of the Partnership for income tax purposes, with regard to such authority, items of income and gain of the Partnership for such Fiscal Year shall first be allocated to such Partner to the extent of such payment.

10.6     Valuation.  The value of any assets or liabilities of the Partnership shall be determined in good faith by the General Partner, and such determination shall be conclusive and binding on all of the Partners and all parties claiming through or under them.

10.7    Bank and Other Accounts.  All funds of the Partnership shall be deposited and maintained in one or more accounts in the name of the Partnership at such bank or banks or other financial institutions (including, without limitation, money market mutual funds and securities brokerage firms) as may from time to time be selected by the General Partner.  Subject to section 11.3, withdrawals from any such account or accounts shall be made only by written instrument signed by or on behalf of the General Partner.

11.    General Partner's Asset Based Management Fee, Acquisition Fees and Expenses. No fee or expense referenced in this Section 11 shall be paid from any Capital Contribution made by a Limited Partner who is also an EB-5 Investor.  Such fees and expenses shall be payable from available cash flows and/or from any other lawful source, at the General Partner's discretion.

11.1    Asset Based Management Fee.  As compensation for its services in managing the assets, business and affairs of the Partnership, the General Partner is entitled to receive from the Partnership an Asset Management Fee of five percent (5%) (1.25% per Fiscal Quarter) of the Capital of the Partnership per year.  The Asset Management Fee described above, shall be calculated from the aggregate Capital Account balances of the Partners as of the last day of the preceding Fiscal Quarter, and may be accrued without interest when Partnership funds are not available for its payment.  Each quarterly payment shall be equal to one fourth of the above stated Asset Management Fee.  The measuring period for the payment of the Asset Management Fee shall begin for each Partner as of the date such Partner's Subscription Agreement was accepted by the General Partner on behalf of the Partnership, or upon the date that a Partner makes a Capital Contribution, whichever is later.

11.2    Acquisition Fees.  The General Partner is expressly authorized for, in the name of and on behalf of the Partnership, to pay to the General Partner an acquisition fee equal to (x) one percent (1%) of the total purchase price paid by the Partnership for the purchase of any Assets and (y) one percent (1%) of the purchase price paid by any Subpartnership for the purchase of any Assets multiplied by the Partnership's direct or indirect interest in such Subpartnership (the "Acquisition Fee").

11.3    Expenses.

(a)    Normal Operating Expenses of General Partner.  Except as set forth below, the General Partner shall bear all routine, normal operating expenses associated with duties and services of its operations on the terms and conditions herein set forth.  Routine, normal operating expenses include compensation and expenses of the officers and employees of the General Partner and of members of the General Partner including salaries and benefits of any officers and employees and members of the General Partner, and fees and expenses for administrative, bookkeeping, clerical and related support services, insurance, office space and facilities, utilities, telephone, copy and costs of the General Partner.

(b)    Expenses of the Partnership.  The Partnership shall pay or reimburse the General Partner for all costs and expenses incurred by or on behalf of the Partnership or for its benefit, including, without limitation, any sales or other taxes which may be assessed against the Partnership; the costs and expenses, including, without limitation,

reasonable travel and out-of-pocket travel related expenses, commissions, brokerage fees, closing costs, fees and expenses of appraisers, accountants, engineers, architects, specialists, lawyers and other service providers, investment banking fees or similar charges, or interest expense for borrowed money (if any); any indemnification expenses and costs pursuant to section 12.4 hereof; liquidation expenses of the Partnership; expenses attributable to normal and extraordinary investment banking, accounting, appraisal, legal, custodial, and registration services provided to the Partnership, including services with respect to the proposed purchase or sale of Assets by the Partnership (whether or not any such purchase or sale is consummated); the costs of appropriate insurance coverage for the Partnership including, without limitation, premiums for liability insurance to protect the Partnership, the General Partner, and the members and Affiliates of the General Partner in connection with the performance of Partnership activities; interest and taxes related to the purchase, holding or sale by the Partnership of any Asset; costs incurred in registering (or obtaining exemptions from registration for) securities owned by the Partnership with the Securities and Exchange Commission, and any securities exchange or any other similar authority; costs incurred in qualifying and maintaining qualifications of such securities under applicable state "Blue Sky" laws; reports to governmental authorities; the preparation of any audits of the Partnership, and other reports to the Limited Partners; and all other expenses properly chargeable to the activities of the Partnership, including fees payable to third parties in connection with the selection, identification, analysis or evaluation of prospective or consummated investments of the Partnership.

12. <u>The General Partner</u>.

12.1 <u>Management</u>. Subject only to the rights of the Limited Partners to consent on specific matters as herein provided, the General Partner shall have full, exclusive and complete authority in the management and control of the business of the Partnership for the purposes herein stated and shall make all decisions affecting the Partnership. The powers of the General Partner on behalf and at the expense of the Partnership include, but are not limited to:

(a)     Acquisition of any Asset or interest in any Asset, whether the interest of the Partnership is direct or indirect (and including any acquisition of an interest in any Subpartnership or other entity which directly or indirectly owns an interest in any Asset);

(b)     Any sale, lease or other transfer or disposition of any Asset or interest in any Asset, whether the interest of the Partnership is direct or indirect (and including any sale or other transfer or disposition of an interest in any Subpartnership or other entity which directly or indirectly owns an interest in any Asset), or any other material Partnership Assets;

(c)     Any borrowing, lending or other loan transaction, and entering into any material agreement, contract or other obligation; provided that any borrowing by the Partnership or by any Subpartnership shall be nonrecourse to the Partners (except for customary carve-outs, including without limitation, carve-outs making the General Partner liable personally in the event of fraud or waste);

(d)     The adjustment, settlement or compromise of any claim, obligation, debt, demand, suit or judgment against the Partnership;

(e)     The retention of key employees and the selection of any consultant or law or accounting firm to act on behalf of or provide services to the Partnership;

(f)     The establishment of, and the withdrawal from, commercially reasonable reserves;

(g)     Any other decision or action that under this Agreement is required, advisable, or in the best interests of the Partnership;

(h)     Monitoring the ongoing performance of the Partnership's investments, and providing to the Partners material information and reports referencing such investments;

(i)     Subject to clause (c) above, executing, in furtherance of any or all decisions of the General Partner, any mortgage, deed of trust, security agreement, deed, lease, promissory note, bill of sale, contract or other instrument purporting to convey or encumber the real or personal property of the Partnership, including without limitation the encumbering of Partnership property to secure loans made to any partnership, joint venture or other entity in which the Partnership has an interest;

(j)     Carrying out contracts necessary to, in connection with, or incidental to the accomplishment of the purposes of the Partnership, to the fullest extent as may be lawfully carried on or performed by a partnership under the laws of each state in which the Partnership is then formed or qualified.

12.2     <u>Exceptions</u>.  Notwithstanding anything to the contrary in section 12.1, the General Partner shall only take direct possession or custody of Securities held for the account of the Partnership following the favorable opinion of counsel to the General Partner, or other legal counsel and/or financial adviser, as appropriate.

12.3     <u>Power to Bind</u>.  The General Partner shall have exclusive authority to bind the Partnership in making contracts and incurring obligations in the name and on the credit of the Partnership in the ordinary course of the Partnership's business and otherwise within the scope of authority as herein provided.

12.4     <u>Indemnity and Limitation of Liability</u>.  The General Partner, any Affiliate of the General Partner and any person acting on the behalf of the General Partner or such Affiliate (an "indemnified person") (a) shall be held harmless, defended and indemnified by the Partnership for any cost, claim, judgment, amounts expended in settlement, liability or loss (including attorneys' fees and expenses) suffered by an indemnified person solely by virtue of such indemnified person's acting as or on behalf of the General Partner for the Partnership in connection with the Partnership's activities and (b) shall not be liable to the Partnership for any cost, claim, judgment, amounts expended in settlement, liability or loss suffered in connection with the Partnership's activities; provided that, if such cost, claim, judgment, amounts expended in settlement, liability or loss arises out of any action or inaction of any such indemnified person, such indemnified person must have determined at the time of such action or inaction, in good faith, that such course of conduct was in the interests of the Partnership, and such course of conduct must not have constituted fraud, bad faith or willful misconduct by such indemnified

015001.0002\1479857.3

person, and provided further that such indemnification or amounts recoverable under the foregoing agreement to hold harmless shall only be recoverable out of the assets of the Partnership and not from the Limited Partners. The Partnership shall advance funds for legal expenses and other costs incurred by an indemnified person acting at such indemnified person's request as a result of a legal action if the following conditions are satisfied: (a) the legal action relates to the performance of duties or services by such indemnified person; and (b) the indemnified person that is requesting such advance undertakes to repay the advanced funds to the Partnership in cases in which that indemnified person would not be entitled to indemnification under this section 12.4. The rights granted under this section 12.4 shall not be affected by, and shall survive, any dissolution or termination of the Partnership and the death, disability, incapacity, withdrawal, insolvency or dissolution of any Partner.

       12.5   <u>Tax Matters Partner</u>. The General Partner is hereby appointed as the Tax Matters Partner of the Partnership. The General Partner may, in its exclusive discretion, remove and replace the Tax Matters Partner from time to time.

    13.   <u>Rights of Limited Partners</u>.

       13.1   <u>Limited Liability</u>. No Limited Partner shall be subject to assessment, nor except as may be otherwise required under the Act, shall any Limited Partner be personally liable for any of the debts or liabilities of the Partnership or any of the losses thereof in excess of such Limited Partner's Capital Contributions and any undistributed income attributable to such Limited Partner.

       13.2   <u>Management</u>. No Limited Partner, as such, shall take part in the management of the business of, or transact any business for, the Partnership or have power to sign for or bind the Partnership to any agreement, oral or written, or any instrument or other document. Notwithstanding anything herein to the contrary, unless approved by the consent of a Majority in interest of the Limited Partners (subject to the penultimate sentence of this section 13.2), the Partnership shall not:

         (a)   Dissolve and wind up, except as provided in section 17.1;

         (b)   Merge or consolidate with any other partnership, corporation or other entity;

         (c)   Elect to continue the Partnership's business other than under the circumstances described in section 13.2(f);

         (d)   Amend this Agreement except as provided in section 19;

         (e)   Admit a General Partner to the Partnership other than as provided in section 16 unless the General Partner is admitted under the circumstances described in section 13.2(f); or

         (f)   Without the additional consent of all other Limited Partners, admit a General Partner to the Partnership or elect to continue the Partnership's business after the

015001.0002\1479857.3

General Partner ceases to be the General Partner of the Partnership where there is no remaining or surviving General Partner of the Partnership.

Notwithstanding the foregoing provisions of this section 13.2, the General Partner's vote or consent for any of the actions contemplated by section 13.2(a) through section 13.2(e) shall also be required prior to the taking of such action. The Limited Partners shall not have any voting rights other than as expressly provided in this Agreement.

      13.3   <u>Limited Partner Advisory Committee.</u>  The Limited Partners may, upon affirmative vote of the Majority in interest of the Limited Partners, form the Limited Partner Advisory Committee, which committee shall have only such powers as provided under the Act and as are not inconsistent with the express provisions of this Agreement, to consult with and advise the General Partner with respect to policy matters relating to the business of the Partnership. Such vote shall be held at a meeting of the Limited Partners called by the General Partner in accordance with section 13.9. Upon formation of the Limited Partner Advisory Committee, the majority of the Limited Partners present at such meeting may then vote to elect an Executive Committee, to be composed of a Chair, one or more Vice Chairs, and up to three (3) at-large members who shall thereafter serve, without compensation, to represent the Limited Partners to the General Partner. The members of the Executive Committee shall serve for terms of two (2) years, unless they resign or are replaced by vote of a majority of the Limited Partners prior to the end of their terms. A majority of the Executive Committee may vote to establish procedures and policies of the Limited Partner Advisory Committee and its Executive Committee, and to replace any member of the Executive Committee who resigns with any Limited Partner willing to serve out the term of such person. Any recommendation, advice or resolution given to the General Partner by the Executive Committee on behalf of the Limited Partner Advisory Committee shall be non-binding and shall not limit or otherwise affect the rights and powers of the General Partner or the Partnership as enumerated herein or under the Act.

      13.4   <u>Removal of General Partner.</u>  By affirmative vote of a majority of all Partners determining that the General Partner is in default under this agreement and has failed to cure the default, the General Partner may be removed. A General Partner may only be in default of this Agreement on the occurrence of any of the following events:

      (a)   The Partnership incurs material losses or damages that are attributable to the General Partner's willful misconduct, fraud, gross negligence or intentional and knowing violation of any law;

      (b)   The General Partner commits criminal or tortuous embezzlement of funds of the Partnership; or

      (c)   The General Partner commits a material and ongoing default of its obligations under this Agreement which is not cured in a timely manner.

      (d)   Prior to voting to remove the General Partner, a majority of the Limited Partners must determine that a default as specified herein has occurred, must notify the General Partner in writing of such default and provide the General Partner a reasonable amount

of time to cure the default. If the General Partner cures the stated default within a reasonable period of time, the General Partner may not be removed. If a General Partner is removed pursuant to this section, the General Partner's interest in the Limited Partnership shall be deemed to be that of a Limited Partner.

13.5 <u>Written Consent</u>. All votes or consents required or permitted to be taken by the Limited Partners shall be taken by a consent in writing, setting forth the action so taken, signed by Partners having not less than the minimum number of votes that would be necessary to authorize or take that action.

13.6 <u>Records</u>. The General Partner shall maintain and preserve during the term of the Partnership and for six (6) years thereafter all accounts, books, records and other relevant Partnership documents, including, without limitation, all of the same required by applicable law to be maintained and preserved. The Partnership shall keep at its office in California all of the same, including, without limitation, all of the following:

(a) A copy of the certificate of limited partnership of the Partnership and all certificates of amendment thereto, together with executed copies of any powers of attorney pursuant to which any certificate has been executed;

(b) Copies of the Partnership's federal, state and local income tax or information returns and reports, if any, for the five (5) most recent taxable years;

(c) Copies of this Agreement and all amendments hereto;

(d) Financial statements of the Partnership for the six (6) most recent calendar years; and

(e) The Partnership's books and records for at least the current and past three (3) calendar years.

13.7 <u>Inspection</u>. On the request of a Limited Partner, the General Partner shall promptly deliver to the Limited Partner, at the expense of the Partnership, a copy of the information required to be maintained by Section 13.6. Each Limited Partner has the right on reasonable request to inspect and copy, personally or by such Limited Partner's agents or representatives, during normal business hours, any of the Partnership's accounts, books, records and other documents required to be maintained by section 13 and to obtain from the General Partner, promptly after becoming available, copies of the Partnership's federal, state and local income tax or information returns for each year. The General Partner, however, has the right to keep confidential from Limited Partners for such periods of time as the General Partner deems reasonable any information the disclosure of which the General Partner in good faith believes is not in the best interests of the Partnership or could damage the Partnership or its business, or that the Partnership is required by law or agreement with a third party to keep confidential. Notwithstanding anything to the contrary in this Agreement or the Act, to the fullest extent permitted by the Act, the General Partner will not provide any Limited Partner with the identity or address of any Limited Partner unless that Limited Partner consents to such disclosure. The purpose of this provision is to protect the privacy of the Limited Partner.

13.8     Confidentiality of Partnership Information.  The financial statements and other information of the Partnership and other information provided to Limited Partners under this section 13 shall be used by Limited Partners in furtherance of their interests as Limited Partners only and, subject to disclosures required by applicable law, each Limited Partner hereby agrees to maintain the confidentiality of such financial statements and other information provided to such Limited Partner by the Partnership or the General Partner with respect to the Partnership, including, without limitation, the information provided to the Limited Partners by the General Partner (including the financial statements referred to in section 13).  Notwithstanding the foregoing, the General Partner understands and acknowledges that certain of the Limited Partners may have fiduciary or other similar obligations to clients or other persons similarly situated and hereby consents to the provision of such information to such persons provided that the Limited Partner providing any information to such persons requires such persons to maintain the confidentiality of such information in accordance with the provisions hereof.  Notwithstanding anything in this Agreement or any other written or oral understanding or agreement to which the parties hereto are parties or by which they are bound, either party (or its representatives, agents or employees) (i) may consult any tax advisor regarding the tax treatment and tax structure of the transaction contemplated by the Memorandum and (ii) may at any time disclose to any person, without limitation of any kind, the tax treatment and tax structure of such transaction and all materials of any kind (including opinions or other tax analyses) that are provided relating to such tax treatment or tax structure.

13.9     Meetings.  No annual or other scheduled periodic meetings are required.  However, meetings of the Limited Partners may be called by the General Partner or by not less than ten percent (10%) in interest of the Limited Partners for any matters on which Limited Partners may vote or for which Limited Partner approval or consent is required.  Such meeting shall be called upon not fewer than 10 nor more than 30 days' prior written notice to the Partners, specifying the time, place and purpose of the meeting, or in any other manner consented to by the Limited Partners.  Unless expressly provided otherwise by this Agreement or by the Act, any act or decision done or made at the meeting shall be by the affirmative vote of the Majority in interest of the Limited Partners.

13.10     Amendments.  The General Partner shall promptly furnish to a Limited Partner a copy of any amendment to this Agreement executed by the General Partner pursuant to a power of attorney from the Limited Partner or pursuant to section 19.2.

14.     Nature of Limited Partners' Liabilities for Claims Against the Partnership.  In furtherance of the intent of the parties that each Limited Partner shall be liable to creditors only for such Limited Partner's Capital Contributions and undistributed Profits, (a) the General Partner shall arrange to prosecute, defend, settle or compromise actions at law or in equity at the expense of the Partnership as it may consider necessary to enforce or protect the interests of the Partnership and (b) the General Partner shall satisfy any judgment, decree, decision or settlement under the terms of which the Partnership (or the General Partner, or any Affiliate of the General Partner, on behalf of the Partnership) is obligated to pay any amounts, first, out of available proceeds of any insurance of which the Partnership is the beneficiary, next, and finally out of Partnership assets and income.

15. Costs of Special Services. Any costs incurred in connection with special services requested by a Limited Partner will be required to be paid by that Limited Partner. Such services would include, for example, those that would benefit the Limited Partner but would not benefit the Partnership, such as a special evaluation or financial accounting for the purposes of estate valuation.

16. Withdrawal of General Partner; Additional and Successor General Partner.

16.1 Withdrawal, Etc. A person shall cease to be a General Partner on the happening of any of the following events:

(a) Such person withdraws as a General Partner by notice to the Partnership;

(b) An order for relief against such person is entered under Chapter 7, Chapter 11 or Chapter 13 of federal bankruptcy law, or such person makes a general assignment for the benefit of creditors, files a voluntary petition under federal bankruptcy law, files a petition or answer seeking for such person any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation, files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against such person in any proceeding of this nature, or seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of such person or all or any substantial part of such person's properties;

(c) Sixty (60) days after the commencement of any proceeding against such person seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation, the proceeding has not been dismissed or if within sixty (60) days after the appointment with such person's consent or acquiescence of a trustee, receiver or liquidator of such person or of all or any substantial part of such person's properties, the appointment is not vacated or stayed or within sixty (60) days after the expiration of any stay, the appointment is not vacated;

(d) If such person is a corporation, partnership or limited liability company, the dissolution of such person; or

(e) If such person is a natural person, either his death or the entry by a court of competent jurisdiction of an order adjudicating him incompetent to manage his person or estate.

Notwithstanding the foregoing provisions of this section 16.1, a person who ceases to be a General Partner shall be deemed to be acting as a General Partner with respect to a third party doing business with the Partnership, until an amended certificate of limited partnership of the Partnership is filed under the Act.

16.2 New General Partner. Except as otherwise provided in section 13.2, with the consent of a Majority in interest of the Limited Partners and the concurrence of the General Partner, an additional or successor General Partner or Partners may be appointed and will become a General Partner or Partners on accepting such appointment and agreeing to act as a

- 20 -

General Partner or Partners, to become a party or parties to this Agreement and to assume all the obligations and responsibilities of a General Partner hereunder.  If the Partnership shall have two or more General Partners, they shall be jointly and severally liable for performance of all of the duties and obligations of the General Partner hereunder, and they shall determine between them how to share the Asset Management Fee and the interest of the General Partners in Profits, Losses and distributions.

16.3    Procedure.  If a person ceases to be a General Partner or if a General Partner is so admitted or succeeded, this Agreement and the Partnership's certificate of limited partnership shall be amended, by the remaining General Partner or Partners without the necessity of any further consent of any of the Limited Partners, to name the new or successor General Partner or Partners.

16.4    Conversion of Interest.  A person who ceases to be a General Partner for any reason shall:

(a)    Retain only the interest in such person's Capital Account, Profits, Losses and distributions as such person would have had if such person had been admitted to the Partnership as a Limited Partner at the date such person ceases to be a General Partner, and such interest shall be that of a Limited Partner;

(b)    Not be personally liable for Partnership debts incurred after such person ceases to be a General Partner, other than any debts incurred by reason of such person's being deemed to be acting as a General Partner pursuant to section of the Act;

(c)    Be entitled to consent as a Limited Partner on all matters; and

(d)    Have such retained interest in Profits, Losses and distributions reduced pro rata with all other Partners to provide compensation, or an interest in the Partnership, or both, to the person admitted to the Partnership to serve as the successor to such person as a General Partner.

17.    Dissolution and Termination.

17.1    Events of Dissolution.  The Partnership shall continue until terminated and dissolved (i) in accordance with the consent required by section 13.2, (ii) when a sole General Partner ceases to be a General Partner, if a successor General Partner has not then been appointed as and become the General Partner as provided in section 16, (iii) on the sale or other disposition of all or substantially all of the Assets (unless the General Partner elects within thirty (30) days, by written notice to the Partnership, to continue the Partnership), (iv) when the General Partner elects, by written notice to the Partnership, to dissolve the Partnership, the issuance of a judicial decree of dissolution by a court of competent jurisdiction, or (vi) upon the withdrawal or removal of the General Partner unless the Limited Partners appoint a new General Partner as provided in section 13.2.  Subject to the preceding sentence, the Partnership shall not be dissolved and its business shall continue so long as there is at least one General Partner, and the remaining General Partner or Partners shall continue the business of the Partnership, notwithstanding that any person shall cease to be a General Partner for any reason.  The Partnership shall not be dissolved or terminated by the expulsion, retirement, withdrawal, death,

insanity, adjudication of bankruptcy, insolvency or dissolution of any Limited Partner, or by the assignment by any Limited Partner of such Limited Partner's interest in the Partnership or the admission of new Partners as provided herein.

17.2   Liquidating Person; Winding Up.  In the event of dissolution and termination of the Partnership, the remaining General Partner shall wind up the affairs of the Partnership, provided that if there is no remaining General Partner, the affairs of the Partnership shall be wound up by the person or persons previously designated by the General Partner to liquidate the Partnership's assets or, if the General Partner has made no such designation, by the person or persons designated by the General Partner to liquidate the Partnership's assets or, if the General Partner has made no such designation, by the person or persons designated by a Majority in interest of the Limited Partners, such Partners or persons being referred to herein as the "Liquidating Persons."  The Liquidating Persons shall liquidate at least as much of the Assets and the Partnership's other assets as may be required to make, and shall make, a distribution to the Preferred Limited Partner(s) consistent with sections 9.3(c), and 10.4(d) (which accord certain preferences to the Preferred Limited Partners under this section 17), and to the extent possible pay all other liabilities (including without limitation all costs of dissolution and winding up and any payment the General Partner has agreed to make to the Liquidating Persons for their services in connection with the dissolution and loans to the Partnership by any Partner), establish a reserve for contingent liabilities and distribute the Assets, and any of the Partnership's remaining assets (in cash or in kind or partly in cash and partly in kind, as the Liquidating Persons may determine in their absolute discretion). On any distribution of assets to the Partners pursuant to this section 17.2, after making the distributions described above, any such assets shall be distributed in proportion to and to the extent of the Partners' respective Capital Account balances consistent with section 10.  After a reasonable period of time has passed, any balance remaining in any reserve established shall be distributed to the Partners as provided in this section 17.2.  If the Partnership's assets are insufficient to satisfy its liabilities, each Partner shall, to the extent required by the Act, within 30 days after receiving notice thereof from the General Partner, return in cash such part or all of the distributions made to such Partner pursuant to this section 17.2 or section 9.3(d) as may be required to make up the shortage, with each Partner making returns in proportion to such Partner's share in any such distributions.

17.3   Legal Authority.  The winding up of the affairs of the Partnership and the distribution of its assets shall be conducted exclusively by the Liquidating Persons, who are authorized, subject to sections 12 and 17.2, to do any and all acts and things authorized by law for those purposes.

17.4   No Recourse Against Partners.  Each Partner shall look solely to the assets of the Partnership for the return of such Partner's Capital Contributions, and, if the Partnership property remaining after the payment or discharge of the debts and liabilities of the Partnership is insufficient to return the Capital Contributions of each Partner, such Partner shall have no recourse against any other Partner.

18.   Assignments.

18.1   Personal Property.  An interest of a Partner in the Partnership is personal property and a Partner shall have no interest in specific Partnership property.

18.2    General Partner.  Except as otherwise expressly provided in this Agreement, without the consent of a Majority in interest of the Limited Partners, no General Partner shall sell, assign, transfer, pledge, encumber, hypothecate or otherwise dispose of all or any part of its interest as a General Partner or in this Agreement, and any attempted or purported sale, assignment, transfer, pledge, encumbrance, hypothecation or other disposition thereof in violation of this section 18.2 shall be void.

18.3    Transfer of Limited Partnership Interests.

(a)    In General.  A Limited Partner may assign an interest in the Partnership only with the express written consent of General Partner, which may be granted or withheld in the General Partner's sole and absolute discretion, subject to compliance at such Limited Partner's expense with Federal and state securities laws, the applicable securities laws of any foreign country having jurisdiction over the Limited Partnership interest, and this section 18.3(a).  To assure such compliance, (i) the Limited Partner shall furnish the Partnership with a detailed explanation of the proposed disposition and applicable Investment Documents completed by the intended assignee, (ii) the Limited Partner shall furnish the Partnership with an opinion of the Limited Partner's counsel in form and substance satisfactory to the Partnership to the effect that the proposed transfer (1) complies with applicable provisions of the Securities Act of 1933, as amended and any applicable blue sky laws and the applicable securities laws of any foreign country having jurisdiction over the Limited Partnership interest, (2) will not result in the Partnership having to register as an investment company under the ICA, (3) will not render the Profit Allocation illegal under Federal law or applicable laws of any state, and (4) will not result in the termination of the Partnership for Federal income tax purposes, and (iii) counsel for the General Partner shall have concurred in such opinion and the General Partner shall have advised the Limited Partner of such concurrence.  Any attempted or purported assignment without such compliance shall be void.  Any permitted assignment shall be effective as of midnight of the last day of the calendar month in which it is made and no such assignment shall relieve the assignor of such assignor's responsibility for any expenses, obligations or liabilities, whether accruing prior or subsequent to the assignment.  Unless and until an assignee is admitted to the Partnership as a substituted Limited Partner as hereinafter provided, such assignee shall be entitled only to receive distributions from the Partnership attributable to the assigned interest from and after the effective date thereof; provided that the General Partner and the Partnership shall be entitled to treat the assigning Limited Partner as the absolute owner of such assignor's interest in the Partnership and shall incur no liability for distributions made in good faith to such assignor until the effective date of the assignment and until appropriate documents of assignment have been delivered to the General Partner and recorded on the Partnership's books.  A limited partner assigning an interest in the Partnership in accordance with this Section acknowledges that any EB-5 related immigration benefit related to such an interest may be withdrawn, denied, or foreclosed as a result of such assignment.

(b)    Substitution.  An assignee of any interest of a Limited Partner in the Partnership may become a substituted Limited Partner only with the consent of the General Partner, which can be withheld in the General Partner's sole and absolute discretion, and in compliance with this section 18.3.  This Agreement and the Partnership's certificate of limited partnership may be amended by the General Partner, without the necessity of the consent of any of the Limited Partners, to effect such admission not later than the last day of the calendar month

- 23 -

following receipt of notice of the assignment and such appropriate documentation of the assignment and substitution as the General Partner may reasonably require; provided that no such assignee shall become a substituted Limited Partner of the Partnership unless the assignee shall have consented in writing, in form satisfactory to the General Partner, to be bound by the terms of this Agreement and the Partnership's certificate of limited partnership in the place and stead of the assigning Limited Partner.

19. Amendments.

19.1 With Limited Partner Approval. Amendments to this Agreement may be proposed by the General Partner or by Limited Partners whose Ownership Percentages aggregate ten percent or more of the Ownership Percentages of all Limited Partners. The General Partner shall submit to the Limited Partners a verbatim statement of any amendment so proposed. The General Partner shall include in any such submission its recommendation as to the proposed amendment. The amendment shall become effective only with the consent of the General Partner and a Majority in interest of the Limited Partners; provided that, for purposes of obtaining a written consent on a proposed amendment, the General Partner may require a response within a specified reasonable time (which shall not be less than fifteen (15) days) and failure to respond shall constitute a consent in accordance with the General Partner's recommendation as to the proposed amendment.

19.2 Without Limited Partner Approval. Notwithstanding anything in section 19 to the contrary, the General Partner may amend this Agreement without any vote, consent, approval, authorization or other action of any Limited Partner and without notice to any Limited Partner to: (i) add to the representations, duties or obligations of the General Partner or its Affiliates or surrender any right or power granted to the General Partner or its Affiliates in this Agreement for the benefit of any one or more of the Limited Partners; (ii) cure any ambiguity, correct or supplement any provision in this Agreement that may be inconsistent with any other provision in this Agreement, or correct any printing, stenographic, or clerical errors or omissions, or make any other provisions with respect to matters or questions arising under this Agreement that will not be inconsistent with the intent of this Agreement; (iii) delete or add any provision of this Agreement required to be so deleted or added by the staff of the Securities and Exchange Commission or by a state securities law administrator or other governmental, quasi-governmental or self regulatory organization official, which addition or deletion is deemed by such official to be for the benefit or protection of the Limited Partners; (iv) reflect the withdrawal, expulsion, addition or substitution of Limited Partners; (v) reflect the proposal, promulgation or amendment of Regulations under Code section 704, or otherwise, to preserve the uniformity of interests in the Partnership issued or sold from time to time, if, in the opinion of the General Partner, the amendment does not have a material adverse effect on the Limited Partners generally; (vi) elect for the Partnership to be bound by any successor statute to the Act, if in the opinion of the General Partner, the amendment does not have a material adverse effect on the Limited Partners generally; (vii) conform this Agreement to changes in the Act or interpretations thereof which the General Partner believes appropriate, necessary or desirable, if in the General Partner's reasonable opinion such amendment does not have a material adverse effect on the Limited Partners generally or the Partnership; (viii) change the name of the Partnership; (ix) make any change that the General Partner determines is advisable to qualify or to continue the qualification of the Partnership as an entity that is taxed as a limited partnership

under the laws of any state or that the General Partner determines is necessary or advisable so that the Partnership will not be treated as an association taxable as a corporation for federal income tax purposes; (x) make any change that the General Partner deems advisable to comply with any law or regulation provided that a Majority in interest of the Limited Partners adversely affected by such amendment consent thereto; (xi) create any new class of interests in the Partnership provided such class does not have rights or preferences superior to those of any existing class of interests; and (xii) make any other amendment provided such amendment does not become effective until after such affected Limited Partners have been given prior written notice of such change and have had the right following receipt of such notice to request the redemption of their interests and such withdrawal shall have become effective.

19.3  Amendments Requiring Unanimous Consent. Anything in section 19.1 or 19.2 to the contrary notwithstanding, without the unanimous vote or consent of all of the Partners, no amendment shall (a) change the Partnership to a general partnership, (b) change the liability of the General Partner as such or the limited liability of the Limited Partners as such, or (c) change sections 13.2(e), 13.2(f), or 16.2.

20.  Tax Elections. The General Partner shall make or cause the Partnership to make such elections as the General Partner may consider advisable and in the interests of the Partnership under any applicable tax law of the United States, including, without limitation, any elections under Code section 754.

21.  Power of Attorney. Each of the Limited Partners irrevocably constitutes and appoints the General Partner, with full power of substitution and resubstitution, such Limited Partner's true and lawful attorney, for such Limited Partner and in such Limited Partner's name, place and stead, and for such Limited Partner's use and benefit, to sign, execute, deliver, certify, acknowledge, swear to, file, record and publish (i) the Partnership's certificate of limited partnership and any amendment thereto or to this Agreement as provided herein, (ii) any other certificates, instruments, agreements and documents necessary to qualify or continue the Partnership as a limited partnership or a partnership wherein Limited Partners have limited liability in the states or other jurisdictions where the General Partner deems necessary or desirable, (iii) all conveyances, assignments, documents of transfer or other instruments and documents necessary to effect the assignment of an interest in the Partnership, the substitution of a Limited Partner or the dissolution and termination of the Partnership in accordance with this Agreement and (iv) all filings and submissions pursuant to any applicable law, regulation, rule, order, decree or judgment which, in the opinion of the General Partner may be necessary or advisable in connection with the business of the Partnership.

The power of attorney granted herein is coupled with an interest, shall be irrevocable, shall survive the death, disability or incapacity of any Limited Partner, shall be deemed given by each and every assignee and successor of each Limited Partner and may be exercised by the General Partner by listing, or attaching a list of, any or all of the names of the Limited Partners and executing such amendments, certificates, instruments and other documents with the signature by the General Partner, as attorney-in-fact for all of the persons whose names are so listed.

22.     Arbitration.  The Partners waive their right to seek remedies in court, including any right to a jury trial.  The Partners agree that in the event of any dispute arising between the parties, such dispute shall be settled by arbitration to be conducted in the county and state of the principal office of the General Partner at the time of such dispute in accordance with the rules of the Judicial Arbitration and Mediation Service ("JAMS") applying the laws of California.  Disputes will not be resolved in any other forum or venue.  The Partners agree that such arbitration shall be conducted by one or more mutually-agreeable arbitrators or, if no agreement can be reached, by a panel of arbitrators consisting of one arbitrator chosen by each of the participating parties, plus an additional arbitrator chosen by the arbitrators.  Pre-arbitration discovery shall be limited to the greatest extent provided by the rules of JAMS, the arbitration award will not include factual findings or conclusions of law, and no punitive damages shall be awarded.  The Partners understand that any party's right to appeal or to seek modification of rulings in an arbitration is severely limited.  Any award rendered by the arbitrators shall be final and binding and judgment may be entered upon it in any court of competent jurisdiction in the county and state of the principal office of the General Partner at the time such award is rendered.  The Partners consent to conducting any arbitration under this Agreement at a location and facility recommended by the arbitrator, which shall not be located more than twenty (20) miles from the address of the General Partner.

23.     Notices.  Except as otherwise expressly provided herein, any notice, consent, authorization or other communication to be given hereunder shall be in writing and shall be deemed duly given and received on the day of personal delivery, on the day of facsimile transmission or receipt of electronic mail, three (3) business days after being mailed by first class mail, or one (1) business day after being sent by a nationally recognized overnight delivery service, charges and postage prepaid, properly addressed to the party to receive such notice at the last address furnished for such purpose by such party in such party's Subscription Agreement or by subsequent notice hereunder.

24.     Severability.  If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid or unenforceable, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it is held to be invalid or unenforceable, shall not be affected thereby.

25.     Governing Law.  This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of California.

26.     Binding Effect.  Subject to section 18, this Agreement shall bind and inure to the benefit of the parties and their respective successors, assigns, heirs, devisees, legatees, legal representatives, executors and administrators.

27.     [Intentionally omitted.]

28.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

29.     <u>Entire Agreement</u>.  This Agreement contains the entire agreement of the parties and supersedes all prior negotiations, correspondence, understandings and agreements between or among the parties regarding the subject matter hereof, other than any and all subscription agreements of the Limited Partners subscribing for interests in the Partnership and any and all amendments and supplements thereto, all of which subscription agreements, amendments and supplements shall continue in full force and effect.

30.     <u>Further Assurances</u>.  Each Partner shall provide such further information with respect to the Partner and any of its beneficial owners as the General Partner may request, and shall execute such other and further certificates, instruments and other documents, as may be necessary and proper to implement, complete and perfect the transactions contemplated by this Agreement.

31.     <u>Headings; Gender; Number; References</u>.  The headings at the beginning of the sections hereof are solely for convenience of reference and are not part of this Agreement.  As used herein, each gender includes each other gender, and the singular includes the plural and vice versa, as the context may require.  All references to sections are intended to refer to sections of this Agreement, except as otherwise indicated.

IN WITNESS WHEREOF, this Limited Partnership Agreement has been duly executed by or on behalf of the parties hereto as of the date first above written.

GENERAL PARTNER:

GSRV-VTI, LP


By:     Golden State Renaissance
        Ventures, LLC
        its General Partner

        By:     _____
                Eric Chelini
                its Managing Member

LIMITED PARTNERS:

(See Schedule A Attached)

015001.0002\1479857.3

# EXHIBIT J

# EXHIBIT J

# Schedule A

GSRV-VTI, LP
A California Limited Partnership

| Partner # | Name | $ Investment | % Ownership |
|-----------|------|--------------|-------------|
| 1 | ███████████████████ | 500,000 | 7.69 |
| 2 | ███████████████████ | 500,000 | 7.69 |
| 3 | ███████████████████ | 500,000 | 7.69 |
| 4 | ███████████████████ | 500,000 | 7.69 |
| 5 | Hui Ma | 500,000 | 7.69 |
| 6 | ███████████████████ | Withdrew | |
| 7 | ███████████████████ | 500,000 | 7.69 |
| 8 | ███████████████████ | 500,000 | 7.69 |
| 9 | Ailing Zhao | 500,000 | 7.69 |
| 10 | ███████████████████ | 500,000 | 7.69 |
| 11 | Yixuan Wang | 500,000 | 7.69 |
| 12 | ███████████████████ | 500,000 | 7.69 |
| 13 | ███████████████████ | 500,000 | 7.69 |
|  |  |  |  |
|  |  |  |  |
| 14 | GSRV VTI Management, LLC |  | 7.69 |
|  |  | $6,000,000 | 100% |